# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

Western Division

RECEIVED

APR - 2 2026

RICHARD W. NAGEL
Clerk Of Court
CINCINNATI, OHIO

Joel M. Blust, in Pro Se

Plaintiff(s)

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

James Greg Dooley Sr, et al

Defendant(s)

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 1:26CV329

*(to be filled in by the Clerk's Office)*

J. COLE
M.J. BOWMAN

## COMPLAINT AND REQUEST FOR INJUNCTION

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Joel M. Blust |
| Street Address | 1116 Gilsey Ave |
| City and County | Cincinnati, Ohio 45205 Hamilton |
| State and Zip Code | Ohio 45205 |
| Telephone Number | 513 551 7964 |
| E-mail Address | joelblust7777@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | James Greg Dooley Sr. et al |
| Job or Title *(if known)* | |
| Street Address | 706 Lakewood Dr |
| City and County | Taylor Mill Kenton |
| State and Zip Code | Kentucky 41015 |
| Telephone Number | N/A |
| E-mail Address *(if known)* | N/A |

Defendant No. 2

| | |
|---|---|
| Name | Angela Dooley |
| Job or Title *(if known)* | |
| Street Address | 706 Lakewood Dr. |
| City and County | Taylor Mill Kenton |
| State and Zip Code | Kentucky 41015 |
| Telephone Number | N/A |
| E-mail Address *(if known)* | N/A |

Defendant No. 3

| | |
|---|---|
| Name | Joseph E. Bedel Jr. |
| Job or Title *(if known)* | |
| Street Address | 554 Pednetti Ave. |
| City and County | Cincinnati Hamilton |
| State and Zip Code | Ohio 45205 |
| Telephone Number | N/A |
| E-mail Address *(if known)* | N/A |

Defendant No. 4

| | |
|---|---|
| Name | Hamilton County Probate Division Court of Common Pleas |
| Job or Title *(if known)* | Municipality |
| Street Address | 230 E. 9th St. floor 9 and 10 |
| City and County | Cincinnati Hamilton |
| State and Zip Code | Ohio 45202 |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case. 42: 1983. 1985. 1986. 1982 18: 241. 242. 245. 249. 18: 1584. 1589. 1593. 28: 1343. 1443 42: 12203. 1997 28: 2201 47: 605 18: 1511. 2710

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* Joel M. Blust, is a citizen of the State of *(name)* Ohio.

b. If the plaintiff is a corporation

The plaintiff, *(name)* N/A, is incorporated under the laws of the State of *(name)* N/A, and has its principal place of business in the State of *(name)* N/A.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* James Greg Dooley Sr., is a citizen of the State of *(name)* Kentucky. Or is a citizen of *(foreign nation)* N/A.

b. If the defendant is a corporation

The defendant, *(name)* N/A, is incorporated under the laws of the State of *(name)* N/A, and has its principal place of business in the State of *(name)* N/A. Or is incorporated under the laws of *(foreign nation)* N/A, and has its principal place of business in *(name)* N/A.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The damages sought by the plaintiff exceeds $75,000
The estate in question gross value exceeds $75,000

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

IN My Residence, IN public, IN Moments of expected Privacy: while incarcerated & involuntarily committed via guardianship & other Protective Arrangement being exploited online, social media, & live streaming networks

B. What date and approximate time did the events giving rise to your claim(s) occur?

- March – 2026, presently and active current day
- from 2020 with events leading all the way up to current day
- Since August 20, 2004 and no later than Aug. 20, 2011 ages 18-25

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

I am being exploited via guardianship & other protective Arrangement with the terms of a silent trust, the trust and guardianship is being kept silent and the defendants have hacked the devices and services to allow for excessive user permissions and disabilities / restrictions enforced on the plaintiff and publisized via online, social media / fake, and live streaming content with the content and the devices used intangible to the plaintiff

## IV. Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

The defendants have hacked the devices and services ~~of~~ the system enabling them excessive user commands via Guardianship & other Protective Arrangment, using these powers to control & Affect the person of Joel M. Blust in extremely adverse ways. For fundamental fairness and the equality of law to support the integrity of the courts. The defendants are using AI and related devices and services to exploit Joel M Blust online, social media & live streaming facilitating content of the extremely adverse reactions to the excessive user commands

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

For fundamental fairness and equality of law to support the integrity of the court and ensure justice is served and/or is being served in this case and while proceedings are underway for an order of the restoration of person to at least the least restrictive alternative to guardianship as the plaintiff has no disability other than the guardianship devices The state courts won't even acknowledge the guardianship as the terms of the trust are silent illegal as it may be, at the very very least a guardian ad litem for 30 days with a goal of getting insight into the plaintiff's actions

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/20/26

Signature of Plaintiff [signature] w/o

Printed Name of Plaintiff Joel M. Blust

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNAT Cincinnati, Ohio 45205

Joel M. Blust
1116 Gilsey Ave.
Cincinnati, Ohio 45205

Plaintiff, *in Pro Se*,

vs.

James Greg Dooley Sr. et al,
706 Lakewood Drive
Taylor Mill, Kentucky 41015

Angela Dooley;
706 Lakewood Drive
Taylor Mill, Kentucky 41015

Hamilton County Probate Division,
Court of Common Pleas;
230 E. 9th St. floors 9 & 10,
Cincinnati, Ohio 45202

Joseph E. Bedel Jr.
554 Pedretti Ave.
Cincinnati, Ohio 45238

Elliott Spence;
( address unknown )
Cincinnati, Ohio,(zip unknown)

Meredith Simpkins, Attorney
1534, 333 Scott St. #400,
Covington, Kentucky 41011

Dr. Vanessa Doyle, MD;
1101 Summit Rd.
Cincinnati, Ohio 45237

CASE NO. ________________

COMPLAINT FOR THE

*DEPRIVATIONS OF RIGHTS*

PURSUANT 42:1983 & 1985.

FHLBank of Cincinnati (Federal Home Loan Bank of Cincinnati),
221 East 4th Street, 600 Atrium Two,
Cincinnati, Ohio 45202

*Defendants,*

---

# CIVIL JUSTICE ACTION FOR THE DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW AND THE CONSPIRACY AGAINST THE RIGHTS OF JOEL M BLUST IN THE IRREVOCABLE TRUST—JEHOVAH

---

## AFFIDAVIT IN SUPPORT OF CLAIMED OR EXPRESSED MATTERS:

1) "My referenced real entity is Joel M. Blust;"

2) "I was a baby born endowed; "My name is Jehovah". I am the Title holder and/or Policy holder in due course of Cestui Que Trust, the irrevocable trust—JEHOVAH;"

3) "I am the affiant of these statements and am the plaintiff, ward, or—beneficiary, as stated, in all matters expressed or noted in this claim;"

4) "All statements expressed, or noted, in this affidavit, and in this claim are, and any presumed testimony, would be true, and cannot be rebutted, by anyone, with any standing, credibility, or authority in the matter;"

5) "All statements are facts and made on firsthand knowledge, unless otherwise stated;"

6) "I understand that because the truth is sovereign, and everyone is responsible for propagating the truth in all their speaking, writing, and acting, all commercial processes function by affidavits certified under oath to be true, correct, not misleading, and complete, on each affiant's commercial liability regarding all matters stated and likewise demanded. Also, I understand that presumed testimony is and would be an oral affidavit sworn as the truth, the whole truth, and nothing but the truth, 'so help me God,' and that the party, plaintiff or defendant, shall provide material evidence proving that each fact or entry is true, valid, verifiable, and relevant."

7) "I assent to my liability in support of the credibility of this document and the credibility of any future proceedings with this court."

# PARTIES RELATED TO THIS ACTION:

1) "The plaintiff, age 39, resides at 1116 Gilsey Ave. Cincinnati, Ohio 45205, can be reached by phone regarding this complaint or the proceedings involved. At (513) 551-7964 and via e-mail at joelblust7777@gmail.com In this civil justice action, he is currently being unlawfully detained under the authority of the Probate Division, Court of Common Pleas, in Hamilton County, Ohio, under Plenary Guardianship and Other Protective Arrangement, in the irrevocable trust—JEHOVAH; Furthermore, unlawfully detained as a continuing involuntary commitment, subject to court order, with forced medications and treatment, under Case No. MI 2025001178. In this claim, any time the term "presumed" or "presumably" is used, it means that is, what has been verified to have happened, via electronic communication devices, and has happened, as it is presumed to have happened. Joel M. Blust is referred to in this claim, by his name, and as the plaintiff, ward or beneficiary. The plaintiff is suing as the sole beneficial owner, to the irrevocable Trust—JEHOVAH; He is suing the following person(s) for unjustified restraints on his life, liberty and personal property, and for profiting off his involuntary servitude and forced labor, interception and disclosure of electronic, wire and oral communications, and stored data, the deprivation of rights under the color of law, and for the conspiracy against the rights, of Joel M Blust;

2) With respect to the defendant, James Greg Dooley Sr. of 706 Lakewood Drive, Taylor Mill, Kentucky 41015, he is a legal custodian of the plaintiff as guardian and grantor in the irrevocable trust—JEHOVAH, along with any other authoritarian role(s) he has as a custodian, of Joel M Blust, and under guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, he is in breach of trust, and owes fiduciary duties to the plaintiff. He is referred to in this claim by his name, as "the defendants," and as "the defendants in total."

James Greg Dooley Sr. Is a perpetrator to the deprivation of rights under the color of law, for malfeasance, nonfeasance, abuse, neglect and exploitation, unlawful detention, unjustified restraints on life, liberty, and personal property, discrimination, illegal coercion and intimidation, failure to keep from harm, interference with a federally protected activity, fraud, financial fraud, self-dealing, involuntary servitude and forced labor, and for his role(s) in the conspiracy against the rights of Joel M Blust, in guardianship and other protective arrangement and the irrevocable trust—JEHOVAH; He is being sued in his individual and official capacity.

3) With respect to the defendant, Angela Dooley, of 706 Lakewood Drive, Taylor Mill, Kentucky 41015, she is a legal custodian of the plaintiff as Trustee of the irrevocable trust—JEHOVAH. Along with any other authoritarian roles she has as a custodian and under guardianship and other protective arrangement and the irrevocable trust—JEHOVAH, to Joel M. Blust, she is in breach of and owes fiduciary duties to the plaintiff. She is referred to in this claim by her name, as "the defendants," and as "the defendants in total." Angela Dooley is a perpetrator to the deprivation of rights under the color of law, for malfeasance, nonfeasance, abuse, neglect and exploitation, unlawful detention, unjustified restraints on life, liberty and personal property, self-dealing, discrimination, illegal coercion and intimidation, failure to keep from harm, interference with a federally protected activity, involuntary servitude and forced labor, and for her role in the conspiracy against the rights, of Joel M. Blust, in guardianship and other protective arrangement and the irrevocable trust—JEHOVAH; She is being sued in her individual and official capacity;

4) With respect to the defendant, Hamilton County, Probate Division, Court of Common Pleas, at 230 E. 9th St. Floor 9 & 10, Cincinnati, Ohio 45202, It is a legal custodian of the plaintiff, as Municipality and political sub-division of the state of Ohio, legal authority, and

jurisdiction of the official file and/or record of judgment, and/or order, and the sealed and undisclosed case file and/or record, of guardianship and other protective arrangement, of JOEL M. BLUST, and the irrevocable trust—JEHOVAH. The court is referred to in this claim by its name, by "Probate Court," and by "defendants in total." Hamilton County, Probate Division, Court life of Common Pleas is a perpetrator to the deprivation of rights under the color of law, for malfeasance, nonfeasance, misfeasance, negligence, legal malpractice, ineffective assistance of counsel, procedural misconduct, unlawful restraints on life, liberty and personal property, cruel and unusual punishment, illegal search and seizure, maltreatment, abuse, neglect and exploitation, and deliberate indifference, and for its role(s) in the conspiracy against the rights of Joel M. Blust, as jurisdiction and granting authority, of guardianship and other protective arrangement, in the irrevocable trust—JEHOVAH, and the legal authority and jurisdiction of the continued involuntary commitment subject to court order with forced medications and treatment, legal status pursuant to R.C. 5122.15, under case no. MI 2025001178, and Hamilton County, Probate Division, Court of Common Pleas is being sued in its individual and official capacity;

5) With respect to the defendant, FHLBank of Cincinnati, (Federal Home Loan Bank of Cincinnati), at 221 East Fourth Street, 600 Atrium Two, Cincinnati, Ohio 45202, it is a legal custodian of the plaintiff as co-trustee/administrator of the irrevocable trust—JEHOVAH. Along with any other authoritarian roles(s) it has as a custodian, And under guardianship and other protective arrangement, to Joel M. Blust, and the irrevocable trust—JEHOVAH, it is in breach and owes fiduciary duties to the plaintiff. It is referred to in this claim by its name, and as "the defendants in total," FHLBank of Cincinnati is a perpetrator to the deprivation of rights under the color of law, for malfeasance, nonfeasance, unjustified restraints on life, liberty and personal property, self-dealing, complicity in financial abuse and fraud, abuse, neglect and exploitation,

involuntary servitude and forced labor, and for its role in the conspiracy against the rights of Joel M. Blust, in guardianship and other protective arrangement and the irrevocable trust—JEHOVAH; It is being sued in its individual and official capacity.

6) With respect to the defendant, Joseph E Bedel Jr. At 554 Pedretti Ave. Cincinnati, Ohio 45238, he is the presumed next-of-kin in guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, fraudulently added to the trust for purposes of self-dealing, fraud, abuse, neglect and exploitation, and obtaining real property of significant value that belongs to the sole beneficial owner of the irrevocable trust—JEHOVAH. He is a custodian of the plaintiff as the presumed fraudulent next-of-kin, and the co-facilitator of online, social media and live streaming content, and events, and to, "the parties to the defendants," along with any other authoritarian role(s) he may play, under guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, to Joel M. Blust. He is referred to in this claim by his name, as "the defendants," and "the defendants in total," Joseph Bedel Jr. Is a perpetrator to the deprivation of rights under the color of law, for malfeasance, nonfeasance, abuse, neglect and exploitation, unlawful detention, unjustified restraints on life, liberty and personal property, discrimination, illegal coercion and intimidation, failure to keep from harm, interference with a federally protected activity, involuntary servitude and forced labor, and for his role in the conspiracy against the rights of Joel M. Blust, in guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH. He is being sued in his individual and official capacity;

7) With respect to the defendant, Elliott Spence, of Cincinnati, Ohio, he is assumed fraudulently added as a co-trustee, along with any other authoritarian role(s) he plays under guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, he is

presumed to be the idea person, behind the online, social media and live streaming content, of guardianship and other protective arrangement, augmented reality and remote monitoring, and he is the co-facilitator with Joseph E. Bedel Jr, he is believed to have a high value net worth, and possibly made his fortune in the supportive/substitute decision making, tortureware, and AI software and device, technology industry. He is referred to in this claim by his name, as "the defendants," and by "the defendants in total." Elliott Spence is a perpetrator to the deprivation of rights under the color of law, for his role(s) as presumed co-trustee/co-facilitator, discrimination, illegal intimidation and coercion, involuntary servitude and forced labor, abuse, neglect and exploitation, unlawful detention, unjustified restraints on life, liberty and personal property, interference with a federally protected activity, and for his role(s) in the conspiracy against the rights, of Joel M Blust, in guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH. He is being sued in his individual and official capacity;

8) With respect to the defendant, Meredith Simpkins, Attorney, Kenton County, Department of Public Advocacy, at 1534, 333 Scott St. #400, Covington, Kentucky 41011. Defense counsel to the plaintiff in case no. 23-CR-01060, in Kenton County Circuit Court, she is referred to in this claim, by her name, as Ms. Simpkins, and as "the defendants in total," she is in breach of ethics and her official duties as counsel. Meredith Simpkins is a perpetrator to the deprivation of rights under the color of law for nonfeasance, misfeasance, malfeasance, official misconduct, ineffective assistance of counsel and for her role(s) as an accomplice to the conspiracy against the rights of Joel M Blust, and the irrevocable trust—JEHOVAH, and for any other roles she played as counsel to the defense, in case no. 23-CR-01060. She is being sued in her individual and official capacity;

9) With respect to the defendant, Dr. Vanessa Doyle, MD, Psychiatrist and the lead doctor in charge of care for the plaintiff while involuntarily committed, at Summit Behavioral Healthcare at 1101 Summit Road, Cincinnati, OH 45237, from August 29, 2025, to December 12, 2025. She is referred to in this claim by her name, as Dr. Doyle, and as "the defendants in total." She knowingly misdiagnosed the plaintiff as bipolar fraudulently. Dr. Vanessa Doyle, MD, is a perpetrator to the deprivation of rights under the color of law, for misfeasance, nonfeasance, malfeasance, negligence and medical malpractice, abuse, neglect and exploitation, fraud in health care information, and for her role as MD and any other role(s) she played, in the conspiracy against the rights, of Joel M Blust, in the irrevocable trust—JEHOVAH. She is being sued in her individual and official capacity;

10) With respect to, Dr. Sutton, MD, Summit Behavioral Healthcare at 1101 Summit Road, Cincinnati, OH 45237, Forensic psychologist and competency evaluator on September 9,2025; Ms. Sutton is a part of the systemic failure in the deprivation of rights and in the conspiracy against the rights of Joel M Blust;

11) With respect to Dr. Cooper, MD, Summit Behavioral Healthcare 1101 Summit Road Cincinnati, OH 45237, Forensic psychologist and competency evaluator at Summit Behavioral Healthcare, on July 19, 2024 and July 22, 2024;

12) With respect to, Ally Archual, Attorney, Hamilton County Public Defender's Office, 230 E. 9th St. #2000, Cincinnati, OH 45202, defense counsel to the plaintiff in case no's. /23/CRB/14768, case no. /23/CRB/17529 and case no. /23/CRB/8753, in Hamilton County Municipal Court, Ms. Archual is a part of the systemic failure, in the deprivation of rights and in the conspiracy against the rights of Joel M Blust;

13) With respect to, Judge Dante Johnson, Hamilton County Municipal Court, 1000 Sycamore St. Cincinnati, Ohio 45202, was the presiding judge on several occasions in the conspiracy against the rights of Joel M Blust, Judge Dante Johnson is a part of the systemic failure in the deprivation of rights and in the conspiracy against the rights of Joel M Blust, and in the irrevocable trust—JEHOVAH;

14) With respect to Judge Mary Molloy, Kenton County, Circuit Court, at 230 Madison Ave. Covington, Kentucky 41011, was the presiding judge in case 23-CR-01060, and the due process violations surrounding that case, she is a part of the systemic failure, in the deprivation of rights and in the conspiracy against the rights of Joel M Blust;

15) With respect to, Tabitha Hochscheid, Attorney at Law, 810 Sycamore St. Cincinnati, Ohio 45202, (513) 338-1818, defense counsel to the plaintiff in case MI 2025001178, in Hamilton County Probate Court, Ms. Hochscheid is a part of the systemic failure, in the Deprivation of rights and the conspiracy against the rights of Joel M Blust, and in the irrevocable trust—JEHOVAH;

16) With respect to, Richard Magnus, Attorney, Hamilton County Public Defender's Office, 230 E. 9th St. #2000, Cincinnati, OH 45202, defense counsel to the plaintiff in case no. 25/CRB/9548, in Hamilton County Municipal Court, Mr. Magnus is part of the systemic failure as he is presumed to have conspired with the defendants in the deprivation of rights and the conspiracy against the rights of Joel M, and in the irrevocable trust—JEHOVAH.

17) With respect to, Greater Cincinnati Behavioral Health Services Madison Injection Clinic, at 1501 Madison Road, 3rd Floor. Cincinnati, Ohio 45206, site of case management and scheduled Injections of Risperdal Consta, biweekly to the plaintiff; GCBHS, is a part of the

systemic failure in the deprivation of rights and in the conspiracy against the rights of Joel M Blust;

18) With respect to, Summit Behavioral Healthcare, at 1101 Summit Road, Cincinnati, Ohio 45237, was incarcerated or involuntarily committed on two occasions for competency evaluations, is part of a systemic failure, involved in the deprivation of rights and in the conspiracy against the rights of Joel M Blust, and in the irrevocable trust—JEHOVAH;

## VENUE AND JURISDICTION OF UNITED STATES DISTRICT COURTS:

1) SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION AT CINCINNATI is the proper venue;

2) Pursuant to [ 28 U.S.C. § 1391 ] VENUE GENERALLY – the plaintiff's resistance, is in this venue, as well as the defendant's places of business, and as a substantial part, of the events, took place in CINCINNATI, OHIO, HAMILTON COUNTY; PERSONAL JURISDICTION, as all defendants, have minimum contacts, or either own property, and/or handle their affairs, within the state of Ohio, in Hamilton County;

3) Jurisdiction arises under [ 28 U.S.C § 1367 ] providing for SUPPLEMENTAL JURISDICTION IN THE DISTRICT COURTS, as the same case or controversy, and/or common nucleus standard applies to the guardianship and other protective arrangement, of JOEL M BLUST, and the irrevocable trust—JEHOVAH, as well as, Mental Illness case no. MI 2025001178, in the Hamilton County, Probate Division, Court of Common Pleas, and is directly related to the subject matter, of the deprivation, of Joel M Blust's rights, and the conspiracy against the rights of Joel M Blust;

4) Jurisdiction also arises under [ 28 U.S.C. § 1446 ] - REMOVAL OF CIVIL ACTIONS. To remove the case of guardianship and other protective arrangement of JOEL M BLUST, and the irrevocable trust—JEHOVAH, and case no. MI 2025001178, from Hamilton County, Probate Division, Court of Common Pleas, to the United States District Courts, Southern District of Ohio, Western Division, at Cincinnati for active violations in law and rights, guaranteed by the Constitution, to the United States of America;

5) Jurisdiction also arises under [ 28 U.S. Code § 1332 ] - DIVERSITY OF CITIZENSHIP- As the Diversity in this case, is between the plaintiff, in Pro Se, Joel M Blust, who resides in the state of Ohio, Hamilton County, and the defendants James Greg Dooley Sr. and Angela;

6) Dooley, Grantor/Trustee of the irrevocable Trust—JEHOVAH, who reside in the state of Kentucky, Kenton County, and Meredith Simpkins, whose place of business is in the State of Kentucky, and may also reside in the state of Kentucky. As they have minimum contacts in this Jurisdiction. The sum in question is more than $75,000, as the value of the Estate of the irrevocable trust—JEHOVAH, and Joel M Blust is in question, as well as the plaintiff's demands for compensation, and damages in relief, is exceeding $75,000.

7) And in FEDERAL QUESTION [28 U.S.C. § 1331] – as the case is also in Federal question, with original jurisdiction of this civil action being the United States District Court, Southern District of Ohio, Western Division, as it involves the conspiracy to deprive a person of rights, procedural and substantive due process, the ineffective assistance of counsel, procedural misconduct, the freedom of association, the deprivation of religious freedoms and hate crimes, breach of trust and fiduciary duties, fraud, involuntary servitude and/or forced labor, stalking and domestic violence, illegal search and seizure, freedom of association, freedom of speech,

unjustified restraints on life, liberty and personal property, claims of abuse, neglect, and exploitation under guardianship and other protective arrangement, as well as the deprivation of rights under the color of law and the failure to inform of the nature and cause of actions against, failure to intervene, failure to take action when the law demands, among other violations in question pursuant to the federal and state laws and to the Constitution of the United States of America;

8) Claims against rights, and under the color of law, arise pursuant of, [42 U.S. Code § 1983 CIVIL ACTION (UNDER COLOR OF LAW) with (MONELL V. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658), TYPE-PROOF; And also [18 U.S.C. § 242 ] DEPRIVATION OF RIGHTS (UNDER THE COLOR OF LAW) AND also [18 U.S.C. § 245] – FEDERALLY PROTECTED ACTIVITIES;

9) And also [28 U.S.C. § 1443] – CIVIL RIGHTS CASES; And [28 U.S.C. §1343 ] providing DISTRICT COURTS ORIGINAL JURISDICTION OF CIVIL RIGHTS VIOLATIONS;

10) And for claims of conspiracy, arising pursuant of, [ 42 U.S.C. § 1985 ] AND [ 42 U.S.C. § 1986]- CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, AND THE ACTION FOR NEGLECT TO PREVENT, AND [ 18 U.S.C. § 241 ] – CONSPIRACY AGAINST RIGHTS;

11) And arise against property rights pursuant [ 42 U.S.C. § 1982 ] PROPERTY RIGHTS OF CITIZENS;

12) And laws against hate crimes, arising pursuant of [ 18 U.S.C. § 249 ] –AND HATE CRIMES; AND [ 42 U.S.C. § 12203 ] - ILLEGAL COERCION AND INTIMIDATION;

13) And [ 18 U.S.C. § 1589 ] - FORCED LABOR, AND [ 18 U.S.C. § 1584 ] – INVOLUNTARY SERVITUDE;

14) And illegal interception and disclosure of communications, pursuant [ 18 U.S.C. § 1511 ] – ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA) OF 1986, SPECIFICALLY, (THE WIRETAP ACT); And [ 47 U.S. Code § 605 ] - UNAUTHORIZED USE OF SATELLITE COMMUNICATIONS

15) And Civil Recourse pursuant [42 U.S. Code § 1997a] – FOR THE INITIATION OF CIVIL ACTIONS (CRIPA) And [ 28 U.S.C. § 2201] – FOR DECLARATORY JUDGEMENT

## CLAIM 1: ALLEGING COMPETENCE OF PERSON,GIVING SATISFACTORY PROOF; FOR THE TERMINATION OF GUARDIANSHIP;

1) The Plaintiff, Joel M. Blust, as of March, 2026, is alleging competence of person, and doing so in a written allegation, as part of civil action, through a 42:1983. & 1985. as part of a complaint. Joel M. Blust, doesn't have any non-artificial disability, or non-artificial limited disability, and is a competent person able to live his day to day life without any monitoring, assistance, or support from any person, device or service, and is capable of making all decisions regarding all of his care, including but not limited to sexual, personal, financial, housing and medical needs.

2) Any and all disability, or illness had, or referred to is artificial in context. The artificial disabilities are intangible to the plaintiff, as they are a part of, and in consequence to, AI devices and services, supportive/substitute decision making, remote monitoring, 3D, wave imaging and holograms, haptic, augmented reality, and all other AI and related devices, that are

on, around, affixed, or attached to the plaintiffs person and personal property, and coordinate in conjunction with guardianship and other protective arrangement, and the silent, irrevocable trust—JEHOVAH, and are being used by, and on behalf of, the defendants, James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr., Elliott Spence FHLBank of Cincinnati and Hamilton County Probate Division, Court of Common Pleas. The artificial disabilities make for the lack of rights, and personal autonomy had, on behalf of the plaintiff. Enabling the results of failed duties in support and care for the ward, of the courts, guardian and trustees as the main cog of the abuse, neglect and exploitation of the plaintiff, Joel M Blust. Inflicted disabilities, being exploited regularly, and daily, at his residence, in public, in moments of expected privacy, and while incarcerated and involuntarily committed, resulting in a low standard for, quality of, and enjoyment in the plaintiffs life, and are continuous violations on the plaintiffs' Constitutional rights and on his inherent and fundamental life, liberty and personal property.

3) The defendants, James Greg Dooley Sr. And Angela Dooley, have not since August 20, 2004, and still currently present day and everyday, among other things, provided notice and cause of the actions against the plaintiff, doing this specifically due to the fact the plaintiff is competent, and isn't inherently disabled or limited in any way. They are in breach of trust terms and of fiduciary duties, and have been for no less than the past 14 -21 years, as the trust—JEHOVAH was in breach before the policy of a silent trust was amended, in 2007 waiving the right to beneficiary notification. The ward in a guardianship of a person is also supposed to be provided notice and cause by law, upon request. There is no way the plaintiff would want, or allow the guardianship of the person to continue upon notice, nor would there be any purpose, or cause for guardianship to continue. Upon giving satisfactory proof the guardianship is no longer needed, the courts will terminate the guardianship. Satisfactory proof is evidence, deemed

sufficient by a legal, professional, or administrative authority to establish a fact, verify identity, or support a claim, usually creating "moral certainty." By all accounts and on paper, it should be and is easier to terminate a guardianship completely, than it would be to have one continue on incompetence if the ward is a competent person, as the standard for proving incompetence is by clear and convincing evidence. Along with actually having the competence of person, this allegation of competence is what the plaintiff, Joel M. Blust, is alleging to be the satisfactory proof of competence, suggesting that the guardianship is no longer needed or was never needed. Upon termination of guardianship the state acknowledges no true, inherent disability had, on behalf of the person in question. Therefore, upon the entry of termination, the ward would be met with the determination of a competent status. Implying that one, upon termination the ward is fully restored his rights, and relieved of disabilities in full, meaning all disabilities removed. Second, it suggests to the plaintiff, the state as telling us, "upon the ward alleging competence, the court is recognizing the fact that the only thing that was making for the incompetence of the ward, were the inflicted artificial disabilities and/or devices and services being used." To allege something, is to assert something as true, and suggests the person giving the assertion as having competence, because, he wouldn't be asserting the fact, if it wasn't done confidently and convincingly. It couldn't be done confidently and convincingly, without the competence of the person. Therefore, the assertion supports the allegation," in and of itself. The needed, written, asserted allegation itself, being prima facie evidence as the supported documentation of the court, "verifying the identity," of the competent ward, and the state of mind needed to create moral certainty, to support the fact of competence itself. Also being what's needed as the satisfactory proof to terminate the guardianship of person. Since there is no true, inherent disability being recognized by the court, that would render the ward incompetent "upon the

potential termination of guardianship," the asserted allegation of competence, "on behalf of the ward," becomes legally supported in context, and is especially so if the ward is asserting that theory in an allegation of competence to the court. Upon that assertion to the court, the fact of incompetence couldn't be proven by clear and convincing evidence, which would need to be "precise, explicit and lacking confusion, creating a firm belief, or conviction, without hesitation," that the person is incompetent. Which couldn't be done by the court, or by the defendants in this case, due to the plaintiff's competence of person, and this legally supported, written petition, asserting the allegation that is identifying the competence of person, and gained capacity of the ward in the matter. Showing proof of the capability of communicating thoroughly, managing his own affairs, and understanding legal and professional proceedings, on behalf of the plaintiff.

4) The defendants, James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr, Elliott Spence and Hamilton County Probate Division, Court of Common Pleas, since August 20, 2004, and still currently present day today, March, 2026, while Joel M Blust is in his residence, in public, in private, in moments of expected privacy, and while incarcerated and involuntarily committed, have not sought limitations, or termination of guardianship and other protective arrangement, despite several hundred attempts by the plaintiff of making his wishes, and thoughts on the matter known, and trying to gain information into the matter, showing the need for guardianship and other protective arrangement is no longer needed. The defendants are aware the plaintiff can function independently, making for unjustified restraints on life, liberty and personal property, with the unlawful detention of the plaintiff's person. The defendants are not supportive of the plaintiffs best interests, nor do they act with a person centered approach or mind set, of having the minimum amount of restrictions necessary to achieve the purpose of the trust, resulting in the abuse, neglect and exploitation.

## CLAIM 2: BREACH OF TRUST; BREACH OF FIDUCIARY DUTIES; AND THE UNLIMITED RIGHT TO COMPROMISE AN UNCONSCIONABLE CONTRACT;

5) The plaintiff's acknowledged father was believed to be a commercial mover for a company that is unknown to the plaintiff, when he died. It is possible the acknowledged father's residence was in Campbell or Kenton County, Kentucky at the time of death, for county records purposes. It's believed the acknowledged father died testamentary with the plaintiff, Joel M Blust, named in his will. The trust—JEHOVAH, was presumed to have been created as a result of a wrongful death life insurance policy claim, with a payout of one million dollars, which is a standard amount for wrongful death insurance claims. It's believed and presumed the defendants, James Greg Dooley Sr. and Angela Dooley, whose consanguinity to the plaintiff, is blood relatives, as Mothers' sister, and Mothers' sisters husband, were entrusted with the care of the plaintiffs property, creating a protective arrangement, to manage the property of the plaintiff. They drafted an irrevocable trust, around the year 1994. The plaintiff Joel M Blust, is the sole beneficial owner, as the policy holder in due course, of Cestui Que Trust—JEHOVAH, presumed to be in the Hamilton County Probate Division. Court of Common Pleas. It is believed and presumed the acknowledged father's testamentary left specific instructions or bequest, mandating the trustee's distribution of real property, with the terms upon the beneficiary, Joel M Blust, as being, reaching the age 18, as the "milestone," within the trust instrument mandating distribution.

6) Since the plaintiff, JOEL M BLUST, has turned 18, August 20, 2004, and currently still today, in March, 2026, the defendants James Greg Dooley Sr. and Angela Dooley, have been in breach of trust, and are in breach of their Fiduciary duties to the beneficial owner of the irrevocable trust—JEHOVAH, Joel M Blust, (JEHOVAH BLUST). The defendants are acting in bad faith, withholding funds permanently, and arbitrarily, based on greed, and the personal

dislike for the plaintiff. The defendants James Greg Dooley Sr, Angela Dooley and Joseph Bedel Jr. are acting as a private guardians, appointed under a protective arrangement or trust, and are considered officers of the court, acting under the authority and supervision, of the probate court. They are supposed to be obeying court rules, filing regular reports, and managing assets and/or personal affairs of the plaintiff, within the specific limits set by the judge, in the Hamilton County Probate Division. Court of Common Plea. Under the direction of the Hamilton County Probate Division, Court of Common Pleas, the court is in breach of fiduciary oversight, and being in violation of failure to intervene, and failure to take action when the law demands. With violations of 14th Amendment due process of law, fundamental fairness, the equality of the law, prosecutorial misconduct, ineffective assistance of counsel, and/or no counsel, and systemic abuse, negligence and exploitation against the plaintiff and the plaintiff's rights. The Probate Division has done this in bad faith, with dishonesty, malice, by ignoring established law for unfair advantage, concealing evidence, and fabricating facts. With a deliberate refusal to adhere to legal standards by failing to take action upon the plaintiffs motions and/or petitions for modification and termination of guardianship and unsealing of the court records. By not giving the plaintiff notice and cause of guardianship, not verifying disability, and/or waiving the plaintiffs right to be present at the hearing for guardianship, and/or not holding a hearing for guardianship. The Probate Division failed to intervene numerous times throughout the course of the matter while knowing the plaintiff is not disabled, is not mentally ill or challenged, is being exploited online through social media and live streaming content and networks, and it's presumed and believed, the Probate Division has been knowledgeable of every failed and malicious aspect of the illegal silent guardianship and in the irrevocable trust—JEHOVAH. As the irrevocable trust —JEHOVAH, is presumed to have one of the largest estates in the United

States, and if they weren't knowledgeable in what is taking place, that would suggest incompetence on the part of the Court, along with the presumed fact the defendants are operating in a very social atmosphere, and the network has been conducive to just about any and every profile known to man. The plaintiff would have a hard time believing, the Hamilton County Probate Division, is not also an iatrical part of the conspiracy of keeping the facts to the trust, and the breach of trust terms silent, while knowledgeable, and creating a conducive atmosphere for the defendants in this case. This aspect is a key clue in the evidence implying a deliberate indifference, and most likely, the bribes and pay offs of persons and state actors, within the Hamilton County Probate Division.

7) The plaintiff is alleging based on this evidence, the Hamilton County Probate Division, had an iatrical role, three years after the mandated distributions of real property to the plaintiff was owed, in the Ohio Trust Code, conveniently being revised, on January 1, 2007, to meet the needs of the defendants, James Greg Dooley Sr. and Angela Dooley, creating the path for the terms that waive the beneficiary's right to notice of trust, by nominating a beneficiary surrogate to receive notice in place of the beneficiary. While also conveniently being, one of only a handful of states, that allows this to continue past the beneficiary turning the age of 25. In 2007, making completely different mandates in the trust code, regarding notification in Ohio, 3 years after the defendants were in breach.

8) The irrevocable trust—JEHOVAH, is an unconscionable contract, due to contrary terms and a gross disparity in power, leading to the abuse, neglect and exploitation of the plaintiff. The defendants are the stronger party, exploiting the weaker party's lack of knowledge, and/or leverage, through unfair surprise, and hidden terms. The trust terms are voidable, and should be stricken and ruled invalid, in the irrevocable trust—JEHOVAH.

9) The beneficiary's right to notifications being waived or "silent," and the naming of a surrogate beneficiary, has a triggering event, and set amount of time designated for giving notice to the beneficiary, as being, "the death of both the Grantor and the Trustee, "James Greg Dooley Sr. and Angela Dooley." of the trust—JEHOVAH." This triggering event is not conducive to the purpose of the trust. The purpose of the trust was to invest the life insurance policy for the benefit and on behalf of the plaintiff, in a wrongful death claim. The terms making the trust—JEHOVAH, a "silent" trust, should be stricken, for providing the defendants with the opportunity to completely strike the beneficiary from the purpose of the trust. A trust may be created only to the extent that its purposes are lawful, that it is not contrary to public policy, and is fully possible to achieve. Achieving is something possible to accomplish, attain, or complete, often within a set time frame or with reasonable effort, describing goals, tasks or results that are realistic and capable of being accomplished. The defendants have in essence completely cut the beneficiary out of the trust all together. There is nothing to achieve and accomplish, and there is also no timeframe on the deaths of the defendants, to make it achievable, as their deaths can not be specifically pinpointed to a date or time. They have made the trust's purpose and its terms, entirely about the Grantor and Trustee. So what is the purpose of the irrevocable trust—JEHOVAH, if it's not for the purpose and benefit of its "beneficiary."

10) The terms of a silent trust, create improper fiduciary limitations, remaining undisclosed, after the beneficiary has reached the age of 25, "and now being 39," and having formally requested his right to the notice of, information, account, inventory, and to distributions of trust. This is violating Ohio Trust Code, and violating legal doctrines on trusts. These terms leave the beneficiary without notice of the trust or its terms, and without cause, as there is nothing the beneficiary can do to expedite the process of administration, or even hold the trustee

accountable. In addition to there being a plenary guardianship in which the plaintiff is under extreme duress, extreme abuse, extreme neglect, extreme exploitation and torture. The defendants constantly harass the plaintiff in order to keep him under constant controversy of person, to seem like he's unfit to manage. That being the plaintiff's purpose, and the extent of his existence, within the trust—JEHOVAH, and in its terms. "The trust exists and its assets shall be held, for the benefit of its beneficiaries, in accordance with the interests of the beneficiary to the trust." With the plaintiff, all but cut out, and with no way to achieve the terms of notice, the insurance policy and assets within the trust are stolen, making the trust not in the best interests, "or in the interests at all," of the beneficiary. Preventing the beneficiary from acting as a steward of his own best interests, by eliminating the legal requirement for transparency. Also then undermining the surrogate beneficiary, and therefore undermining fiduciary accountability without a beneficiary, the purpose of the trust—JEHOVAH, is then to defraud creditors, by stock piling all of James Greg Dooley Sr. and Angela Dooley's owned assets, into the irrevocable trust—JEHOVAH. While they think they are never having to be held accountable to anyone. The statute allowing the terms to the trust—JEHOVAH, to be "silent," doesn't mention anything about waiving the beneficiary's right upon request. Once the beneficiary requests the information, the trust isn't silent anymore.

11) The entire trust —JEHOVAH, was hidden at the expense of the years 18 -39 years old, of the plaintiffs life. The trust is presumed to have been invested on behalf of the plaintiff, "or supposedly for that purpose, obligating the defendants to invest the money for the betterment of the plaintiff, and in the plaintiff's best interests. The defendants presumably, invested the money shrewdly, in Apple (AAPL) stocks, at the time. The plaintiff is treated much worse than most people treat their dogs, as the terms to a silent trust are unconstitutional and terms to a

silent guardianship are highly illegal, and have turned the plaintiff into a slave. There are no statutes that make for a silent plenary guardianship, or silent guardianship at all. As that is also void, and should be invalidated, as it is not conducive to the equality of law, or to the right of fundamental fairness.

12) The trust—JEHOVAH is believed and presumed to have gone 15 years without naming a surrogate beneficiary, while still being considered, and operated in the manner of a silent trust. The surrogate beneficiary was named after the fact, as the trust instrument named Karen Blust, as beneficiary surrogate around 2024. While communicating through guardianship devices, Angela Dooley was noticeably not clear on what or who the surrogate beneficiary is. She named Karen Blust at the time, and later in 2025, while communicating through the same guardianship devices, when she realized Karen Blust will be in the same breach of trust and of fiduciary duties the defendants are in, she suggested on amending the trust instrument to show a different surrogate beneficiary. Then when she was informed that amending Karen Blust out and inserting a new surrogate would not keep the defendants, or the trust instrument from being invalidated, she implied on the defendants cheating and paying bribes to be able to keep and withhold evidence of amended documents and terms in order to win the case. The de facto surrogate beneficiary, is Karen Blust, the plaintiffs mother and Angela Dooley's blood sister. She is knowledgeable, and guilty of all or most of the same facts and violations as the defendant's, with the presumed surrogate beneficiary being Karen Blust. It's also been said that presumably, Angela Dooley, is also the "guardian," of Karen Blust. Making Angela Dooley, the trustee and the de facto beneficiary, at the same time. The surrogate, also failed to inform the beneficiary, not requiring any accounts, inventory, notice of any actions, prevent any self-dealing, fraud or misappropriations, while not looking out for the best interests of the beneficiary. She did not

require the defendants to distribute the real property owned by the plaintiff. The surrogate stood by, while the defendants misappropriated and commingled funds, committed abuse, neglect and exploitation of the beneficiary, misused and withheld real property belonging to the beneficiary, ignored conflicts of interest, and acted with favoritism towards everyone not entitled the beneficiary of the trust—JEHOVAH. Karen Blust never acted in the capacity of surrogate beneficiary, and she didn't even know she was the surrogate beneficiary, Therefore the waiver or modification made under the Revised Statutes should no longer be effective. The beneficiary surrogate is not acting in that capacity. On top of that in this situation, the surrogate beneficiary couldn't be acting in the capacity of surrogate and not be in breach of trust and in fiduciary duties, when the Grantor and Trustee are both in breach. They would all be in breach together, as the capacity calls for the surrogate to have the same duties that the defendants are in breach for, and one of the surrogates duties, would be to hold the Trustee accountable, which is not being done. The terminology for the waiver of notice to the beneficiary, creating a silent trust, should be stricken from the trust—JEHOVAH, and all information and notice being made available to the beneficial owner, Joel M Blust, sua sponte. The Grantor and Trustee should be removed from all or part of their fiduciary duties in the trust—JEHOVAH. All transactions not in the best interests of the beneficiary or in the best interests of the trust—JEHOVAH, from August 20, 2004, until current day should be void and invalidated with the property or assets returned to the ownership of the beneficiary and/or the trust—JEHOVAH. The monetary damages that stem from these breaches should be granted in full.

13) R.C. 5801.03 states, "a person has knowledge of a fact, if the person has actual knowledge of the fact," and also, "from all the facts and circumstances known to the person, at the time in question, the person has reason to know the fact." The facts and information making

up the body of the existing claims drafted in this civil justice action, by Joel M Blust, are presumed to be factual evidence in this matter and the plaintiff is expecting the court to acknowledge the facts putting the burden of proof to all allegations, and the rebuttal of any and all presumed factual evidence, to be on the defendants in this case. As these facts have been communicated, via electronic communication devices online, social media and live streaming, via content and networks. These forms of communication are considered an actual form of communication, in the year 2026. This statute literally suggests something like knowledge of a fact via communication, via electronic communication device, or hear say in some form. This also suggests circumstantial evidence and self authenticated and/or presumed factual evidence. Either way the facts are known to the plaintiff well enough, he would declare them as facts onto the court, and doing so, closely enough related to the facts, as they are in truth, to determine the allegations as facts. It's been said the online content is a part of the Twitch platform, and the Facebook Live platform, however, when the plaintiff went on both sites he couldn't use the services, or get on any video streaming content. The plaintiff is below average in information technology, and well below average in online social media content, as it has been said this is the only way this could have happened. Either way, the online platforms look foreign to the plaintiff and the communication is being had, and is being taken as an actual form of communication, and is really the only way the plaintiff has and/or even could have come across most of this information.

14) The Ohio Judicial Conference guardianship guide book states, "only the probate court where the ward resides can appoint a Guardianship." Every county in Ohio, has its own probate court or family court, which handles the guardianship proceedings. The guardianship process is an important legal proceeding that can greatly reduce a person's rights. The plaintiff in

this case is a legal resident of Hamilton County, Ohio, all of his life, and has never resided in any other county. The plaintiff also knows, as it's presumed to be currently, in March, 2026, the plaintiff is under plenary guardianship. Therefore, the defendant, Hamilton County Probate Division, Court of Common Pleas, is presumed to be the Municipality in which the plenary guardianship is actively appointed. The case file and record is presumed to be sealed, or restricted access to the public, however, it is highly illegal to seal and or restrict the case file and records of a guardianship to the ward, as the ward has guaranteed rights in guardianship, regardless if it's a part of a protective arrangement trust or otherwise. The Hamilton County Probate Division, does not justly have the free reign to take the plaintiffs fundamental rights of person, and withhold them under silent terms without having any accountability, and without justification in taking the rights, while completely disregarding and invalidating the Constitution. The Probate Division, is being demanded, with the utmost urgency, to comply with the unrestricting of the guardianship and other protective arrangement case files and records, of Joel M Blust, and in the irrevocable trust—JEHOVAH, and is being compelled to grant judgement and/or order for the relief in total, that is prayed for on behalf of the plaintiff and this civil justice action.

15) The terms of an illegal "silent" plenary guardianship of person, as well as part of the protective arrangement trust, in the irrevocable trust—JEHOVAH, in March, 2026, and presumably, the entire time while the plaintiff has been on guardianship, has the plaintiff in or at some unidentified, "specific place of dwelling, or abode" possibly as part of a medical decision made by the defendants James Greg Dooley Sr. and Angela Dooley. The treatment and/or "specific place of dwelling," as the un-needed and un-wanted treatment or medical decision made by the defendants, James Greg Dooley Sr. and Angela Dooley, on behalf of the plaintiff, is

causing the plaintiff to live in a setting in which he is unaware of his situation and surroundings in total. The plaintiff is not sure where or what exactly the "specific place of dwelling" is, what it's used for, or how it's being administered unto the plaintiff. However, the plaintiff believes this is part of the reason the state has found him incompetent, due to this place being part of a medical decision regarding the least restrictive environment, and possibly the "structural well-being" of the plaintiff and oftentimes the initiating of this "specific place" is pressured into by medical professionals and is encouraged at getting a second opinion and taking family's and the wards beliefs and religion into the decision being made. If it was a "common place," it wouldn't be a "specific place," or an abode. It's presumed the specific place of dwelling," is in relation to the Illuminati and/or Illuminati corp. and it is also to be in the terms of the trust instrument. As this is what stands out to the plaintiff, as the involvement of the Illuminati and/or Illuminati corp. anytime beliefs However, it was implied to the plaintiff, via electronic communication, and AI and related devices, online, social media and live streaming network, when communicating, to make it understood that the plaintiff "wants to come home," and that's the case in this case, with Joel M Blust, in the irrevocable trust—JEHOVAH. As abode literally means, "temporary stay." However, the plaintiff believes he is still in a community setting, through the use of AI devices and/or services. The terms violate fundamental rights to freedom of conscience, thought and religion, enshrined in the constitution. The defendants should actually be invalidated and removed as guardians and/or trustees, of the irrevocable trust—JEHOVAH, sua sponte; as this type of decision is also required to be made with full disclosure to the plaintiff and in the wards best interests, which neither has happened.

16) The defendants James Greg Dooley Sr and Angela Dooley and Joseph Bedel Jr. In March of 2026, have not complied with any of the Superintendence Rules to guardianship or

other protective arrangement, governing all Ohio state courts; and consequently, governing them in their roles as, Guardian/Grantor/Trustee/Next-of-Kin:

17) Currently, in March, 2026, the plaintiff, Joel M Blust has not formally been evaluated for having a disability, and disability has not been confirmed, not upon reaching the age of majority, or upon appointment of guardianship and other protective arrangement. The defendants, James Greg Dooley Sr. And Angela Dooley, and Joseph Bedel Jr. do what they can, and have hacked the software and system, with the intention of causing a disability to the person of Joel M Blust, altering the person significantly. The defendants currently, in March of 2026, have given no order of appointment, no guardian's plan, "which is required annually," and no statement of rights subject to guardianship. The plaintiff has never seen an inventory in any amount, or an account of any kind, of the irrevocable trust—JEHOVAH, and has never been privy to that information. Upon request of the information, in March, of 2026, verbally via cellular phone and before that, in December, of 2025, verbally via cellular phone, and before that even, as the plaintiff has verbally requested the information through the electronic communication online, social media and live streaming, had with the defendants daily.

18) Since Fall and winter, of 2022, and since at least 2015, and still currently present day, in March, 2026, the defendants, James Greg Dooley Sr. and Angela Dooley, and Joseph Bedel Jr. Do not support or provide the ward with any kind of maintenance for basic care and needs, as the plaintiff basically has nothing to speak of. The defendants keep the person, Joel M Blust, at unspeakably low levels, of operating day to day tasks and activities. Everything on the plaintiffs body hurts, and it's directly related to the system hacks and excessive user permissions, the defendants have over the person and control of the plaintiff and his rights. Everything the plaintiff has physically was obtained by the plaintiff in this diminished state, and anything the

plaintiff doesn't have, is due to the diminished state. The plaintiff is forced to be on government assistance benefits against his wishes, leaving no room to enjoy life after the hacks and hoaxes of the defendants. The plaintiff is stuck in third world poverty, and the defendants should not have any powers or authority over the plaintiff's person or his rights.

19) Currently in March, 2026, and everyday since August 20, 2004, the plaintiff, Joel M Blust, is not under the least restrictive alternative to guardianship, as the plaintiff believes the trusts terms make it so that the defendants, James Greg Dooley Sr. And Angela Dooley, have the powers of a plenary guardianship, or terms that are very closely related, without there being a need for any guardianship at all. Any circumstances revolving around the question for guardianship, never existed, have changed, or are no longer necessary. The defendants keep on implying over electronic communication devices as if they are amending the trust instrument as they go, and as the plaintiff understands the current terms, they imply as if they can pay to have information and evidence withheld. They imply assets will be excluded from the accounts and inventory given to the plaintiff. That is called fraud, not good business. Less restrictive alternatives to guardianship and other protective arrangement, are available because the plaintiff doesn't have any inherent disability and would function just fine, and even better, without guardianship and supportive/substitute decision making devices and services, or the AI and related devices and services. The defendants are not ever imposing the least limitations on the ward's rights, freedoms, or ability to control his own environment. The plaintiff believes the least restrictive alternative to guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, is: termination, and the restoration of full rights to person, and relieving disabilities in full, with no restrictions on real and/or personal property. With the resolution to any issues between the assets to the estate being supervised mediation between the parties, to

discuss what's fair, in a 50/50 distribution, and discussing why it's fair. As opposed to the least restrictive alternative being: the full restoration of rights to the person of Joel M Blust, with some kind of conditional, targeted protection limited conservator of the estate, that places no limits or restrictions on real, and/or personal property, belonging to Joel M Blust, in regards to disability and disposal of property, or the improvement of real and/or personal property. Having a limited durable power of attorney acting in a conditional manner focusing only on specific necessary assets, or tasks, and reviewed periodically for full distribution, with full distribution upon an emphasis of the plaintiff furthering his education. Specifically, if the court is concerned about the implications on the value of the assets relating to the plaintiff and the estate, and his knowledge for and understanding of, what the implications are, and of the responsibilities that come along with having a certain amount or type of wealth, and in what that might entail.

20) The process to which the Guardianship and other Protective Arrangement, and the terms under which the irrevocable trust—JEHOVAH, was acquired by the defendants, James Greg Dooley Sr. and Angela Dooley, and the process the matter is being operated in, and/or the process in which the letters of appointment were issued are unconstitutional, without a strong, justified governmental interest, without proper due process, and is an unjustifiable restraint on life, liberty and personal property, and is an unconscionable contract. The plaintiff, in March, 2026, and throughout the entire guardianship, has never been in person for, and never waived the right to, or even been notified of, any hearing, judgement, or order, in the matter of guardianship and other protective arrangement, and the irrevocable trust–JEHOVAH, in accordance with chapters 2111, of Ohio Revised Code; in the Hamilton County, Probate Division, Court of Common Pleas.

21) The defendants, James Greg Dooley Sr and Angela Dooley, and possibly Joseph Bedel Jr, in March, 2026, regarding the responsibilities involved with the guardianship and other protective arrangement, of Joel M Blust, in the irrevocable trust—JEHOVAH, do not report improvements, or complaints to the probate court. As far as improvements go, the defendants do their best at making sure no improvements are made, in regards to having structure, goals, hobbies, interests, relationships, information, social life, habits, addictions, etc. The defendants are conducive to the plaintiff having dependency issues forced through guardianship devices. When the defendants do see improvements, they do their best to cover them up, by forcing destructive behaviors, attitudes, and actions, to "mask any reasons" the plaintiff has for termination, and independence. The plaintiff has shown improvements everywhere improvements can be had and/or made, with the ability to think for himself regardless of the extra, and excessive limitations, and restrictions. The defendants know and witness, the plaintiff defying the odds in this situation, witnessing how much the plaintiff has grown as a man, even though the defendants are holding the plaintiff back, and withholding the property needed to reach his full potential, while his wishes have been made known, and are made clear almost daily, and are ignored just as often. There is zero independence, and zero self reliance, regarding the plaintiff and his personal autonomy.

22) The defendants James Greg Dooley Sr. and Angela Dooley and Joseph Bedel Jr. have never assisted the plaintiff in gaining access to the probate court, and upon the plaintiff requesting a review of the guardianship, as provided for in the Ohio Revised Code, or otherwise on their own, upon request and/or because guardianship and other protective arrangement is no longer necessary. They lie about having a guardianship period. It's the plaintiffs right to freedom to associate with whoever he wants to, and petition the government for redress of injuries.. The

ability to access information to terminate or modify guardianship, and the accessibility of the Probate Division, Court of Common Pleas in general, is being restricted and made inaccessible, through control of the plaintiff in his actions, thoughts and words, and by exclusion and isolation, misinformation or no information at all.

23) The guardian and ward have no personal relationship whatsoever in the guardianship and other protective arrangement of Joel M Blust, and in the irrevocable trust —JEHOVAH. The plaintiff, currently in March, of 2026, and back to 2016, and before that, the plaintiff rarely or never sees or talks to the defendants, James Greg Dooley Sr. and Angela Dooley, or Joseph Bedel Jr. in person, and the plaintiff doesn't have their phone numbers even. The plaintiff doesn't have any friends or acquaintances he sees or talks to in person anymore at all, as everyone has bought in to the ghosting and gas lighting, due to the popularity of the online, social media and live stream content and the type of profiles it has attracted, or due to limitations or restrictions on visitation on behalf of the defendants. The presumed buyout with bribes on the part of the defendants has been at the expense of all the old friends of the plaintiffs.

## CLAIM 3: CONSPIRACY AGAINST THE RIGHTS; AND THE INVOLUNTARY SERVITUDE AND FORCED LABOR OF JOEL M. BLUST

24) The defendants James Greg Dooley Sr. and Angela Dooley are under the color of law, as court appointed plenary guardians and custodians of the plaintiff. Violating fundamental and inalienable rights, given to the plaintiff by the Constitution, of the United States of America, with court appointed powers, as plenary guardians. They can be sued under 42:1983. statute in their individual and official capacity, due to this power.

25) The defendants can also be sued under the 1985. statute for being the facilitator's of online, social media content and live content and networks, and for a joining of the minds, between James Greg Dooley Sr. and Angela Dooley, Joseph Bedel Jr, Elliott Spence, and the Hamilton County Probate Division, and Ms. Meredith Simpkins, and Dr. Vanessa Doyle and FHLBank of Cincinnati, among others, in the years 2024, 2025, and 2026, enjoining together to conspire presumably online, social media and live, and more likely than not, in person as well, in the conspiracy against the rights of Joel M Blust. All parties presumably have a mutual understanding of violating the law, and taking tangible steps towards fulfilling a plan of crimes and violations, against fundamental rights given in the Constitution.

26) The defendants, Joseph Bedel Jr. and Elliott Spence, are under the color of law as co-conspirators with the defendants James Greg Dooley Sr. and Angela Dooley, as associated with plenary guardianship, and in the irrevocable trust—JJEHOVAH. They are also facilitating the services of Supportive/Substitute Decision Making and receiving a profit and/or proceeds from that service, qualifying their power as being court appointed or co-court appointed. They also conspired with persons who are in their capacity acting under the color of law, while violating fundamental rights granted under the Constitution. They can be sued as co-conspirators under the color of law, in the same manner, under 42:1983. & 1985. statutes in their individual and official capacity, as the defendants also conspired with a reckless disregard for the privacy of their communications, in March, 2026, the plaintiff overheard the defendants, James Greg Dooley Sr, Angela Dooley, Joseph Bedel Jr. and Elliott Spence, communicating through the electronic communication devices of guardianship, and making threats to the plaintiff, on the online, and social media and live streaming content, regarding the discussing of how they were going to collude in the discovery and proceedings process of this civil justice action, to withhold

evidence and "beat" the case, using lies, misinformation, stall tactics, abuse, manipulation, intimidation and coercion, etc.

27) The conspiracy against the rights of Joel M. Blust, started to the plaintiffs knowledge and understanding, around the time he was first aware of the electronic communication, harassment and torture, in or around the summer, of 2022, however, it is presumed, to have been taking place for numerous years, before the plaintiff acknowledged it. However, he started communicating, first-hand, with the defendants, James Greg Dooley Sr, Angela Dooley, Joseph Bedel Jr, Elliott Spence, and parties of the online, social media and live streaming content, in 2022. They have confirmed, the guardianship and other protective arrangement, to have been taking place, as far back as while the plaintiff was incarcerated in the state of Ohio, in "ORDC," from 2014 to 2016, and while incarcerated in the state of Kentucky, prior to that, and even before that. It is ongoing currently and active everyday, as the circumstances in the present day and life of the plaintiff, in March, 2026. This is happening in the plaintiffs residence, in public and everywhere the plaintiff goes, in moments of expected privacy, and while he has been incarcerated and/or involuntarily committed and while participating in federally protected activities. The conspiracy, takes advantage of the fact the plaintiff is not a tech savvy person, it preys on his deficiencies in technology and in social media, using AI and related devices and services, under the cover of plenary guardianship, to keep the existence of the plaintiffs estate and the plaintiff's true self, "which is under disability," the status quo, a secret, and kept from being uncovered, undisclosed and unenforced.

28) The augmented reality and remote monitoring, and every other device and service that is being used, is used in a way that makes and keeps the devices intangible, transparent and/or translucent, to the plaintiff's senses and awareness. Used only for the sole purpose of

supporting harassment, stalking and torture, against the rights of the plaintiff. The plaintiff can feel the devices being used, and in what locations of his body they are being used on, and how they're being used in relation to his actions, thoughts and speech. However, the plaintiff can't physically touch the devices, to take any of them off. "Apart from partials in photos and videos," the plaintiff can't physically see the devices, to say "it's this, and it looks like that," however, when zoomed in on, the devices show up in photographs visually to the plaintiff. Looking almost translucent, and cartoonish in the photos and videos. The plaintiff is also fairly sure, when he's out in public, people can see the devices much better than he can see them in the photos. The plaintiff, however, can block the effects of the devices better than, presumably, most anyone else that is under guardianship, or that has these or related devices on their person. So this overly gives the defendants position away, about how the devices are being used and where. Formally undisclosed since 2023, and unaccounted for by the plaintiff, apart from the electronic communication via the AI and related devices online, social media and live streaming. The plaintiff's awareness, for what is happening and when, is high, to extremely high, in relation to what is assumed to be expected.

29) The defendants, James Greg Dooley Sr. and Angela Dooley, Joseph Bedel Jr. and Elliott Spence, in 2024, 2025 and 2026 are and have been facilitating electronic communication, harassment and torture online and social media and live,, as part of a conspiracy with each other, and with the massive network of person(s) and profile(s) the defendants have secured as being a part of the conspiracy. Being accomplished, through the use of AI and related devices that they use, remote monitoring, via guardianship, deep brain stimulation, presumably, via guardianship, augmented reality or possibly something like, Microsoft Hololens, EEG cloning and/or heterodyning, that is presumed to be a part of supportive/substitute decision making devices and

services, via guardianship, while using and having, 3D devices and cameras everywhere, photonic wave imaging and holograms, used as part of "secretly" interacting with and exploiting the plaintiff against his will, in a free for all, without restrictions or guidelines, and with no oversight or accountability, under the cover of guardianship and using the silent terms of the trust—JEHOVAH, as justification, to harass and torture a human being. Used with haptic technologies and through wearables, and electrodes, functioning through and with the support of the attached electronic e-skin, liquid metal RFID's, graphene, carbon nanomaterials, conductive polymers, ionic gels, human augmentation implants, NFC's, etc. Making stretchable bio interfaces and conductors, that go in and on the body, and are attached to the skin of the plaintiff, while also being interchangeable, and intangible to the plaintiffs, via stealth technology, AI and related devices and services. In, on, around, fixed, and/or connected via AI device, attached to the person, and/or as the personal property of the plaintiff. Used to harass, stalk, torture, abuse, neglect, exploit, and torment the person and day to day life of the plaintiff. Depriving the plaintiff of information and disclosure, and of the existence and details to the silent, irrevocable trust–JEHOVAH. Information that is fully, and formally undisclosed, being exploited by the defendants, parties to the online, social media and live stream content, and the state actors, who all played significant roles in keeping the structure of the conspiracy in tact, and in coordinating efforts to stalk and harass, while gas lighting, and ghosting the plaintiff, keeping informed while also entertained, via AI and related devices, and electronic communication.

30) The defendants, James Greg Dooley Sr, Angela Dooley, Joseph Bedel Jr. and Elliott Spence are facilitating fake social media accounts, profiles, and pages, and real time, live content, being shared online and followed by the network and community of people as a whole. All in conjunction with the existence, and exploitation of guardianship and other protective

arrangement, and the irrevocable trust–JEHOVAH. Conspiring with the Hamilton County Probate Division, Court of Common Pleas, Ms. Meredith Simpkins, Dr. Vanessa Doyle and FHLBank of Cincinnati, sharing the personal, day to day life of the plaintiff, with online, social media and live streaming networks to view, follow and interact with visually and verbally, and through the actions and commands of the defendants. To participate in the plaintiff's mental self-awareness and physical being, and verbally in thought and in speaking, and in relation to what the plaintiff can see, and participate in and with, and the plaintiffs actions, environment and surroundings, and in relation to what the plaintiff can not see, or touch, or participate with, presumably being able to see the plaintiff, as well as see what the plaintiff sees, and also see and know what the plaintiff can't see, or participate in and with. They have figured out a way to make their images show up in the plaintiffs peripheral vision, on a makeshift pop up screen, presumably using 3D cameras that are hidden throughout the residence and on the plaintiffs personal property. Doing this, so that the plaintiff can see what they're doing in "real time," in a scenario predetermined by the user, or what their reaction is while they interact online, or facilitate the interaction online. However, the plaintiff still gets gas lighted by everyone, and in public, and by all professionals in the plaintiff's life.

31) The defendants Joseph Bedel Jr. and Elliott Spence, with the knowledge and blessing of, James Greg Dooley Sr. and Angela Dooley, using the AI and related devices, in conjunction with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, have hacked the system and the network of devices and services being used, to control the plaintiff's thoughts, actions, feelings, emotions, senses, and just about anything the human body and brain can do, has been done, as the result of presumably a firewall hack, to misconfigure the system and/or network of devices, leading to excessive user permissions, in

relation to the control of the actions and inactions of the plaintiffs, as Joseph Bedel Jr. and Elliott Spence, are both presumably extremely smart and savvy in regards to the information technology, software, and data. This created a platform for the mobbing, stalking, gas lighting, coercion and collusion that ultimately makes up the online and live streaming part of the abuse, neglect, and exploitation of the conspiracy against the rights of Joel M Blust. The defendants Joseph Bedel Jr. and Elliott Spence are also presumably, a part of the Supportive/Substitute Decision Making (SDM) as an "untrusted" family member, facilitating the "decisions." of the plaintiff. However, doing this illegally as they are hired on behalf of Angela Dooley, for the services making a profit and/or proceeds, off the direct services to the plaintiff, which is illegal. While violating rights, with attempts of humiliation and embarrassment, and defrauding the plaintiff, while providing content to build their brand online, social media and live streaming; The plaintiff, is being economically and socially excluded, by being gas lighted and ghosted, in general, in regards to information had, and in the authenticity of people's actions socially. The exclusion is making for the constant coercion, and collusion, of people's actions, that the plaintiff gets in return, no matter the person or situation. The defendants, have influenced, every single person the plaintiff has come in contact with, to "be a part of," the ghosting and gas lighting, the inauthenticity of people's actions, socially, and to conspire with the group, rather than inform the plaintiff of any facts needed to put the pieces of the puzzle together, or explain to the plaintiff where and how to access the social media content, and/or live stream. Since the defendants act as though the plaintiff should know, or like it's easy to figure out. Not to mention they are using the system hacks to interfere with the plaintiff's intelligence and problem solving, and also doing everything they can to make anxiety heavy and nerve racking. Accessing the content wouldn't

solve any problems, as the content probably wouldn't stop due to the guardianship and other protective arrangement still being in place. The conspiracy is alive, and is its own entity,

32) The defendants, James Greg Dooley Sr. And Angela Dooley, from August 20, 2004, and Joseph Bedel Jr. and Elliott Spence, to current day today, in March, 2026, have created and exploit, an unaccounted for number of people having a bias in favor of the defendants, and "the estate," that causes people to act with prejudice and discrimination towards the plaintiff, in regards to his status, and with stigmas in regards to wealth, assets, competence of person, social standing, etc. As a result of the fact, people side only with the conspiracy, as the estate associated with the beneficial owner, Joel M Blust, is estimated at such a high dollar value. People aren't concerned with the conspiracy being a lie, as it is all make believe, or the result of make believe, using AI and related devices and services. The same person(s) being conservator of the estate and person of the plaintiff, creates an unfair conflict of interest, when all person(s) are handling their day to day affairs, and/or communicating with the plaintiff, and/or with the defendants regarding the plaintiff, and not regarding the plaintiff, and in all aspects of commerce and interstate commerce.

33) It is suspected and presumed, the defendants James Greg Dooley Sr. and Angela Dooley, are using money from the irrevocable trust—JEHOVAH, and Joseph Bedel Jr. and Elliott Spence, are using money from the profits and proceeds of the online, social media and live streaming content of the involuntary servitude and forced labor of the plaintiff, to pay for and/or bribe, family, old friends, known associates, known person(s), parties to the defendants, and parties of the online, social media, and live streaming content and networks, medical professionals, legal professionals, state actors, etc. and possibly, either directly, or indirectly pay for likes, follows, and views, of online content, and profiles, to conspire with the fraud, coercion,

and collusion, taking place, in regards to the participation in, and the coordination behind, the deprivation of rights, and in the conspiracy against the rights, of Joel M. Blust. The conspiracy that is revolving around and in, the ghosting and gas lighting, abuse, neglect, and exploitation of the plaintiff, Joel M Blust. Presumed to have been this way, due to the fact the defendants have confirmed these facts, verbally, and with implications, by electronic communication and AI related devices and services, as not just being allegations, but as being facts. Communication had on numerous occasions in the years, 2024, 2025 and 2026, from the defendants, and from parties to the defendants, and of the online and live networks. The communication has implied that, James Greg Dooley Sr. And Angela Dooley, have conspired to use money that was owned by the irrevocable trust—JEHOVAH, to pay Dr. Vanessa Doyle, MD, Ms. Meredith Simpkins, Hamilton County Probate Division, and FHLBank of Cincinnati, and presumably, numerous other conspirators and state actors, an undisclosed amount of money in exchange for compliance and assistance with the violations in rights and of state and federal laws. Possibly, paid through sources, using phony names, or possibly, through a channel that may, or may not have left a small amount of unclaimed funds. The plaintiff has found the name, "Jehovah Blust," on numerous, unclaimed money claims. The defendants, James Greg Dooley Sr. and Angela Dooley, have presumably, used funds from the irrevocable trust—JEHOVAH, for misappropriation, and other self-dealing involving Angela Dooley, and other family members through Angela Dooley, for the regular, and routine maintenance, and care, as well as other family through Angela Dooley for loans, and gifts, while the plaintiff has never seen or received anything from the irrevocable trust —JEHOVAH.

34) It is said, and known to the plaintiff, to the defendants, and to the online and live content networks, that James Greg Dooley Sr. and Angela Dooley, Joseph Bedel Jr. And Elliott

Spence has made attempts, and has paid person(s) money, presumably owned by the irrevocable trust—JEHOVAH, for the murder, "or the death," of Joel M Blust. It is presumed people have actually accepted payments for this, and that it was paid, from the irrevocable trust—JEHOVAH and or profits and proceeds made from the involuntary servitude and forced labor of the plaintiff. There have been several times, including, but not limited to, Joseph Bedel Jr. actively attempting, and trying to figure out possible ways to kill the plaintiff, using the AI and related devices. Elliott Spence making threats and presumed attempts on the plaintiffs life. While on separate occasions, with other parties to the defendants, and with the online and live stream networks viewing, actively using these ways trying to cause the death of the plaintiff. The death of the plaintiff is presumed, to have looked like an accidental overdose death and/or a heart attack, while at his residence, and has even been said, on several occasions the plaintiff was supposed to be shot in the head, while in public, and escaped it each time on a lucky fluke scenario, that was "really lucky." However, a failed attempt did happen on more than one occasion, and the plaintiff remembers these times specifically. There was a time when the plaintiff was in active drug addiction, in the winter of 2024, he was on the floor at his residence, when a transparent or translucent person, who was apparently standing over the plaintiff without his knowledge, injected what was a syringe, partially full, of what was said and confirmed by Joseph E Bedel Jr, to be hydrochloric acid, directly into the top of the skull of the plaintiff, causing him to black out and take off running outside, vomiting and feeling a charged haze while getting erratic, before recovering. Joseph Bedel Jr. and Elliott Spence, currently and while drafting this civil action complaint, have tried numerous attempts at being able to stop the plaintiff from being able to draft and file this complaint. He used techniques like spraying duster near the plaintiff's face, and his best attempts at getting it in the plaintiff's mouth, in attempts at causing Sudden Arrhythmic

Death Syndrome, causing the irregular heartbeat and cardiac arrest of the plaintiff. The plaintiff has gone for days light headed while attempting to draft this complaint and almost passed out on more than one occasion as they have gotten much more aggressive with it in the days since the 13th of March, doing it non stop, as several people are presumably and have been making money off the involuntary servitude and forced labor of the plaintiff online and live streaming and make it a point that they would rather kill the plaintiff than come to any terms or agreements on a split of the plaintiffs profits. In the past the plaintiff would again actually see their person as some kind of 3D or hologram shaped cartoon character person and they would be spraying duster into the plaintiff's face, thinking they were just trying to get on the plaintiff's nerves however, they were trying to make him have a heart attack. The plaintiff realized they had been doing this many times and more often than he thought, with presumed promises to pay money from the irrevocable trust—JEHOVAH or Joseph Bedel Jr and/or Elliott Spence with presumably promises to pay money from associated profits with the involuntary servitude and forced labor of the plaintiff.

35) The defendants Joseph Bedel Jr. And Elliott Spence, everyday since Summer, 2022, and present day, currently, March, 2026, while the plaintiff is in his residence, and in expected moments of privacy, and while incarcerated and involuntarily committed, presumably use the electrodes, RFID's, implants, etc. And devices to clone mental images and phantom feelings, in an effort at harassment, and in humiliating the plaintiff. Joseph Bedel Jr. And Elliott Spence uses sexual images, and feelings, as a weapon, trying to make believe they're in sexual positions and scenarios, with the plaintiff. Using AI and devices, to clone images, like scrotums around the plaintiffs face and mouth, and phantom feelings of sex, around the anus and genitals. Doing this daily, and anytime the plaintiff gets him lame, angry or embarrassed. This is

presumed also shared online, via the social media and live streaming content and network, and in conjunction with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH. Depriving the plaintiffs rights to being secure in his person, home, effects, and property, and is also sexual harassment, abuse and exploitation. The plaintiff can physically see Joseph Bedel Jr and Elliott Spence's persons out of the sides of his eyes, via the AI and related devices while they are harassing him. They don't seem to be worried as they communicate using their own names, images and voices.

36) The defendants, everyday since summer, of 2022, and for as long as the plaintiff has known about the guardianship and other protective arrangement, and the electronic harassment and stalking, while the plaintiff, is at his residence, in public, in moments of expected privacy, and while incarcerated and/or involuntarily committed, have been and are able to target specific parts of the plaintiffs brain and body, using the AI and related devices. The plaintiff knows the defendants use devices and electrodes, etc. that the defendants are entrusted to use, as part of guardianship and other protective arrangement, as well as the use of devices and/or services that they shouldn't be using, as part of guardianship and other protective arrangement. Joseph Bedel Jr and Elliott Spence have hacked the services of the devices recreationally and/or as part of guardianship and other protective arrangement, or with the use of human augmentation implants enabling excessive user permissions to affect the brain and body of the person of the plaintiff, and use it as part of the shared content, via online and social media and real time live content streaming. It's been said the effects of the devices and services they are using is in real time and they have perfected the use of the devices and services to act in real time as well. Using the devices only for detrimental purposes to the plaintiff, as the defendants have never done anything via AI or related devices, or as part of guardianship and other protective arrangement,

"that the plaintiff is aware of," that can be considered to be in the plaintiffs best interests, or that would be considered to be in his favor. Doing this to target pain, nerves, areas of the brain and body, to make or force restrictions that are negative, and potentially hazardous to the plaintiffs health and well-being.

37) The defendants James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr. And Elliott Spence, from the Summer, 2022, currently and present day, March, 2026, while the plaintiff is at his residence, in public, in moments of expected privacy, and while incarcerated and involuntarily committed, use AI and related devices, and services, and via PC, in conjunction, with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, and online social media, and live content, force pain, feeling or sensation, anywhere in the plaintiff's body, including but not limited to: "Making the plaintiffs heart seize up and feel compromised as if it is struggling to keep up, and/or make his chest real tight like its hard to breath." "They make the plaintiff feel drug sick at any point in time, and without the plaintiff being on drugs." "The defendants make it almost unbearable to crave drugs, and the urge to use drugs, to constantly crave "or fake think about," the using of drugs." "They send high, screaming sharp pains, or deep, dull burning pains, in the joints of the plaintiff's knees, and balls of his feet." "They lock his fingers up, with his knuckles unable to function, with a numb, locked up sensation." "They lock up his brain, and force him to be stuck, thoughtless, and for the most part, motionless with excessive online communication and chatter, until the plaintiff snaps out of it." "They force the cry command, and have it to the point it shows up on the plaintiff's person regardless of how the plaintiff feels." "They are making the plaintiff's muscles weak, or uncoordinated, and throwing the timing of movements off." "They force the plaintiff to get hungry, and be constantly hungry, even right after he just ate, in an effort at causing obesity, and

causing the plaintiff's weight to balloon out of control, gaining some 40 pounds, in just a few months time." "They restrict the plaintiff from using the toilet, by tightening the muscles in his rectum, to the point the plaintiff can't push to excrete waste, making him constipated." "They make the plaintiffs stomach upset and bubble and force farting one after another," "The defendants, will cause the plaintiff to not pay attention, to whatever they don't want the plaintiff paying attention to, or pay way too much attention, to other, certain things, resulting in being late for, or missing appointments and obligations." "The defendants make it so that any part(s) of the plaintiff's body is numb, the hands, feet, genitals, brain." "The plaintiff can feel the brain stimulator on his head, most of the time, as it stays on all the time." "The defendants affect the plaintiffs body, to the point his vital organs could possibly be shutting down, as the plaintiffs, lower legs have recently started to swell, and hold water retention, and go numb for no reason," They make certain and other parts of the plaintiffs body go deeply numb for no apparent reason, restricting the flow of blood," They use devices and/or instruments against the plaintiffs person, that are only good for detrimental purposes, like devices inside the mouth causing cavity and tooth and gum pain, among other things being done, in an effort at making the plaintiff "lame," as they say.

38) The defendants, force thoughts, speech, actions, and emotions and senses, in any direction they want, presumably as commands, via PC, with remote monitoring and augmented reality devices, and supportive/substitute decision making devices, and services, interacting in real time, without the plaintiff doing anything to trigger the movement, or function, without the plaintiff wanting to do so and against his will: "The defendants blank the plaintiffs mind, if he remembers something, or thinks about something specific, so that he can't recall what he just had in his mind, with the thought that was just stricken from the plaintiffs mind being unavailable to

recall." "They constantly control the topic or subject of what's happening, or talked about, in and around the life, and in the mind, of the plaintiff, attempting to control every aspect of the plaintiffs life, and making his life like an un-scripted live reality show." "What's being discussed by the defendants and the topic is participated in by the plaintiff, by force, due to the fact the plaintiff can not get out or free from being the subject of the content in general." "The defendants force depression, and low, and lethargic moods, so all the plaintiff wants to do and all he can do is sleep, eat, and watch t.v. Due to the forced, extreme tire, exhaustion, and forced lethargic outlook." "The defendants will force the plaintiff to have erratic hours, force up and awake, when tired and down, and exhausted, when awake, or will keep the plaintiff awake against his will for days and weeks, on end, for however long they want, while being exhausted." "Everyday, the defendants spend their time creating disability finding ways to wipe the plaintiffs memory quickly, and abruptly, or perfecting the ways at voicing over a thought, or a fake thought, trying to make it seem or appear as the plaintiff, on the online, social media and live content." "The defendants try to force thought, speak, and act, as if they were the plaintiff, and do their best to pass it off, to the perspective of others, as authenticity in being the plaintiff." "They cause negative outlooks, and constant negativity surrounding the thoughts, actions and feelings of the plaintiff, and aggressive behavior forced from the plaintiff, in conversations, and in actions, towards other people." "The defendants, have completely cut the plaintiff off from society in real life, by excluding and exploiting his brand as being the only person, who is going through what he's going through, all while being social media illiterate, as this is presumed to be a one and only type of situation and circumstances, and actively persuading the followers/viewers of online content, and live streaming, of the ghosting concept, "that if nobody talks about, or admits to, what is really taking place with the plaintiff while in person, then it

isn't really taking place," gas lighting the plaintiff with misdiagnosis of psychotic disorder and addiction, to keep the plaintiff misinformed and ghosted, without resources or any type of recourse apparent." "They force the plaintiff to constantly live in a deep, heavy trance like state, making the plaintiff drool on himself at times, so that he is slower mentally than he would be just under disability and 2 and 3 times slower than he actually is in real life." Violating the plaintiffs right of life, liberty and personal property, by having unlawful detention of and/or unjustified restraints on life, liberty and personal property, while discriminating against and abusing, neglecting and exploiting the plaintiff daily.

39) The defendants and parties to the defendants, presumably have the same technologies on their person(s) as the plaintiff has on his, as the plaintiff can feel some of the same feedback and reactions coming off their person(s), that the plaintiff is sure they feel of him when the defendants, and parties to the defendants are communicating with the plaintiff. The communication is very fluid, direct and specific. They are exploiting these abused powers through verbal and physical interactions with the plaintiff, and sharing the content via social media and live stream networks, making available for the following online, social media and live content, to the public, to view and interact with verbally. The plaintiff is stuck having to block, or switch the commands, and direct movement, in the direction he wants, as self-serving, controlled and determined, in an effort at feeling normal and/or being himself. So the defendants found a way to target the block of the command, or the switch of the command, and direct the movement how they want it, again.. Anything the plaintiff can do with his brain and body, the defendants can target, for the same movement or action or a different one in some sense, and in the same way. Doing this via the same AI and related devices, the plaintiff has, and in conjunction with guardianship and other protective arrangement and the irrevocable

trust—JEHOVAH. The plaintiff has made a lot of the known knowledge of the AI and related devices, in terms of "reading the communication, without being privy to the information," known, to the defendants, and the online community, without his knowledge. For example, the plaintiff showed the defendants how to read the response of an answer or statement, as true or false, on the feeling alone, without being privy to the lie detector, true and false information. The defendants and the online community and network, all started trying it with each other, and communicating back and forth, so that the plaintiff could hear them. They made it apparent they had, and were using the same devices the plaintiff has, and is being forced to use.

40) The defendants Joseph Bedel Jr and Elliott Spence, with the knowledge and blessing of James Greg Dooley Sr. And Angela Dooley, created a game on social media they called "backstabbers," where the goal is to go against the plaintiff attempting to verbally get over on the plaintiff, any way the person can. The plaintiff, is able to defend himself verbally real good, and has attracted a lot of popular profiles online, to go against him capping, or however the profile thought they might get over to make the plaintiff "salty." It was a lot of, "tell you one thing, and do the other." They also "fake" a bunch as they can act like it's him and cap for the fake command they sent as if it was him. At first they tried to act like what the plaintiff was saying was one of them, trying to look cool in front of the large following of people, and tried to convince the plaintiff what he was saying was actually the command they were giving. The plaintiff capping with people who think they're cool, is how the defendants grew their brand, of sorts, because the defendants were facilitating not just the content but the entire platform and essentially the defendants started profiting off of the forced labor and services of the plaintiff, presumably through live streaming the content. This is also presumed to be when whatever pages they were running online, had amassed a large following and record amounts of viewers started

following the live stream, presumably sometime in 2023 and 2024. This, the incarceration while the plaintiff was in administrative segregation in 2023 and the plaintiff in active drug use in the winter of 2024/25, grew the most viewers. The defendants violated the plaintiffs right to privacy and expected privacy, illegal interception and disclosure of stored data and oral and electronic communications, unjustified restraint of life, liberty and personal property, abuse, neglect and exploitation, involuntary servitude and forced labor, among other things.

41) The content has made a fully undisclosed amount of money, however, it was revealed to have been in the hundreds of billions of dollars and assets in value, as multiple people are profiting. The defendants Joseph E Bedel Jr, is said to be well off, as well as Elliot Spence, who was supposedly well off to begin with, as the 2 facilitators among others who have supposedly profited off the live stream and online content. James Greg Dooley Sr. and Angela Dooley, are said to have put a vast amount of the profit into the irrevocable trust—JEHOVAH, "supposedly for the plaintiff," as all this was supposed to have an end to it at one point in time, as all profits made by anyone profiting off the unpaid and involuntary services and forced labor of the plaintiff, belong to the plaintiff. This was possible, presumably due to the content and live stream being made available to millions, and/or billions of people in total, with many high profile online character's, presumed to have been active while the stream was trending for record amounts of time. Presumed to have been live streamed, on the Twitch platform, while the number one live streamer, for the year 2025, was from Cincinnati, Ohio, presumed to be, ISHOWSPEED, however, that has not been physically seen, or viewed, due to the plaintiffs way below average deficiencies on social media and with online content, as the plaintiff has never viewed the stream. However, it has been verified to exist in this manner. It's also been said to be on Facebook Live or one of the Live's, however the plaintiff does not have these services and

when trying to view content on these services the plaintiffs admission to the services w were blocked and/or he didn't have a credit/debit card to use.

42) People communicating as themselves, in 2024, 2025 and 2026, on social media, are on social media for that reason, to communicate as themselves, and gain recognition or notoriety for their person. The defendants are all together as a group of person(s) online and social media, "mobbing," the plaintiff, on platforms and live streaming, using the fake pages and/or profiles collectively, potentially on multiple platforms. The plaintiff does not have social media pages, or profiles, that are or have been active, in the past 10 years plus, and has never really been active socially, with the online community. The plaintiff has figured out facts on his own, by having conversations with people, in their own names, likeness and using their own identities, and voices, interacting in real life situations and scenarios. Everyone who is party to the facilitator's, presumably, high profile characters in name, likeness and image, are on the online and live streaming content, to build their brands through different tortureware platforms, devices and services.

43) Almost all of the facts to the conspiracy against the rights, of Joel M Blust, and to the irrevocable trust—JEHOVAH, were gained from first hand sources, through the informal process of fact finding , via AI, and electronic communication and devices, without visual interpretation for the most part, however, not lacking non-verbal cues, as the communication devices, gave numerous forms of personal mannerisms, expressions, and tones, that are and aren't, ordinarily had with common interactions, and even confirmed, true and false answers to the statements, and facts. The authenticity of the communication is true, there is a lie detector equipped with the Remote Neural Monitoring devices that make it apparent when a person is lying or telling the truth. The devices are associated with the Illuminati, and/or Illuminati corp.

however, since the plaintiff has not and will not consent or agree to any terms or set of beliefs, and has been opposed at all times, disclosure of the devices, services, actions and/or inactions, has been adamantly withheld from the plaintiff, as a prejudicial gesture of bigotry. The plaintiff has gained a good amount of the facts known to him in this case, through these forms of electronic communication and has been able to verify, self authenticated, presumed factual evidence this way. All the information verifies itself, and all evidence is going to end up proving itself, as none of the facts can be rebutted by anyone.

44) While incarcerated, in 2024, at the Hamilton County, Justice Center, the defendants Joseph Bedel Jr and Elliott Spence with the knowledge of, and blessing of, James Greg Dooley Sr. And Angela Dooley, kept the plaintiff awake via AI and related devices and services, for 60 something days straight, without any restful sleep, while the plaintiff was in administrative segregation and locked in the cell for 23 hours a day, making for cruel and unusual punishment, unlawful restraint, illegal search and seizure, public shaming and humiliation and maltreatment. It's common for the defendants to facilitate the acts and content of abuse while the plaintiff is incarcerated, and/or involuntarily committed, through AI and related devices, and in conjunction with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH. They did this, on the days, that led up to the plaintiffs court date in case 23/CRB/8753, on 7/31/23 making the plaintiff so exhausted, and fed up with the torture, he took a plea of guilty on a misdemeanor in the first, for a sentence of 180 days on community control, with jail time credit for time served, on a charge the plaintiff was not guilty of, just to get out and end the abuse. The judge Dante Johnson, implied as if the probation officer was going to help him with the issues he was having, regarding the electronic harassment and torture. The three previous court dates had been refused by the jail, as this was the plaintiffs first time in the

court room, since having been incarcerated in this case, after 64 days. The plaintiff was detoxing from Suboxone for about 30 days leading up to court and the defendants made life as miserable as possible. Things like this happened often while incarcerated and/or while involuntarily committed, as the defendants like the way the plaintiff acts while locked up, and it apparently makes for good content, so they tried several ways to get the plaintiff arrested and incarcerated, domestic violence was the way they realized they could succeed at their goal of creating a hoax situation to get the plaintiff incarcerated. However, the defendants like to make it as miserable and as "funny," for them, and for the online network following as can be. Often and daily while incarcerated or involuntarily committed, the defendants and parties to the defendants and the online, social media and live streaming networks, interacted with the plaintiff, and most likely the other inmates and patients daily, creating scenarios and instances, that wouldn't have been had if they weren't present and active in the jail and/or hospital. The time spent, while an inmate of the state is not public information, and is considered an illegal search and seizure, to have it publicly broadcast and aired, for the public to view and comment on is public shaming. On many occasions, the defendants and parties to the defendants, and online, social media and live streaming networks, had video footage that they were for instance, showing person(s) who hadn't been actively following or viewing the last time they showed the video or footage, or if the situation relating to the video or footage, was being actively talked about and discussed, or if that situation related to the situation that was being actively discussed." Video's or footage of the plaintiff and of things the plaintiff had done or lived and has been through in his life, events or situations that really happened, supposedly, "before this technology was even available," while the plaintiff was incarcerated. It's unclear where the defendants obtained the videos from, but for certain this was happening, and there were videos of instances, a "regular person," wouldn't have

been able to obtain. At every jail the plaintiff has been incarcerated in, they act as though they're conspiring with the corrections officers. In one instance the plaintiff heard one of the corrections officers, at the Hamilton County Justice Center saying, via the electronic communication and guardianship devices, to the defendants, "I see it every time he's walking up the stairs." Not for sure what he's referring to seeing, however, this was said walking up the stairs to the second range, while the officer was walking up the stairs, behind the plaintiff. Every instance in which the plaintiff has been incarcerated or detained against his will, the defendants Joseph Bedel Jr and Elliott Spence, with the knowledge and approval of James Greg Dooley Sr and Angela Dooley, as well as "to the knowledge of the plaintiff," the Hamilton County Probate Division, Court of Common Pleas, knowledge and approval, have allowed the defendants to publicize the torture and physical harassment of a human being while being incarcerated or committed and/or the image of an incarceration, "behind the scenes," for entertainment or public humiliation, while encouraging discrimination against the plaintiff for not being the same socially as they are, and for being under the disability of guardianship and other protective arrangement, and the disabilities inflicted by the terms of the trust—JEHOVAH. The abuse, neglect and exploitation profited off the involuntary servitude and forced labor of the plaintiff, as an unlawful detention, due to the atrocious conditions of the plaintiffs arrest and subsequent confinement, while incarcerated at the Hamilton County Justice Center, Kenton County Detention Center and involuntarily committed at Summit Behavioral Healthcare. Creating unjustifiable restraints on the plaintiffs life, liberty and personal property, and violated the plaintiffs liberty interests in reputation and privacy. By publicizing this private information, and creating a "false light" by which other persons viewed the plaintiff, and by which the plaintiff viewed his personal hygiene, causing severe emotional distress in moments of expected privacy and while in the showers as

the defendants Joseph Bedel Jr and Elliott Spence think it's hilarious to make the plaintiff's scrotum as small as they can make it while the plaintiff is in the shower while incarcerated and everywhere else the plaintiff uses the shower and get un-clothed. Broadcasting this to the online, social media and live streaming content, harmed the reputation of the plaintiff ,when he didn't want to have to deal with it anymore. The knowledge of the online content, on the part of the jail and possibly the Probate court, suggests cruel and unusual punishment, and the use of public shaming as a tool to maliciously inflict severe psychological punishment and harm, that went beyond standard professional procedures for arrest, incarceration and commitment. The defendants used the other inmates' participation to intimidate and coerce the plaintiff, trying to encourage him to join the Illuminati and/or Illuminati corp. while incarcerated and/or involuntarily committed. The defendants used the information of an illegal search and seizure to also communicate with the corrections officers and staffs of the jails and the hospital, to make life harder for the plaintiff, so that every other person incarcerated or committed, with and while the plaintiff was incarcerated and committed, knew every detail about the plaintiff and what he was doing.

45) The defendants presumably, collaborated with the Kenton County Sheriff's office, in an entrapment arrest, as entrapment was the plaintiffs defense, other than an incompetent pleading, in case 23-CR-01060, in Kenton County, Kentucky. This charge was later dismissed, on an IST-U finding as the plaintiff, was arrested on a phony public intoxication charge, that would have had to have been dismissed, as the result of entrapment, if not for being dismissed for a finding of IST-U, due to the fact, the plaintiff wasn't intoxicated while he was at a homeless shelter on Pike St. and living homeless for a few weeks in Covington, Kentucky. The arresting officers had information of contraband, provided to them by the defendants before

arresting the plaintiff. The arresting officers made up what they had to for the arrest, in regards to public intoxication, so they could arrest and book the plaintiff into the jail, and find the contraband that was loose in his butt crack, upon booking him into the jail. The adversarial system and process was non-existent in this case from the arrest. The defendants, James Greg Dooley Sr and Angela Dooley are liable for the pain and suffering, and hardship caused, to the plaintiff, for their role in the conspiracy surrounding entrapment, in the arrest, of Joel M Blust, in case no 23-CR-01060.

46) In summer 2023, after being released after 3 weeks in the Kenton County Detention Center, in case 23-CR-01060, the plaintiff was released to (RTC) Transitions Drug and Rehabilitation and Immediate Care "Residential Treatment Center," called RTC for short, for a 60 day program upon an own recognizance bond. The plaintiff was staying for the entire program and coming off of the Suboxone medical assisted treatment, with the Vivitrol, once daily pill. The defendants Joseph Bedel Jr. And Elliott Spence with presumably the knowledge and approval of James Greg Dooley Sr. And Angela Dooley, along with the approval of the Kenton County Detention Center and RTC, tortured the plaintiff daily with the AI and related devices and services and presumably sharing online, social media and live streaming networks of harassment, abuse, neglect and exploitation of the plaintiff and the plaintiffs person. The defendants kept the plaintiff forced awake for the entire month he was in the program in an effort at making life miserable and the program as hard as possible. The defendants preyed on the plaintiffs vulnerabilities being had as a patient, by making the feeling had from transitioning from the Suboxone treatment, to the Vivitrol pill especially painful and nerve racking, as the plaintiff was still having horrible feelings and overall mood even after 3 weeks from detoxing off Suboxone. While also publicizing moments of expected privacy and in the showers, just the

same way they would if the plaintiff were incarcerated or involuntarily committed. The defendants conspired with the doctors, dentists and medical staff, with the dentist to avoid getting the most pressing needed cavity filled, "one still remaining unfilled to this day, in March, 2026," opting for a less serious cavity, and with the psychiatrist, prescribing medications to the plaintiff, that would have adverse side effects to the plaintiff. Doing this in hopes of the medication affecting the plaintiff in moments of privacy, and that being the only reason the medicine was prescribed. The defendants caused and/or were the reason for all of the distractions that caused the plaintiff to get kicked out, or "asked to leave," the program. Making the plaintiff act goofy and act out of character, doing things he wasn't supposed to be doing, daily distractions that could have been avoided. After being asked to leave, the plaintiff was bombarded with urges and cravings to use illegal street drugs, and within the hour had it set up for the plaintiff to receive money, with the intentions of buying and using illegal street drugs, to feed a forced "addiction," after having been clean for 7 weeks or so. The defendants did this knowing how much the plaintiff wanted to be free from Suboxone and illegal street drugs. The defendants were directly interfering with a federally protected activity, and caused the pain and emotional embarrassment and ongoing trauma that feeds off drug addiction. They are liable for the pain and suffering caused by this event, and for the ongoing situation.

47) In the winter of 2019 and 2020 the plaintiff had two surgeries. The first surgery in the winter of 2019, was a bi-lateral carpal tunnel surgery, and the second had in the winter of 2020, was a left knee arthroscopy. The carpal tunnel surgery the plaintiff stayed awake for, and had no anesthesia. He healed up fast, and for the most part, the issues previous to having the surgery have stayed gone. However, in photographs the plaintiff can see possible devices and AI or related devices where the scars to the surgery are. It's possible the defendants had implants

placed inside my body while having surgery as the plaintiff could not see the doctors operating on the wrists. The knee arthroscopy however, done by Dr. Barton Branham, an orthopedic surgeon, with University of Cincinnati, Medical Center, the plaintiff, went under anesthesia for. After surgery, the knee and healing process was extremely painful, and didn't heal right. It was such a painful and unnatural feeling, that the plaintiff couldn't attend physical therapy afterwards. To this day currently, in March, 2026, the knee is much worse off than before the surgery. Presumably, and it's been said, and discussed with multiple people via electronic communication and guardianship devices, that during this surgery, the defendants had some devices put on the plaintiffs person, and implants implanted in the knee and possibly other areas of the plaintiffs person. This is presumably, what the plaintiff is referring to as the device used to restrict the movement of his knee. All the pain and discomfort still to this day, in March 2026, is caused by a device the plaintiff presumably has in photographs. It makes sense, and this is around the point in time the plaintiff started to really notice the harassment and torture, on a different level than maybe it had previously been. It is a major accusation, however, it has been verified as being true, and the plaintiff's knee is in bad shape, with the pain that the plaintiff is having in the knee being, "exaggerated" pain, that isn't natural feeling. Joseph Bedel Jr. is quoted as saying, "there is nothing wrong with the plaintiff's knee " that, "it is due to the device being used to restrict the movement, as well as the pain and discomfort in the knee." The defendants are liable for the pain and suffering of this caused pain, and the implications of this botched surgery, as well as the removal of this device.

48) The defendants in May, 2024, let the plaintiffs vehicle, a 2007, Chevrolet Monte Carlo SS, VIN# 2G1WL15C079345175, ACTUAL MILEAGE, 53,520, at the point of sale, get sold at auction, after it was impounded, for "Driving Under Suspension." The plaintiff asked the

defendants, James Greg Dooley Sr. And Angela Dooley, several times if they could help him get the vehicle out of the impound, after the plaintiff had bought the vehicle, in cash, for $7,852.50 plus $612.50 tax. It was in the plaintiff's best interests, not to let the vehicle be sold at auction, leaving the plaintiff nothing. The charges of, "Driving Under Suspension," were later dismissed, without prejudice, August 8, 2023, for an, "IST-U," finding, due to the same guardianship and other protective arrangement, the defendants have him under. The sheriff's office, of Warren County, Ohio, in Municipal case no's. 2023TRD001496, and 2023TRD001494; failed to act with due diligence, in the matter, selling the vehicle, or letting the vehicle be auctioned, without giving proper notice, before the plaintiff, had time to reasonably handle his affairs, and before the case, had a final disposition. The defendants, acted with the same lack of due diligence, in the matter, and were intentionally hurtful, and vindictive, in letting the vehicle be auctioned, as they knew the vehicle, was paid for, knew it would hurt the plaintiff, hated the look of the vehicle, as well as the fact the plaintiff, had purchased it, on his own, without help, in any way. As custodians and fiduciaries of the plaintiff, the defendants owed a duty and obligation to act in the best interests of the plaintiff, and failed to do so. Therefore the defendants, owe damages of the value of the vehicle, for what it was paid for, plus pain and suffering, for the hardship of living without a vehicle, or transportation for the past 30 plus months;

49) On December 17, 2025 the trustee, Angela Dooley, is on video recording lying to the plaintiff about the existence of the irrevocable trust—JEHOVAH, and about the existence of plenary guardianship and other protective arrangement. The plaintiff had requested all information, and disclosure of facts, and accounting, however, the defendants have never done any of it. Upon request the defendant did not formally disclose the trust, or the trust instrument to the plaintiff, upon clearly requesting the information. Also directly and indirectly, disclosing the

information to her of the knowledge the plaintiff had of guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, and gave notice of the petition to modify, and/or terminate guardianship and other protective arrangement, that was attempted at being filed and sent to the Hamilton County Probate Court, and sent as a motion in a habeas corpus action filed, with the Supreme Court of Ohio, before sending a copy, to her residence.

50) When served as the defendant, through the mail, at 706 Lakewood Dr. Taylor Mill, Kentucky 41015, a copy of the petition for termination or modification, of guardianship and other protective arrangement, a petition that was filed on, December 31, 2025 and filed in the Hamilton County, Probate Division, Court of Common Pleas, as well as a motion in a state habeas corpus action, case no. 2025-1589, with the Supreme Court of Ohio, James Greg Dooley Sr. and Angela Dooley, sent the petition back, "return to sender," without even looking at it, or reading it, as it was not open. However, the defendants wrote, "RETURN TO SENDER," in big bold letters across the face of the envelope. They obviously already knew what it was, or they would have at least opened the package. I didn't tell them what it was, or that I had sent anything to them in the mail. They weren't even curious what it might be in the envelope. They lied after sending the petition back, telling the plaintiffs mother, Karen Blust, that the plaintiff scares them, and they referred him to their "lawyer," whose name and phone number, the plaintiff hasn't received, and doesn't have or know.

51) In regards to guardianship or conservatorship of the estate, the protective arrangement, (trust), the plaintiff has made it known to the defendants James Greg Dooley Sr and Angela Dooley, in 2025, and currently in March, 2026, he is willing to compromise with a settlement or agreed upon terms, in some kind of alternative dispute resolution. The defendants have confirmed the existence of the trust and estate, the value of the estate, the content of the

assets of the estate, and the fact the plaintiff has a beneficial interest in the trust, as owner, through communicating with the plaintiff about these things. This is the case with the defendants negotiating terms of a settlement with the plaintiff, in any way, by being open to, and by being dismissive of, the attempts at negotiating by the plaintiff. The information, facts and details, are presumed by verbally agreeing with the undisputed facts stated by the plaintiff, regarding the estate, and by implying agreement to the facts about the estate. Even so the plaintiff is willing to give the defendants the option of supervised mediation upon trying to settle to agreed upon terms, or as part of any agreed upon terms. The plaintiff is aware the defendants put all of their valuables inside the inventory and gross value of the estate, to the irrevocable trust—JEHOVAH, and the plaintiff has made it clear he does not want any of their possessions. The plaintiff wants what is rightfully his as the beneficial owner, and he wants them to be able to retain anything that holds personal value that is theirs.

52) The defendants try their best to keep the irrevocable trust—JEHOVAH, "with the conspiracy against the rights of Joel M Blust," as a secret and when confronted in person they always seem to say or mention, that the plaintiff, "can't see the devices," or that he "can't "prove" this is going on." Their statements give proof to what the plaintiff is saying as being the truth in fact, as they are accidentally admitting the existence of the facts. They unintentionally acknowledge that there is something that exists, but just that the plaintiff "can't prove it," "or see the devices." The plaintiff, isn't sharing the content, no matter who's page it is, or what the content is, or where, and under what platform it's being shared under;

## CLAIM 4: DEPRIVATION OF RELIGIOUS FREEDOMS AND HATE CRIMES:

53) The defendants, James Greg Dooley Sr. and Angela Dooley, Joseph Bedel Jr, and Elliott Spence, from December, 2020, and still currently happening today, in March, 2026, have been using their platform, of guardianship and other protective arrangement, under the irrevocable trust, JEHOVAH, to subject the plaintiff to a conflict of interest, that results in civil rights and constitutional violations, in the intimidation and coercion of the plaintiff, and in the freedom of religion, and in association. By attempting to dictate by force the defendants beliefs and customs, onto the plaintiff, Joel M Blust, in regards to their sect, group, or organization, the Illuminati, and/or Illuminati corp. and an undisclosed and unsigned covenant on behalf of that sect, group, or organization. Presumably the defendants James Greg Dooley Sr. and Angela Dooley, had coerced a girlfriend of the plaintiff at the time, presumed, to have been in 2020 or 2021, to sign the covenant for the Illuminati and/or Illuminati corp. Supposedly, signing the covenant, in the plaintiff's blood, while the plaintiff was asleep in bed, and have claimed to hold the plaintiff, fraudulently, and illegally, under the terms and/or devices used by the Illuminati and/or Illuminati corp. and in relation to the irrevocable trust—JEHOVAH, and the other protective arrangement, that the defendants hold over the plaintiffs person, and presumably had created upon the plaintiff acknowledged fathers death. The defendant's attempts at coercing the plaintiff into agreeing, have been forceful attempts, made via AI and related devices, electronic tortureware, and remote monitoring platform, through EEG cloning, deep brain stimulation, 3D devices and cameras, holograms and augmented reality, and haptic technology devices and/or services, and are using supportive/substitute decision making and/or assistive technology devices and services, etc. In conjunction with the use of electrodes and devices presumably located in, on, around or fixed to the person and/or personal property of the plaintiff. The defendants,

attempted, on numerous occasions and regularly, usually while the plaintiff is at his place of residence, in public, during moments of expected privacy, and while incarcerated and involuntarily committed and interfering with a federally protected activity, to make the plaintiff, join the Illuminati and/or Illuminati corp. by verbally, and/or consensually agreeing to join and/or sell the plaintiffs soul for membership, and/or attempting to forcefully take the plaintiffs soul, and/or brain stem functioning ability, with implied threats of punishment, and forcefully overpowering control of the brainstem functioning and abilities, of the plaintiff. Upon not freely agreeing to depart with the ownership of his soul, the defendants, Joseph Bedel Jr. and Elliott Spence, with the assistance from other parties to the acts and deprivations, in various forms of participation, used the AI and related devices and services to control the person of the plaintiff, by forcefully directing or commanding the thoughts, speech, actions, feelings, emotions, moods, outlooks, and senses, of the plaintiffs consciousness, and the other aspects of brain functioning of the plaintiff. Violating the plaintiffs rights to religious freedom, economic and non-economic substantive due process, right to having life, liberty and personal property, and being secure in persons, home, effects and personal property;

54) The defendants, James Greg Dooley Sr. And Angela Dooley, Joseph E Bedel Jr, and Elliott Spence, currently, in March, of 2026. Claim and act like the plaintiff can't get out of being a part of, or a member to the Illuminati and/or Illuminati corp. They suggest and imply, the plaintiff can't and/or won't be relieved of disability as an adult, or for the rest of his life, if he doesn't join the Illuminati and/or Illuminati corp. doing this specifically, because he is not a member. They do this by verbally saying the words, via the electronic communication devices, AI and related devices and services, and by suggesting the implications via the AI and related devices, and augmented reality devices and services. The defendants, Angela Dooley and Joseph

Bedel Jr. tell the plaintiff, "he will never be able to get out of guardianship and other protective arrangement, no matter what," and force the plaintiff, to be subjected to the torture, and harassment, they feel like inflicting.

55) The plaintiff has photos of his tattoos, that read and are pictured differently in the photo, than they are in real life. In one of the photos, one of the tattoos reads, 6666, a common number representing, Satan, or the mark of the beast, and synonymous with the Illuminati, and/or Illuminati corp. in place of a tribal pattern, that is tattooed on the plaintiff's skin, and depicted as a tribal pattern to his naked eye. Other tattoos look like they are done in Arabic letters, or others are of a depiction of something that isn't what's perceived to be depicted in real life. All the plaintiffs tattoos are altered in the photographs, and in videos taken, on the plaintiffs personal cell phone, and have presumably, been done by the defendants, Joseph Bedel Jr. and Elliott Spence, with the knowledge and blessing of James Greg Dooley Sr. and Angela Dooley, through AI and related devices, in some way, exploiting the plaintiff through the phone's administrator account, and through the devices used in conjunction with guardianship and other protective arrangement, remote monitoring and augmented reality. Violating the plaintiffs rights, to privacy, and being secure in his person, papers, effects and personal property, and violating Title I and II, of the (ECPA), illegally intercepting oral, wire, and electronic information, and sharing data from a stored device; The defendants are aware of the plaintiff's religion and religious views, as its directly and indirectly, discussed through conversation and related topics, and the plaintiff has made it well known, to the tune of, "being the #1 Christian in the world." The plaintiff has also made it clear he considers the AI and related devices used, to be the "mark of the beast," and forcing the devices and services, on his person, is unconstitutional.

56) The plaintiff, has gone through about 3 or 4 years, since the summer of 2022, of the defendants, and parties to the defendants, and parties to the live stream, regularly, usually while the plaintiff is at his place of residence, and sometimes out in public, play a game of stealing the plaintiffs soul, or the plaintiff selling his soul, as part of membership, in the Illuminati and/or Illuminati corp. The plaintiff, won't agree to do so, and the defendants, use the AI and related devices, to direct commands and movements, in an effort to take over the plaintiffs brain stem and body, in order to "take his soul," or his "consciousness," out of his body, or "coming out of his body," which is assumed by the plaintiff to be uploaded electronically, possibly onto a robot, drone or android, of some kind. Assuming, this is how the defendants and parties to the live stream content, are constantly on the stream, and how they're always "awake," anytime the plaintiff is awake, either that, or their specific sect, are privy, to human augmentation, via implants, and devices. Assumed, to be augmented, in the same contexts, and standards, as the plaintiff gets diminished. The plaintiff doesn't know for sure, if that is possible, or if that is what it is to be Illuminati and/or Illuminati corp. However, sometimes it feels like they are accomplishing the implied goal, as the plaintiff, can feel stimulation in the back of his head, and neck, and going into his spinal cord, and the defendants make it so that it feels like someone, or something, is trying to pull his brain stem, or his "soul," out of the back of his head and neck, and/or are over taking the plaintiffs consciousness. At times, even feeling like he has been forcefully detached from his body, by a few inches before getting sucked back into his body, or feeling like something, is alive inside of him, and taking over his body, through his brainstem and spinal cord. At times it feels like the defendants are going to paralyze the plaintiff's body and person, by using these devices, as the pressure on the back of his head is deep and paralyzing.

57) The defendants, Joseph Bedel Jr. And Elliott Spence, with the knowledge and blessing of, James Greg Dooley Sr. And Angela Dooley, constantly and everyday, before and since the summer, of 2023, through, and still currently happening constantly and everyday, in March, 2026, in public, oftentimes, at his residence, and in moments of expected privacy, regularly, prevent the plaintiff, from having consensual relationships and sexual intercourse, with any person(s), whatsoever, and cause restrictions and excessive disabilities, to the male body parts and organs, of the plaintiff. The last time, the plaintiff, was with a person sexually, and/or on intimate terms, was in the fall of 2023, however, the plaintiff recalls the same restrictions, and disabilities, being overlooked as personal problems, and ED, all the way back, to August 20, 2004. It's believed and presumed, the defendants, James Greg Dooley Sr. and Angela Dooley, have been restricting the use of the plaintiff's male anatomy, since and before he turned 18 years old. Since that last past instance, in 2023, the defendants have used AI and related devices, via remote monitoring and/or related devices, through the use of electrodes, implants, and/or related devices and services, to stalk, harass, target and torture, the plaintiffs person. Targeting his scrotum, and male sex organs, glands, hormones, testosterone, libido, blood flow, size of his scrotum, and sex drive, by causing restrictions and disabilities, of the scrotum, genitals, and surrounding areas, at an excelled, extreme and extensive rate. Restricting blood flow, arousal, libido, testosterone, and numbing the feeling, to that part of the body. Attempts at forcing the plaintiff to orgasm, or making the plaintiff's scrotum not get hard, in general, making the plaintiffs scrotum really small, or making the plaintiff have to pee or ejaculate, and trying to accomplish this while the scrotum is flaccid. Doing this as a constant part of life, daily and regularly doing these things, Again hacking the system, or using the software and/or tortureware, for the purpose of doubling and tripling up on disabilities and restrictions, making it two, and

three, and four times, as strong or restricted as it should or would be for someone who is potentially under disability. The plaintiff would not have any issues, with intimacy or relationships, in obtaining a consensual partner, or with the frequency in doing so, but for the defendants actions. The defendants, have made it well known, and have communicated verbally with words and through implications, actions and inactions, that they are intentionally withholding and depriving the plaintiff of his right to personal freedom of association, by restricting the plaintiffs right to have sex and make his own sexual decisions, being secure in his person, and personal property, by withholding and depriving, the plaintiffs, ability to participate in procreating activities, with other person(s), and/or human beings, or by himself, even. Doing all this in an effort to force the plaintiff into having to join the Illuminati and/or Illuminati corp. as an implied compromise to the restraint, and due to all the hardship, and prescribed embarrassment and humiliation.

58) Angela Dooley, herself, has made it clear that, "over her dead body," will the plaintiff, ever be relieved of disability, dispose of property and/or be entitled to the improvement of real property. For an unknown amount of time before and throughout the year, until current day today, March, 2026 The defendant, Angela Dooley, acting as co-guardian and trustee, to the irrevocable trust—JEHOVAH, has asserted her authority, under the color of law, while restraining the plaintiff under disability, and adamant about her stance and views, on the denial of the plaintiff, disposing of property and/or improvement of real property and in regards to the details and facts of, the plaintiffs disability. The disability being his male sex organs, scrotum and genitals, kept at a disadvantaged state, compared to his peers and the average, to above average, male person(s) sex organs. The improvement and/or disposal of property, has to do with a device or instrument that has been said, "to be, or act like, or in conjunction to, a camera," or

alters the optical integrity of the male sex organs as it is known to the plaintiff. The plaintiff has photographic evidence of the actual appearance of the scrotum. This works in conjunction with or as part of the restriction of movement of the male sex organs, and is presumed to also have the capability to restrict not only size but also the blood flow, making for an even smaller sized scrotum and genitals, decreased blood flow, libido and arousal in male person(s), specifically, used as part of trusts as a disability to the beneficiary and specifically, kept on the person until and upon relief of the disability. The defendants James Greg Dooley Sr. and Angela Dooley, have an unfair disposition towards the plaintiff, presumed, to be due to several conflicts of interest in the conservator of the estate, the value of the presumed effect of the real property once the person is improved, and the estate being such a high dollar value. However, the unfair disposition has to do with, James Greg Dooley Sr. and Angela Dooley's, skewed views of the plaintiff, and who the person they are trying to perceive him to be. It is believed the defendants, James Greg Dooley Sr. and Angela Dooley, have been driven by the success of the trust, since the plaintiff was really young, influencing others, by manipulating the system, to use defaming banter, schemes and devices, to stunt the personal growth of the plaintiff. Doing this to keep the plaintiff as though he is below average, not achieving growth at a normal rate, had a perpetual childhood and not going to be successful. As a way to obtain a judicial judgment or order of disability, in order to justify the withholding of real property and assets, and ultimately real success in growth, and in tangible effects to the life of the plaintiff. That would otherwise be had, as the result of the true nature in which the plaintiff is structured to have naturally.

59) For an unknown amount of time, before, up to, and in, the summer, of 2022, and regularly, throughout time, up to recent day, in March, 2026, at the plaintiffs residence, and during expected moments of privacy, the defendants, Joseph Bedel Jr. And Elliott Spence with

the knowledge and blessing of James Greg Dooley Sr. And Angela Dooley, have created a conflict of interest surrounding the sexual preference of the plaintiff. Attempting to, and the forceful influence of the plaintiff, using the AI and related devices, in conjunction with guardianship and other protective arrangement devices and services, and the irrevocable trust—JEHOVAH, and while facilitating the sharing, and/or posting content made up of the circumstances surrounding this conflict of interest, online, social media, and live stream, the viewing and following of the content, as the searching and viewing, of pornography web sites and videos, under the genre of Gay/Trans. Doing this in an attempt at making fun of, and keeping the plaintiff in a false light, as the defamation of character, humiliation and embarrassment, of mental and physical person of the plaintiff. Causing the plaintiff and the following of the online content, to acknowledge the plaintiffs forced attraction and affinity for this specific sexual preference against the plaintiffs wishes, and/or better judgment and favor, and causing the plaintiff to suffer reputational harm, and leading to behavioral consequences, leading up to forced self destructive actions and behaviors. The defendants facilitated the shared content live streaming of the person(s) that were depicted in the pornography and videos, as interacting with the real time and surroundings of the plaintiff, at the same time while the plaintiff was viewing the pornography and videos, in his residence and in moments of expected privacy. Creating an unexpected shared scene, in which the details were limited and/or restricted in altering the aspects or outcome of, on behalf of the plaintiff, and forcing the plaintiff's person to be present in, and depicted as, being a part of the action taking place at the time. The plaintiff was heavily influenced by the constant repetition command in forced thoughts and actions, via the guardianship devices and services, continuously attempting the forcing of the viewing of GAY/TRANS pornography and videos, while being exploited online, and made to masturbate as

part of the forced content in the online, social media and live following. While this was taking place and afterwards, the plaintiff was the subject of extensive harassment, humiliation and embarrassment.

60) The plaintiff is not, nor does he ever want to be, a member of the Illuminati, and/or Illuminati corp. Sect, group or organization. The plaintiff, won't part with anything for membership, and wouldn't agree to join if it were free; The defendant's, James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr. And Elliott Spence, can't seem to understand the value, in the plaintiff's values, of faith and belief in religion, and in Jesus Christ being mine and your Lord and Savior. How it's more important than anything else in the plaintiffs life. The defendants haven't taken the plaintiffs religion, or religious beliefs seriously, turning the matter into a hate crime, with discrimination, revolving around religion, and sexual preference. The defendants were supposed to, and are supposed to take the plaintiffs faith and beliefs into account, and are expected to make the decision most closely related to the decision the plaintiff would likely, normally make. The defendants not only don't take the plaintiffs beliefs into consideration but they also try to force their beliefs onto the person of the plaintiff.

## CLAIM 5: <u>THE INEFFECTIVE ASSISTANCE OF COUNSEL AND ISSUE PRECLUSION; 14th AMENDMENT DUE PROCESS VIOLATIONS AND EQUALITY;</u>

61) In 2023, in case no's 23/CRB/14768; 23/CRB/17529; and 23/CRB/8753 in the Hamilton County Municipal Court, assigned to Judge Dante Johnson, and in case no. 23-CR-01060 in Kenton County Circuit Court, assigned to Judge Mary Molloy, the plaintiff Joel M. Blust was ordered to undergo competency evaluations as part of a plea of incompetence. Meredith Simpkins, Kenton County, Kentucky, Office of Public Advocacy, was assigned as the

plaintiff's public defender. Ally Archual, was assigned as the plaintiffs public defender, in Hamilton County. The two cases were in proceedings at the same point in time, with roughly the same time frame, however, the Hamilton County cases were in proceedings before Kenton County, Kentucky. The two are unrelated in context, apart from the pleas of incompetence, and ordered competency evaluations.

62) Case 23-CR-01060, was continued a couple of times on status updates. In the meantime, Ms. Simpkins, deferred to the Southern Ohio Forensics Evaluations Services, in Cincinnati, Ohio, for the competency evaluation and report, which was already underway, and due to be done in Hamilton County, Municipal court.

63) The plaintiff was found incompetent by Southern Ohio Forensics Evaluations Services, on May 31, 2024, and on June 6, 2024, in court, was ordered to restoration at Summit Behavioral Healthcare, in Cincinnati, Ohio.

64) The issue of competency was evaluated at Summit Behavioral Healthcare, by Dr. Cooper, on July 19 and 22, 2024, and came back as ( IST-U ) Incompetent to stand trial un-restorable, due to the inability to fully participate in my own defense.

65) The cases, in Hamilton County, Ohio, were dismissed without prejudice, on July 31,2024, in front of Judge Dante Johnson in Hamilton County , Municipal Court. The issue of competency was rendered as a final judgment on that day. The final judgment was rendered without probate, or civil commitment, of any kind, and the plaintiff was not subject to any court order, being without diagnosis, or prescribed medication for mental illness, of any kind.

66) On July 31, 2024, the plaintiff was transported from Summit, to the Hamilton County Justice Center with two detainers, one from Warren County, Ohio, the other from Kenton County, Kentucky. The plaintiff waited one day to be picked up, and transferred to Warren

County Jail. Warren County got preference as to which county could pick the plaintiff up. In this one day, however, between July 31, 2024, and August 2, 2024, the plaintiff saw a magistrate via video conference, and waived extradition for the state of Kentucky, as if Kentucky wanted to transport the plaintiff.

67) The plaintiff pleaded incompetent in Warren County Municipal Court, in case no's 2023TRD001496; 2023TRD001494; and 2023TRD001461; in front of the Honorable Judge Loxley. The same report on competency was subsequently also used, on August 8,2024. Judge Loxley, read aloud from the report, to the courtroom, "I want you to hear this," and read, "incompetent to stand trial, due to the inability to fully participate in your own defense."

68) On August 8, 2024, the plaintiff was released from Warren County Jail to the street, without Kenton County, Kentucky, transporting the plaintiff for extradition, on a class D felony charge. At which point the plaintiff suspected the reason Kentucky did not extradite, as being because the charge would be dismissed, in the same manner, and since the county was not a joining county, they decided not to transport.

69) A week, or two later, the plaintiff received a p After a phone call from Ms. Simpkins, saying she had to get the case back on the docket, and told the plaintiff it was for sometime in September, of 2024. After deferring on competency evaluations, Ms., Simpkins,wasn't allowed to, order a second competency evaluation on behalf of the state, even if she, or the prosecutor, "disagreed," with the final judgment rendered, in Hamilton County, deferring to Ohio, the issue of competency, upon final judgment, may not be drawn into question again. She was not conducive to fighting for, or even arguing, the point of issue preclusion, in the case. Ms. Simpkins fought the plaintiff tooth and nail, and would not turn over the documented report on competency, that was done, in Hamilton County. The plaintiff requested that Judge

Molloy order Ms. Simpkins to turn over the report, which was also denied. At which point, the plaintiff attempted to fire Ms. Simpkins, that in turn, would have forced her to turn over all documents she was withholding, not to mention it was overly apparent she did not have the plaintiffs best interests in mind.

70) A second evaluation was done on September 18, 2024, in the state of Kentucky, with a second forensic psychologist, his name was John Ranseen, this was done via Zoom meeting over the plaintiffs personal cell phone, while he was at his residence. That report came back with a different result, as "Restorable," Incompetence, conflicting with the Ohio report used as final judgment on July, 31, 2024. The plaintiff was at the time, in the process of trying to have someone recognize the fact of guardianship, formally, so the plaintiff could challenge and contest the order or judgment, and file suit.

71) However, the case still wasn't resolved, as Kenton County Circuit Court didn't use this second report, for final judgement in Kenton County, either. They were attempting to have the plaintiff turn himself in, to be transported to (KCPC) Kentucky Correctional Psychiatric Center, so he could undergo treatment and "probably be there for the next 5 years." The case was continued, on status update hearings, until a warrant was issued for the plaintiffs arrest, after refusing to turn himself in.

72) On June 16, 2025, a new case in Hamilton County, Municipal Court, case no. 25/CRB/9548, was indicted as a misdemeanor, while the warrant was still active in Kenton County. The case was assigned to Judge Dante Johnson. The plaintiff was jailed at the Hamilton County, Justice Center, for the case, and an active detainer for Kenton County, Kentucky. The plaintiff pleaded incompetent again in this case, with Richard Magnus, Hamilton County, Public Defender's Office, assigned as counsel.

73) On August 29, 2025, the plaintiff was transferred, from the Hamilton County Justice Center, to Summit Behavioral Healthcare, for the issue of competency to be evaluated. Competency was evaluated, on September 9, 2025, by Dr. Sutton. The finding of incompetent to stand trial (IST-U), due to a bipolar psychotic illness.

74) On September 19, 2025, the case was dismissed, again in front of Judge Dante Johnson, and using the September 9, 2025, report as final judgment.

75) On September 19, 2025, the Hamilton County, Sheriff's Office, also shared competency reports with the Kentucky Correctional Psychiatric Center (KCPC), and at some point in time, to the plaintiff's knowledge, Kenton County, Circuit Court, in front of Judge Molloy, dismissed the case 23-CR-01060 on competency, using this evidence and without the plaintiff being present, or the case would still be active.

76) The plaintiff has not spoken with Ms. Simpkins, in the matter, however, while incarcerated, on June 26, 2025, the plaintiff has an e-mail, from Ms. Simpkins, stating that, "tomorrow is my last day with the public defender's office. My supervisor, Tatum Goetz-Isaacs will take over your case. Her contact information is: tatum.goetzisaacs@ky.gov, 502-782-7517, Please direct any questions to her, moving forward."

77) The case of competency, and these 3 evaluations, and reports, go a long way in the subject matter of this case, and support the state's involvement in the conspiracy against the rights of Joel M Blust. The evaluations meet the same case and controversy standard, due to the fact they hold weight, and are a major part of the conspiracy against the rights of Joel M Blust. All 3 reports on competency conflict with one another. The plaintiff got the idea to plead incompetent as part of case 23-CR-01060, in Kenton County Circuit Court, as it was classed as a D-felony, and the arrest was the result of entrapment. Not to mention Ms. Simpkins presumably,

accepted payments of money that was part of the irrevocable trust–JEHOVAH, to violate ethics, and code. There were 3 competency evaluations, and all 3 conflicted with the other. Kenton County, Kentucky, did not give full faith and credit to the issue, which had a previous conclusion, of IST-U, as a final judgment and was a judgement that was used in 2 separate counties, in Ohio, and was also deferred to by Ms. Simpkins, to Ohio for the evaluation and report. At that point, the report that comes back is the report the state is required to use as long as the defendant is ok with it. Violating the plaintiffs rights to effective counsel, fast and speedy trial, unnecessary delay, procedural due process, prosecutorial misconduct, and issue preclusion.

78) In separate instances, Ms. Archual while speaking directly on a phone call, after the plaintiff called her for information, and asked, "if she knows about tortureware, asking for help," she told the plaintiff, "she can't help, because she doesn't know what tortureware is."

79) Ms. Simpkins, via e-mail with the plaintiff, said "she can't help the plaintiff with that," after he had attached photographs that looked odd to the plaintiff, and were like 3D stereogram photos, with the background of the photo itself being the stereogram. The photos were taken on the plaintiff's personal cell phone, that are presumed to be seen by the defendants, parties to the defendants, Ms. Simpkins and Ms. Archual, and presumably, anyone who isn't under a guardianship and other protective arrangement, or who isn't wearing the devices of guardianship and other protective arrangement, or the AI and related devices and/or services making the photos appear with translucent figures and objects, as they are in real life, or with the 3D image, or whatever it is portraying, to be clearly visible. Wording the e-mail as a message asking for help with the situation, and if she could explain the circumstances of what was happening, with details to anything that would be helpful. The plaintiff told her, "what he thought was taking place," and "what he knows is happening." On more than one occasion, to

more than one e-mail, Ms. Simpkins responded, "she can't help the plaintiff with that." Instead she remained as a conflict of interest, and accomplice to the conspiracy against the rights of Joel M. Blust, in this case as a sympathizer to the sect of the defendants, under the color of law, and of the electronic harassment, and tortureware, cyber stalking, and presumably, a participant in what takes place in the photos. However, at the same time, Ms. Simpkins, acknowledged there was something going on that the plaintiff needed help with, just that for whatever reason, "she couldn't help with that." What is that that she can't help the plaintiff with? The photo, from an untrained, naked eye of a person who doesn't know any better, it looks like "almost exactly" what you took the photo of. If there wasn't anything to help with, it would have been an ordinary photo, and Ms. Simpkins would have asked, "what do you need help with?" In Kentucky it's state law for her to help me, if she is already the counsel to the plaintiff, in a different case. She never referred the plaintiff to anyone, or made reports on suspicious behavior, or mental illness, or brought it to the courts attention, because there is something the plaintiff, needed help with, there is a legitimate concern to be had, and it never dawned on Ms. Simpkins, to lie about the issue being had in general, if there was nothing in the electronic mail the plaintiff sent, what would there be to help in the first place.

80) The voices of Ms. Archual and Ms. Simpkins have been heard by the plaintiff, Communicating to the plaintiff, to the defendants, and to the online and live streaming networks, via the electronic communication, and AI and related devices, and in conjunction with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, that are attached to, and on the plaintiffs person, and/or personal property. At the time, case 23-CR-01060, was first underway in proceedings, when Ms. Simpkins was very much a new person, to the plaintiffs awareness, and in the life of the plaintiff as his defense counsel, the voice

of Ms. Simpkins, was heard communicating with Angela Dooley, several times specifically, as saying, "get your affairs in order." She was heard saying this, after the plaintiff had been communicating how bad he had it, and what all the defendants had done, to the plaintiff, communicating the fact that the plaintiff was going to sue the defendants. This was all the way back in 2024. However, the defendants never were made to get their affairs in order. Ms. Simpkins has been communicating, and has been heard, throughout the remainder of the matter, and is still heard currently, and to present day, in March, 2026. Specifically, Ms. Simpkins has been overheard communicating with a group of person(s), when the plaintiff was communicating, how much money he was going to sue the defendants for as a way to specifically get unknown information from the online, social media and live streaming networks. There was a point in time, when every time the defendants would do another act, "that violated his rights and/or freedoms," he would raise the number on the value of the total owed. On one of the occasions, Ms. Simpkins was overhead talking recklessly to a small group or party of people, she said "he could probably get a lot more than that," after the plaintiff had paused and was awaiting for a reaction.. The plaintiff was not meant to hear the conversation, as the defendants and Ms. Simpkins, started to act red handed, and took the conversation off of the electronic communication devices. There have been numerous more instances of Ms. Simpkins, communicating through or on the devices, especially, back when she was counsel for the plaintiff. However, when in person, to the plaintiff, she acted as though she had no idea, about the communication, or the online and live content.

81) Ms. Archual, was communicating on electronic communication, via the AI and related devices, before court, on June 6, 2024, when the plaintiff had a scheduled court date for competency, in front of Judge Dante Johnson. In which she and the plaintiff were also

communicating via text message, on personal cell phones. Overall approximately 10 – 15 messages each, were sent back and forth, continuously that morning, while the plaintiff was outside the court room, waiting. The plaintiff, recalls Ms. Archual, communicating to the online network, via electronic communication, something about what we were texting, and it being helpful in proving some of the evidence "against the group." The plaintiff was unexpectedly taken into custody that day, in the courtroom, to be transported, to Summit Behavioral

82) Healthcare, for competency evaluations. However, when the plaintiff was released, on July 31,2024, from Warren County Jail, the messages that should have been in the messages, saved under the contact Ally Archual, were not still saved in the phone. Every single message, under Ms. Archual's contact, had been deleted. Presumed, to have been a known correction's officer, with the Warren County, Sheriff's Department, conspiring with Ms. Archual and the defendants, she presumably, had gone into the plaintiffs property, and used the plaintiffs personal cell phone, to delete the messages.

83) Both Ms. Archual, and Ms. Simpkins, communicated back, and forth about the status of the plaintiff's case, in regards to competency, the upcoming evaluations, and status of the plaintiff's health and situation, via email with someone other than the plaintiff. They both communicated with Karen Blust, who had an active, "Temporary Protection Order," against the plaintiff, in case no's. 23/CRB/14768, and 23/CRB/17529, cases Ms. Archual was the counsel to the defense in., and even after instruction not to communicate with her was given. She being a person, who the plaintiff wasn't supposed to be communicating with himself, this violating privileged-communications between attorney-client, as they both gave her privileged information. There are numerous instances, in which the plaintiff remembers hearing and participating in active communications, between himself and Ms. Simpkins, actively present and

communicating, as part of the online and live streaming content and network, as the plaintiff, specifically knows what her voice sounds like. However the defendants also make it very hard to recall the specific things said, as the defendants Joseph Bedel Jr. and Elliott Spence, also erase and wipe, the short term memory, of the plaintiff. The things remembered and recalled are very specific instances and the "presumed" factual evidence, and is very much that, as it has also been confirmed via AI and related devices as electronic communication.

84) Dr. Vanessa Doyle is under the color of law as the state psychiatrist charged with the care of the plaintiff while at Summit Behavioral Healthcare from August 29, 2025, to December 12, 2025. Dr. Vanessa Doyle, was the lead psychiatrist on the treatment team that misdiagnosed a mental illness, bipolar disorder knowingly and purposefully, without the plaintiff being sick or ill in any way. Dr. Doyle did this in order to comply with the conspiracy and collusion of the defendants, presumably for a bribe of money from the trust—JEHOVAH. Dr. Doyle, is presumed to have been bribed with money, belonging to either the defendants, James Greg Dooley Sr. and Angela Dooley, or to the irrevocable trust—JEHOVAH. In the plaintiff's release paperwork from Summit Behavioral Healthcare, on December 12, 2025, the paperwork tells us exactly how the plaintiff thinks, and feels about the situation. As the plaintiff, has photographic evidence, that backs-up his position of electronic harassment and torture. If electronic harassment is true in any sense or fashion, then it's true in all senses and fashions, in this matter. The plaintiff reported the abuse, neglect and exploitation of guardianship and other protective arrangement, to Dr. Doyle while she interviewed the plaintiff upon admission. The plaintiff, did his best to accurately describe the abuse and what exactly he knows it to be, and the plaintiff feels like Dr. Doyle, knew the electronic harassment was taking place, and presumably, Dr. Doyle, knew the plaintiff is, and was at the time, under the terms of a silent trust, while not

being subjected to the least restrictive alternative. This is part of the same case and controversy as the conspiracy against the rights of Joel M Blust, and it supports a deliberate indifference towards the outcome and is an example of medical malpractice. It was obvious this was also known to the doctors, nurses and contract staff while at Summit Behavioral Healthcare, however, it was overly obvious that they would not be able to help the plaintiff, or the plaintiff was made to get awkward and uncomfortable while attempting to report the situation or trying to figure out facts with this situation. It was known the plaintiff did not want to be in his situation, and was not happy being under the restrictions and circumstances he was under while at Summit Behavioral Healthcare.

85) Dr. Doyle made a conscious decision to misdiagnose the plaintiff, with a bipolar psychotic mental illness, and also to get a court order granting forced medications anyway, and against the plaintiff's wishes, despite the fact. The reason Dr. Doyle, misdiagnosed the plaintiff with a psychotic disorder, was to obtain a civil commitment and order, subjecting the plaintiff to court ordered treatment and medications, done on behalf of the defendants, James Greg Dooley Sr. and Angela Dooley, and the irrevocable trust—JEHOVAH. The purpose of this was to keep hiding the terms of the trust, which is in active breach of trust, and to cover up facts and details about the abuse, neglect and exploitation, the plaintiff is the subject of, and to make it appear as if the plaintiff is incompetent and or mentally ill, when he is as or more competent than the defendants, and most people taking part in the conspiracy with their online content , social media and live networks. The plaintiff believes the results and the outcome of the misdiagnosis was a foregone conclusion, and a move, made out of desperation. As the plaintiff, was in pursuit of the truth. The plaintiff has been trying to access the courts, and file a lawsuit, for over 2 years plus, at the time of the incident. However, the process throughout has been hindered, by being

incarcerated for a year plus, "which was set-up, by the defendants, with phony hoaxes, and a part of stalling, the plaintiffs progress." The paperwork tells the story, as the story is, as the plaintiff reports it to be.

86) The release paperwork from Summit Behavioral Healthcare, done by Dr. Doyle, on December 12, 2025, is actively an example of gas lighting under the color of law, and she made a mockery of the system. Throughout all the paperwork, it's as though she's implying that the plaintiff Joel M. Blust, is not currently under guardianship, or that guardianship doesn't exist in general. She even states in the paperwork that, "he calls it guardianship." The terms to the irrevocable trust—JEHOVAH, grant plenary guardianship of person, and estate, to the defendants, James Greg Dooley Sr. and Angela Dooley. What else can the plaintiff call it, other than call it guardianship?

87) The paperwork also states that, "my incarceration, had been painful and mental torture," implying the plaintiff, was reporting the abuse and neglect to state funded doctors, that had been charged with his care. Its also proof that, Dr. Doyle, was a part of the conspiracy against the rights, of Joel M Blust, and part of the systemic failure, because, if the plaintiff would have reported it as mental torture and abuse, as the allegations are, wouldn't she, at least report the complaints and investigate, to make sure the allegations don't have any standing truth. Instead she reported and diagnosed, "something, the plaintiff knows is happening, and is reporting to her," and "as an issue that is very much a real issue, in the year 2026," and labeled the reported allegations as delusions, and/or hallucinations, without even so much as discussing it further past the initial allegations with plaintiff, or even exploring the idea of the reported abuse being a real situation. Cyber torture and crime is a real thing that exists in the year 2025, and 2026, and the plaintiff is 100 percent positive, it goes as far back as 2016, in this scenario.

That's 10 plus years of the existence of this reported matter. As a state funded doctor, charged with making decisions that affect people's freedoms and lives, the plaintiff has to think, Dr. Doyle, is either under informed and under trained, or she has a deliberate indifference to the outcome of the plaintiffs situation, or both. How could she conclude the plaintiffs allegations weren't true, without explicit details and/or back story in any amount, given by the plaintiff. It's "overly apparent," the state actors, especially this one, are participants in the conspiracy against the rights of Joel M Blust. Somewhere along the line Dr. Doyle was aware of the online, social media and live content, and had a meeting of the minds with the defendants, regarding the plaintiff and his situation, and in the conspiracy against the rights of Joel M Blust.

88) The paperwork, goes on to say, "they use their powers illegally even when I was unaware of it," implying the plaintiff, understood they are misusing their power, and that he is aware, of the guardianship and other protective arrangement, and aware there was a point in time, in which the plaintiff was unaware of the abuse, and the fact that what the defendants are doing is illegal, and that they're not supposed to be doing what they're doing. Also meaning the plaintiff has gained or regained capacity into the situation, the opposite of being incompetent, and the opposite of having, "poor insight into his mental condition." It sounds like the plaintiff has a very good understanding of the basics, or more of what's happening to him, and the state of mind he's in, however, maybe he's missing a few information technology skills, some details and facts. However, everything that is said to be reported in the release paperwork, is truly taking place and is reported as being complained about on paper. It's as the plaintiff described it as taking place, reported closely enough related to the facts, as they are in truth. The release paperwork is an example of Dr. Doyle deliberately gas lighting the plaintiff, and suggests an ulterior motive.

89) The report also lies, saying the first time, at Summit Behavioral Healthcare, in July, 2024, the plaintiff, was diagnosed schizophrenic, "because he was taking Seroquel." However, the plaintiff was taking Seroquel, only for sleep, at a very low dose, of 100mg at night, as it was prescribed for sleep, and had nothing to do with the plaintiffs mental condition. The Seroquel had been prescribed by a doctor, who was not employed by Summit Behavioral Healthcare or the state in any way. The doctors at Summit, in 2024, didn't diagnose the plaintiff with any mental illness, and the plaintiff was never prescribed any new medications, at that point or while at Summit Behavioral Healthcare, in 2024. Otherwise wouldn't the state of Kentucky, and Ms. Simpkins, have used the first report on competency. The supposed reason the Kentucky Circuit Court didn't give full faith and credit to that first 2024 report, was because they "didn't agree" with it, and used this 3rd report on competency, second report done at Summit, that is misdiagnosing the plaintiff as having bipolar disorder. The plaintiff believes, Dr. Doyle, forged the past report to say a diagnosis was diagnosed, by the doctors at Summit, a year after the fact, for the sole purpose of having "clear and convincing evidence," to diagnose psychotic disorder. When in actuality, the previous report probably blows their cover to the conspiracy, and the terms of the irrevocable trust—JEHOVAH. The plaintiff, after he came home from Summit Behavioral Healthcare, the first time in July, 2024, was telling the defendants, over guardianship devices, electronic communication and AI and related devices, that the outcome supported his favor, as there was no diagnosis, no medications prescribed, or medications even offered or attempted to prescribe, and no civil commitment, as the plaintiff was attempting to obtain the report, from every possible source, in all 3 jurisdictions that were supposed to have used that first report on competency.

90) The release paperwork goes on to say, the plaintiff believed, to being the subject of cyber torture. Implying again that he has good insight into his mental condition, and that he's actually reporting the abuse.

91) On September 9, 2025, Dr. Sutton, breached her duties as a state funded forensic psychologist. In the evaluation process, Dr. Sutton, lied to the plaintiff several times in less than a couple minutes and found the plaintiff, IST-U. Dr. Sutton tried telling the plaintiff that, "he hadn't been found IST-U in 2024 due to the inability to fully participate in his own defense," and then she retracted her statement by saying she "thinks he was found IST-U due to the inability to fully participate in his own defense, because he refused to participate in the last evaluation" which is true, the plaintiff didn't fully participate either day in the evaluation process on July 19, and July 22, 2024, but that wasn't the reason for the IST-U finding. Then she told the plaintiff, "she hadn't read the plaintiffs last report" all obviously lies, as an evaluator, it's Dr. Sutton's job to have read the previous and only report on competency. It's also her job not to flat out lie to the plaintiff's face when he's seeking public information that he knows is being withheld from him. She lost the plaintiffs trust for her integrity, if there was nothing to hide, there would not be a reason to lie.

92) Dr. Sutton knew about the terms to the irrevocable trust—JEHOVAH, and knew it was a silent trust. She knew that the plaintiff didn't formally know the facts about the trust. Dr. Sutton also knew about the abuse, neglect and exploitation of the plaintiff, and the fact the evaluation was being exploited, and was live streaming online. Dr. Sutton, before evaluating the plaintiff that morning had the results premeditated, as IST-U, with civil commitment, under false presences. On her way out after our shortened evaluation, Dr. Sutton was crying and couldn't

keep it together, assuming she was embarrassed or humiliated, from being unable to tell the truth or be natural, and feeling like an idiot.

93) The plaintiff's rights were violated, while at Summit Behavioral Healthcare, August 29, 2025, to December 12, 2025, via guardianship devices, AI and related devices and services, and with guardianship and other protective arrangement, in the irrevocable, trust—JEHOVAH: while the plaintiff was in his normal daily routine, going about his unnecessary forced treatment, and everyday in violation of statutes, according to (R.C. 5122.27) AND (OAC 5122-14-11) ; the right to:

94) The misdiagnosis of bipolar disorder, and inhumane environment: effort at continuous misinformation to the plaintiff, and the inability to receive humane care and treatment, was not followed, including without limitation, the following rights violations:

95) For the plaintiff to be free from any excessive or unnecessary treatment, medications and restraint: The documentation of patient participation, all objections and consent must be kept as record. The plaintiff refused to take mental health medications while involuntarily committed at Summit Behavioral Healthcare, as it is his right to, so long as he is not an imminent threat of physical danger to himself or others. In the release paperwork, done on December 12, 2025, by Dr. Doyle it states, "the plaintiff had a few verbal altercations, but was never in any physical altercations." Suggesting and implying that the plaintiff was not a threat to anyone. As it's in our nature, as human beings, to disagree verbally. This is not the type of threat that the policy is suggesting, as a threat to others that would justify forced medications. The plaintiff can only assume, since the plaintiff was not in person for the hearing, however, "he was available to be taken into the courtroom, present and waiting in the hall, but was never called in," that one of either, Angela or James Greg Dooley Sr. was present in the courtroom, or in

communication with the courts, to make the medical decision, of forced medications, and knowingly approving the medication would be against his will. The paperwork also states, "the plaintiff refused court ordered medications." Indicating the subsequent using, of IP restraints, and the forcing of medications, and the fact the contract staff, at Summit Behavioral Healthcare, made it clear they would use the IP restraints, everyday they had to force the plaintiff to take medications. Evidence in favor of forced medication and treatment has to be found by, "clear and convincing evidence." Medications would have to be, in the plaintiff's, "best medical interest." Meaning the medications would need to have helped in the past, or are currently helping treat an underlying issue or illness, and if the patient does not have life altering side effects as a result of medications, which he very much does. The plaintiff made complaints about the medications not helping, or not doing anything helpful, but making him very tired and very hungry all the time. The forced medications are an example of a cover-up, for the continued silence of the irrevocable trust—JEHOVAH, of the electronic harassment and cyber torture in the guardianship and other protective arrangement, and the irrevocable silent trust—JEHOVAH, as part of the conspiracy against the rights, of Joel M Blust. Manipulated, to keep him "lame," and make him seem like he is crazy, and not experiencing the electronic harassment and torture, of the communication, in real life. The defendants went all in on this psychotic illness aspect of the conspiracy out of spite.

92) The misdiagnosis of psychotic disorder, with forced medications and treatment, subject to court order, diagnosed by Dr. Doyle, forcing the plaintiff to take medication, and receive treatment, he doesn't want or need, and tried to refuse to take, for the reasons of the rights violations, coupled with the side effects had, from psych medications. That was done, while the plaintiff, was involuntarily committed, at Summit Behavioral Healthcare, on September 24, 2025, and was forced to comply with,, with the use of IP Restraints, continuous for x 1 hour,

twice. Violated all his rights, and is an unjustifiable restraint on liberty due to the fact he's not in the least restrictive alternative. The plaintiff doesn't need these medications to prevent hurting himself or others, he hasn't had success with psych medications in the past, he refused and didn't want to take these medications, and they aren't helping the plaintiff with any underlying issue, at the present point in time. He knew at the time, this was being done as a cover of the first results on competency, had as a patient at Summit Behavioral Healthcare, in July, of 2024. He knows now, as they are still being forced by court order to be taken every other week, and being forcefully injected into the plaintiff's body, giving him no choice in the matter. He assumes that James Greg Dooley Sr. And/or Angela Dooley, had approved the forced medications by court order, as they may have authority over medical decisions for the plaintiff. For absolutely no reason, as the plaintiff has good insight into his mind and body, and what's happening with both. The fact the defendants would even consider making a medical decision, on behalf of the plaintiff, with their knowledge of him having the capability to make his own choices, is proof of a conspiracy, as that would be the only reason for them to do something like that. The only medical decisions, and any decisions in general, they've made, have been to feed their agendas and have never had or taken the plaintiffs best interests in mind even once. Joel M Blust, the plaintiff, goes to Greater Cincinnati Behavioral Healthcare, at 1501 Madison Road, 3rd Floor. Cincinnati, Ohio 45206, every other Tuesday, to receive an injection of Risperdal Consta, in the arm. The plaintiff is adamantly opposed to this medication and to this shot, however, the provider would not stop the dose, or allow the plaintiff to switch to the pill form. The plaintiff has had side effects that have caused him to balloon to a weight of almost 250 pounds. This, coupled with the fact the defendants, Joseph Bedel Jr. And Elliott Spence, as facilitators of the plenary guardianship and the online content, have taken advantage of the fact the plaintiff has

uncontrollable hunger, and feeds into the command of forced hunger, with repetition, as they think it's funny. The plaintiff is very lethargic, due to the medications, and is overly tired, as the plaintiff sleeps more hours than normal, and gets tired enough that he's nodding off very quickly, after just having slept a full night. The provider did however, lower the dose of Risperdal Consta, from 37 mg to 24 mg, after requesting and reporting the side effects and giving his position on the medications, and their continued prescription.

96) 93) The plaintiff was not in the least restrictive environment: while at Summit Behavioral Healthcare, August 29, 2025, to December 12, 2025, as the plaintiff while involuntarily committed was subjected to constant AI and related devices, augmented reality, and remote monitoring, as part of guardianship and other protective arrangement, and the irrevocable, trust—JEHOVAH. With a huge following of people communicating as themselves on social media and live stream, via electronic communication. All the while being the subject of their torture, mind games and harassment, abuse, neglect and exploitation, with constant speculation surrounding the life and circumstances involving the plaintiff, and his time in treatment. 94) Personal protected health information: was subjected to anyone and everyone, following and/or viewing content online and live, and being posted by Joseph E Bedel and/or Elliot Spence, with the knowledge and approval of, James Greg Dooley Sr. And Angela Dooley, as well as the knowledge of the doctors, medical and contract staffs at Summit Behavioral Healthcare while involuntarily committed. As they went right along with the conspiracy, and omitted and withheld facts, that could have altered the life and treatment of the plaintiff. Privileged communication with doctor–patient and attorney–client, as well as all paperwork filled out, the grievance process, all letters written and mailed, all phone calls had, the petition for writ of habeas corpus action, "filed in the Supreme court of Ohio," and "received on

December 5, 2025," all medical professionals and state actors who communicated one on one, treatment team bi-weekly status updates on care, all groups that were attended, and the plaintiffs participation in those groups. What medications that were prescribed and the physical act of taking the medications. The fact the medication was forced and the fact the plaintiff had to be restrained and forced medications was embarrassing and humiliating, as it caught the plaintiff by surprise.

97) A humane psychological and physical environment: wasn't had, regarding personal liberty, respect for personal dignity, autonomy, and privacy; with zero privacy had anywhere in the hospital while involuntarily committed at Summit Behavioral Healthcare, and the knowledge of what's happening and knowing the plaintiff has to tolerate the abuse, basically accepting the role and involuntary servitude and forced labor;

98) The right to reasonable protection from physical, sexual, or emotional abuse or harassment, as the plaintiff was electronically harassed and mentally abused daily as part of online content; constantly in the worst case scenario and position, regarding his health and well being, and the way the plaintiff feels physically. The AI and decision-making devices and services and the hacking of the plaintiffs body to feel sick and worn down, lethargic and lame, was 24 hours a day while involuntarily commitment at Summit Behavioral Healthcare, from August 29, 2025 to December 12, 2025. A major and life altering event happened while at Summit Behavioral Healthcare, as the defendant Joseph Bedel Jr, was facilitating the commands of the plaintiff while he was participating in an exercise group, and the previous days while involuntarily committed, the plaintiff had no problem or issue in doing 50 push-ups consecutively. However, this specific event, the change in commands and restrictions, to the person and body of the plaintiff, by the defendants, made the person of the plaintiff very weak

and uncoordinated, preventing the plaintiff from being able to do more than 15 push-ups consecutively, and made him quit working out and exercising all together. The person of the plaintiff, remained like this for the remainder of his stay at Summit Behavioral Healthcare, and remains in this manner to this day, current day in March, of 2026.

99) Regarding privacy: the right to reasonable privacy, and freedom from excessive intrusion by visitors, guests and non-hospital surveyors, contractors, construction crews, or others; and The right to be advised of and refuse observation, by techniques such as one-way vision, mirrors, tape recorders, televisions, movies, or photographs, or other audio and visual recording technology; was not had from August 29, 2025, to December 12, 2025 while involuntarily committed, at Summit Behavioral Healthcare, as the plaintiff wrote grievance letters and called the Ohio Department of Health Complaint Hotline, to report alleged electronic harassment, and nothing was done about it. Countless numbers of viewers and visitors, online and live streaming, interacted daily with the plaintiff through electronic communication, AI and related devices and services, and supportive/substitute decision making devices and services, as the plaintiff had no choice in the matter; and was not subject to the least restrictive alternative. The staff, doctors and nurses were aware of these privacy violations being had and did not even address the issue, and seemed to avoid talking about it at all cost.

100) The administrative remedies of any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State subjecting persons residing in or confined to an institution, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, causing such persons to suffer

grievous harm, has been exhausted through the grievance process while involuntarily committed at Summit Behavioral Healthcare from August 29, 2025 through December 12, 2025.

101) With the plaintiff drafting grievance letters, directed to Disability Rights, Ohio, and to the Ohio Mental Health Consumer Advocacy and Protection Specialist, the plaintiff wrote detailed letters in the form of grievance complaints, mailed to: Ohio MHA Consumer Advocacy and Protection Specialist, Ohio Department of Mental Health and Addiction Services Central Office, 30 East Broad Street, 36th Floor, Columbus, Ohio 43215; and to Disability Rights Ohio, 200 Civic Center Drive, Suite 300, Columbus. Ohio 43215;

102) The plaintiff left a detailed phone message on the Ohio Department of Health Complaint Hotline at 1-800-342-0553; after a made phone call, to the Ohio Department of Health Complaint Hotline, with complaints of rights and privacy violations while involuntarily committed at Summit Behavioral Healthcare from August 29, 2025, to December 12, 2026. The complaint tracking number with the Ohio Department of Health (ODH) is 25-147023, the case was closed per no jurisdiction over the subject matter, referred to the Ohio Medical Board, as having no jurisdiction over the doctors at Summit Behavioral Healthcare;

103) The plaintiff attempted communication and left a voice message with the attorney on record in case no MI. 2025001178, Ms. Tabitha Hochscheid at (513)338-1818, to inquire about getting in front of a judge and back in court regarding this matter, to terminate or modify guardianship and other protective arrangement, as well as modification and termination of the continued commitment subject to court order. The procedure is inadequate or unavailable, due to the lack of communication, or response, from counsel, in the case.

104) The plaintiff has requested, the information and disclosure, of the irrevocable trust—JEHOVAH, from the trustee/co-guardian and/or conservator of the trust. The plaintiff has

made it known he is aware of the irrevocable trust—JEHOVAH, as well as the fact the terms, are of a silent trust. In the state of Ohio, in an irrevocable trust, the trustee must inform the beneficiary of the trust anytime upon request of the information. The trustees, James Greg Dooley Sr. And Angela Dooley, have not done this, and refuse to do this, making the terms of the trust impossible to achieve. Rendering this state procedure for remedy, exhausted and/or unavailable;

105) It's the plaintiff's constitutional right to be notified of the nature and cause of any action against him, as well as the only avenue for recourse. It requires that parties be notified of any proceeding that could affect their rights or property, in this case, both are affected. It also provides a reasonable opportunity to appear and present objections. To satisfy the Sixth Amendment requirement, the notice that the government provides must be specific enough to enable the defendant to prepare a defense, and to protect himself after judgment. Without nature and cause provided and being under the color of law, state and admin. Procedure for remedy is unavailable.

106) [2111.49)]states "upon written request by the ward, the ward's attorney, or any other interested party," PLAINTIFF JOEL M. BLUST, HAS EXHAUSTED THIS STATE REMEDY, BY PRODUCING A WRITTEN DOCUMENT IN THE FORM OF A PETITION FOR TERMINATION OR MODIFICATION OF GUARDIANSHIP AND OTHER PROTECTIVE ARRANGEMENT, containing allegations of competence, abuse, neglect and exploitation, not being subjected to the least restrictive alternative, while having an implied good outlook, despite the circumstances. Then, sending the petition by personal mail, to the Hamilton County, Probate Division, Court of Common Pleas, at 230 E. Ninth Street, floors 9 and 10, Cincinnati, Ohio 45202. Upon receiving the written request, on January 5, 2026, the

Common Pleas Court, failed to acknowledge the petition for termination or modification, as it was recorded as a, "letter to the court by Joel M. Blust," filed under an open mental illness case, no. MI 2025001178. Release procedures are inadequate, or have been exhausted in state courts, due to the lack of response, or hearing into the matter, in accordance with chapter 2111 of Revised Code, and being without order or judgment from the Hamilton County, Probate Division, Court of Common Pleas, in the matter of termination or modification, of guardianship and other protective arrangement, of ward JOEL M BLUST;

107) Fundamental fairness, and the equality of law, is being sought in the case, for the plaintiff, the case record, of guardianship and other protective arrangement, of JOEL M. BLUST, and/or Juvenile case record of guardianship and other protective arrangement, of JOEL M BLUST. THE CASE RECORD IS UNAVAILABLE, OR RESTRICTED, BY BEING SEALED.

108) The plaintiff is essentially out of options, or options were futile to begin with, WITH THE PLAINTIFF'S, RIGHT OF INFORMATION, IN THE CASE, GOING UNNOTICED. As the Plaintiff, visited in person, to the Hamilton County, Probate Division, Court of Common Pleas, at 230 E. Ninth Street, floors 9 and 10, Cincinnati, Ohio 45202. Upon request of information and disclosure, of any case records, regarding Joel M Blust, the clerk did not find any results in the computer. When asked if Joel M Blust was under any kind of guardianship and other protective arrangement, the clerk responded "no.." Making the process for remedy unavailable. A formal request, on a court issued form, from the Hamilton County, Probate Division, Court of Common Pleas website, was used to file a request, to unseal the case record, of guardianship and other protective arrangement, of JOEL M. BLUST, it was sent, on December 31, 2025, via personal mail, in the same stamped envelope, with the petition to terminate, and received by the Probate Division, Court of Common Pleas, on January 5, 2026.

Due to a lack of hearing, and/or judgment or order on the issue, and the filing, of the mail received, as being a "letter to the court, by Joel M. Blust," the recourse is exhausted, inadequate and unavailable.

109) An attempt at filing a termination/modification of guardianship and other protective arrangement was made via the Hamilton County Probate Division, Court of Common Pleas website using the e-file system. An email was sent back to the plaintiffs e-mail address stating,

110) "THIS MUST BE FILED IN PERSON WITH OUR MENTAL HEALTH DEPARTMENT AND THE MENTAL HEALTH DEPARTMENT IS NOT ASSOCIATED WITH THIS EFILE SYSTEM. YOU CANNOT FILE THIS WITH THE EFILE SYSTEM IF YOU NEED TO REACH SOMEONE IN THE MENTAL DEPARTMENT PLEASE CALL 513-946-3591 TO INQUIRE ABOUT YOUR FILINGS." After e-filing a more than sufficient document under the termination of guardianship caption, on March 17, 2026. The Hamilton County, Probate Division, Court of Common Pleas is acting with a deliberate indifference towards the plaintiffs situation as if they are not properly trained in this situation as the plaintiff has no recourse for a guardianship established under silent terms. It is illegal to have a silent guardianship for this very reason, as the ward in guardianship is being restricted from all access and no one is being held accountable.

111) This is the second different way of trying and/or attempting to file a termination petition with the Probate court, spending much more time and effort on the second. Hamilton County, Probate Division, Court of Common Pleas should be liable in their individual and official capacity for all the damages and should be held joint and severally liable with the

defendants James Greg Dooley Sr. and Angela Dooley. Joseph Bedel Jr. and Elliott Spence. For the deprivation of rights under the color of law and conspiracy against the rights of Joel M Blust.

112) A habeas corpus action was brought before the highest possible state court, the Supreme Court of Ohio. The petition, for writ of habeas corpus, was for an unjustifiable restraint on personal liberties on behalf of the plaintiff, JOEL M BLUST, in the matter of the termination of guardianship and other protective arrangement. The plaintiff filed the petition for habeas corpus, as an involuntary commitment, at Summit Behavioral Healthcare. and the motion to terminate or modify guardianship and other protective arrangement, was attempted at making the action a part of case no. 2025-1589, in the Supreme Court of Ohio. The action was dismissed on its merits, and there is no other means for relief, in the case of an unjustifiable restraint of personal liberty, or for the termination of Guardianship and other Protective Arrangement, in the state of Ohio. The gaining of personal autonomy, through relief, or by least restrictive means, may have to be had, by federal means of relief. The State courts previous adjudication on the matter of habeas corpus, is incorrectly dismissed on its merits, due to a presumption of a "failure to state a claim upon which relief can be granted," or a "failure to show the exhaustion, or the inadequacy or unavailability of remedies," this is unjustly depriving the plaintiff of personal liberties, and subjecting the plaintiff, to the restraint of others, without giving the information needed, or the means necessary, to produce the question of freedom from restraint. State procedure for remedy, is exhausted, or being made unavailable, to the plaintiff;

113) This civil justice action, is the plaintiff's attempts at restoration of rights, and full competency, in regards to mental health and wellness. By "clear and convincing evidence," the petition shows competence, and implies, any mental illness, or disability, is in remission, or does not exist. The plaintiff, is not a threat to the public safety, or a threat to any person around him,

as the plaintiff has stayed incident free, throughout the process, and has complied with all treatment, and medications required, of the continued commitment thus far, while in firm belief on the facts of not being a person in need of treatment or medications.

## CLAIM 6: TITLE VII EMPLOYMENT DISCRIMINATION; THE DENIAL OF SSI BENEFITS; AND VIOLATING THE AMERICANS WITH DISABILITIES ACT;

114) The plaintiff has had employment over the course of the past 6 years, since he's been aware of the AI and related devices and the electronic harassment devices and services associated with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH. Since December 2020, the plaintiff has been fired or let go from, or had to quit from all places of employment, due to complications with guardianship and other protective arrangement, and the harassment from the defendants, and parties to the defendants.

115) Between 2020 and 2024 the plaintiff has been employed with several commercial roofing companies and multiple companies in the maritime service industry, working as a deckhand on the barges. All of the employers are presumed to have been, "unknowingly to the plaintiff at the time," aware of the circumstances the plaintiff was under, making them aware of the plaintiff's disabilities. The plaintiff didn't know he was under disability himself at the time of the commercial roofing employment. The defendants weren't at the time mentally harassing the plaintiff in their own names and likenesses. However looking and thinking back, they were definitely making life and employment harder from a third person point of view, and had just as much control and power over the person of the plaintiff, while employed as a commercial roofing laborer.

116) In the 2 places, in the maritime industry, the defendants were communicating, in first person context with the plaintiff, however, not specifically using their names or likenesses, but still communicating as people that the plaintiff didn't necessarily know. Carlisle and Bray Enterprises, at 50 East Rivercenter Blvd #1180, Covington, Kentucky 41011, was the first place of employment with the maritime service industry, around sometime in May and June, of 2022, the plaintiff was assigned aboard the "Queen City" vessel. The plaintiff didn't know exactly what was taking place at the time, but was aware of the electronic harassment. However, the plaintiff didn't recognize it as guardianship and other protective arrangement, at the time. He also didn't know at the time, it was being broadcast to people online, via social media outlets, however, presumably it was. The plaintiff was set up to fail and quit, within the first 6 weeks of employment. The week long training, and then first 2 week long hitch, went well without incident, for the most part, except for some minor harassment, presumably, in regards to the defendants getting acquainted with the crew members aboard the Queen City. Presumably, the defendants defamed and slandered the plaintiff, in efforts of winning over the crew's trust and participation in the harassment, and for the dislike of the plaintiff.

117) The 2nd hitch of the plaintiffs' employment, started with issues involving the defendants. The defendants wanted the plaintiff to quit, so they had set it up for a bunch of weird stuff to start happening. The defendants at the time had circumstances revolving around the plaintiff, to reflect that there was a direct threat on the plaintiff's life. The defendants had it to seem like there was a black gang stalking for the right moment to kill the plaintiff. There were presumably, people on the boat that weren't employed through Carlisle and Bray, and who had no business on the boat, who weren't supposed to be on the boat, but were on the boat in effort to harass and humiliate the plaintiff. They were there in order to get the plaintiff to quit his

employment. People in which the plaintiff heard out loud communicating with the crew and captain of the vessel for Carlisle and Bray. Upon boarding the vessel, for the second hitch of employment, the plaintiff was aboard for less than 3 hours, and had to have the supervisor pick him up, because he quit his employment. Which was standard at Carlisle and Bray, but usually under much different terms and events. This was done and set up by the defendants, presumably, because the plaintiff would be making too much money, and the defendants economic exclusion would be ineffective. The plaintiff did quit that employment due to the hardship created by the defendants, and the willingness of the crew members and employees of Carlisle and Bray to go along with this plot and attempt, at ending the plaintiff's employment.

118) After quitting Carlisle and Bray, the plaintiff went to a different marine company, because he enjoyed that work, was already trained to be a deckhand, and would be making good money. The plaintiff went to Inland Marine Service, at 1700 Petersburg Rd. Hebron, Kentucky 41048, this was in August/September of 2022. The plaintiff went in person, like he had done at Carlisle and Bray to apply, and was just about hired on the spot the same way too. He was supposed to report that first week at 9am one morning, and there would be a ride waiting to take him to the dock to board the vessel he was assigned to. This was scheduled to be a 30 day first hitch, and the plaintiff was assigned to a vessel. However, the plaintiff hadn't yet received his TWIC certification card in the mail, so when he reported to be transported the employee that was responsible for transport called his boss, and the plaintiff was unable to report to the vessel, and was given instructions to call in 2 weeks. The hitch he missed would be 30 days, but he would have to work on the next hitch, after receiving his TWIC card through the mail. The plaintiff did as he was supposed to and called for instructions in 2 weeks, and remembers the conversation saying something like "no they aren't back yet, but you would be getting off the boat right about

now anyways," and he was again put off and was told to call the following month, to get back with the next crew to work with. 30 days on and 30 days off was the work schedule. This call back next month went on for 4 more months until the plaintiff called for instructions on boarding a vessel, and was told, "they had let him go, and that he was essentially fired." The plaintiff didn't miss any phone calls, didn't miss any days of work, or anything work related, and always did as instructed, but was fired from employment.

119) The plaintiff believes he was intentionally discriminated against due to his disability. As it's presumed, the employer knew of the disability, and it is presumed, the defendants had communicated with the employer Inland marine services, and said some things to discriminate and defame the plaintiff. It was acknowledged by the employer, due to the fact the plaintiff didn't even have a chance to work a day or a single job with this company before he was fired.

120) The plaintiff didn't seek unemployment benefits or a discrimination claim with the EEOC, due to the fact the plaintiff is still currently being subjected as the victim to the discrimination, as the Maritime industry has Maritime Jurisdiction, and makes any discrimination or crime in employment, a federal matter. Plus the defendants make it incredibly difficult to get things done, and have known about the intentions of the plaintiff to file a claim, on both these 2 companies. After Inland Marine fired the plaintiff, the next place of employment was a skid company called Kamp's Pallets Inc. At 30 Kenton Lands Rd. Erlanger, Kentucky 41018, from August, 2022 to December, 2022. This was back breaking work, but the plaintiff made it to work enough days out of the week to maintain employment for several months. However, the distractions the defendants, or parties to the defendants, would cause everyday, while the plaintiff was doing his work was unbearable. The defendants kept trying to imply the

plaintiff is a child molester to all the other employees via electronic communication devices and services. They made it as though they were making it known to everyone working there. Obviously this being a lie, but no one knows that being the plaintiff's mind set. Not to mention the defendants can force talk and force think, or at least make it seem or appear as that's what's taking place, and constantly cause a scene and distractions, by making the plaintiff argue with them. Same thing everyday, all day for several months. Defaming the plaintiff, and making it hard to stay on track and on time, and doing it on purpose.

121) The plaintiff, remembers going back to Kamp's, to seek employment a second time some weeks after plaintiff was fired, and the human resources lady gave this expression like, "oh, hell no." Needless to say, after the plaintiff was fired the first time, he wasn't welcome back for a second time of employment, despite it being grunt work. The supervisor made it out to be attendance issues, but it was due to the defendants and the distractions. These weren't isolated incidents, this was more than the third place of employment affected by what is now systemic harassment. As a pattern of workplace and/or institutional behavior, designed to create a hostile environment between him and his peers, that infringes on the protected rights of the plaintiff. Causing the plaintiff to act and behave in a manner inconsistent with who he is. Being done at several places, in a row, and done in the same manner as the instances prior, as a pattern. 118) The plaintiff applied for Supplemental Security Income, on October 7, 2024, after having been released from Summit Behavioral Healthcare, the first time. Much wiser, smarter, and should have been better off, and equipped at getting this problem taken care of. However, the plaintiff still applied for disability, because he was just found incompetent, IST-U, not because the plaintiff is inherently disabled.

122) The plaintiff has it documented as his disability began, on September 1, 2024, after being released, and had his release paperwork at the original appointment for the Social Security office, to copy and keep on file,. This paperwork stated, "the plaintiff has been deemed incompetent to stand trial, un-restorable, due to the inability to fully participate, in his own defense." Obviously, the disability began before that, however, it's documented to have begun, on that date. After the initial interview, the paperwork says the plaintiff should hear back from the Social Security office, within 200, to 230 days.

123) The case ID no. is 13250839. The plaintiff next heard from, the (SSI) office, on November 12, 2024, with a piece of mail telling the plaintiff, of a doctor's appointment, with FORPSYCH: A FORENSIC PSYCHOLOGY PRACTICE, scheduled, for Friday, November 22, 2024, for a Mental Status Exam, Adult. This was sent, by the Disability claims adjuster, and says they make decisions based on the evidence they already have on file, if the appointment is missed. However, the appointment was not missed, as the plaintiff attended, and it went well. The plaintiff reported the harassment and abuse, and led the doctor to believe he knew it was guardianship he was under, and that he didn't know what to do about it. He reported that he had just been found incompetent, at Summit Behavioral Healthcare, and believed he couldn't work. The exam doctor understood what the plaintiff was going through and had to deal with on a daily basis, and reported, "she was going to do everything she can to help the case go through, to start receiving benefits," and the exam was over.

124) The plaintiff, next got a piece of mail from the OPPORTUNITIES FOR OHIOANS WITH DISABILITIES DIVISION OF DISABILITY DETERMINATION, dated for December 27, 2024, however the plaintiff didn't receive the mail until after the 6th of January, as the holidays must have got in the way of proper mailing process, or they were bribed by the

defendants. The letter says it's important that they speak with the plaintiff by January 6, 2025, for "information regarding the plaintiff's treatment history," and if the plaintiff doesn't respond by the 6th, they may decide the case based on the information they already have.

125) The plaintiff, next received a piece of mail, dated January 6, 2025, received sometime after that, saying the plaintiff, "does not qualify for (SSI) payments on this claim", and stating it was, "because the plaintiff is not disabled, or blind, under their rules." It goes on to say, "they used the following medical, and non-medical reports to decide the claim: FORPSYCH: A

126) FORENSIC PSYCHOLOGY PRACTICE, Exam, received on December 4, 2024, and Glenwood Behavioral Health Hospital report, received on October 29, 2024". It also states the plaintiff said he was unable to work as of September 1, 2024, because of schizophrenia, polysubstance abuse and anxiety. The medical evidence shows that there is insufficient evidence on file to make a determination. However, there was insufficient evidence as the release paperwork from Summit Behavioral Healthcare was also photo copied and should have been used in the determination, with an IST-U UNRESTORABLE finding on that paperwork, as well as other key factors to the claim. Even though Summit Behavioral Healthcare didn't find the plaintiff schizophrenic, he was found incompetent un-restorable and should have been approved.

127) It's presumed the defendants had a hand in the disability finding, due to communication with the defendants via supportive/substitute decision making, and/or AI augmented reality. It's presumed, the defendants did not want the plaintiff to receive benefits, as part of their economic and social exclusion scheme, to keep the plaintiff down and as lame as possible, in order to keep influencing the masses with the plaintiffs true self unidentified and missing in action.

128) The plaintiff is requesting back pay from the Social Security Administration, starting from November 1, 2024, as that would have been the month the plaintiff would have been first eligible to receive benefits, as someone who is disabled and unable to work. From November 1, 2024 to December 31, 2025 should be compensated for fraud in a false disability finding. 14 months in total at $994 per month, totaling $13,916.00 in back pay benefits.

129) The defendants James Greg Dooley Sr. And Angela Dooley, and the Hamilton County Probate Division, Court of Common Pleas, have violated the Americans with Disabilities Act (ADA), by infringing on the integration mandate of Title II, which requires states to provide services in the most integrated setting appropriate to an individual's needs. Guardianship and other Protective Arrangement, and the irrevocable trust—JEHOVAH, is being used to unnecessarily institutionalize the plaintiff and strip him of decision-making autonomy without exploring less restrictive alternatives, it is a form of disability-based discrimination. This form of discrimination under guardianship and other protective arrangements, leads to isolation without a medical or safety necessity that violates this protection. Leading to a failure to provide individualized assessments, as the ADA requires individualized determinations for people with disabilities. Rather than rely on a single diagnosis, to trigger fast-track full guardianship with only one, or none disabilities. Courts and state agencies were obligated under the 'ADA to identify and provide reasonable accommodations, such as less restrictive alternatives to guardianship, before stripping an individual of their legal rights through full guardianship. Full guardianships and other protective arrangements strip individuals of fundamental civil rights protected by the ADA, including the right to associate with friends, and the right to make personal health, sexual and/or financial choices. The least restrictive environment would have allowed the plaintiff to retain rights, while receiving limited help with the financial assets, with

an emphasis on furthering education. A failure to provide such modifications, imposed a form of "legal" segregation, by removing the plaintiff from the social, economic, and civic interactions involved in self-directed decision-making. Full guardianship should only be used when no other option works. Since the plaintiff is able to manage with a less restrictive alternative, or with no restrictions at all, a full guardianship is legally unnecessary. The defendants owe the plaintiff for Non-Economic Losses: in the maximum amount allowable, as compensation in the form of money damages for emotional harm, mental anguish, pain and suffering, and loss of enjoyment of life, The defendants also owe the plaintiff, the use of all property, real and/or personal property, that they have used the irrevocable trust—JEHOVAH, to restrict from the plaintiff, they also owe for punitive damages in the maximum amount allowable by law. As the ongoing continued restraint on personal life, liberty and personal property is an unlawful detention, at this point in time, in March 2026, after having jumped through hoops already, trying to figure out a way to get someone to recognize guardianship and other protective arrangement, to present the question of freedom, and any other damages the court sees just, fit and proper.

## CLAIM 7: FREEDOM OF LIFE, LIBERTY AND PROPERTY; EQUALITY OF LAW THE IMPROVEMENT OF REAL PROPERTY & REMOVAL OF DISABILITY(S):

130) The plaintiff, Joel M Blust, currently, and as of March, 2026, and since August 20, 2004, When the plaintiff turned 18 years old, is unable, "to dispose of property," and "to execute instruments, "as part of a protective arrangement, and the irrevocable trust—JEHOVAH. The disability was supposed to be relieved by the Trustee upon the plaintiff reaching age 18, and should have led to the transferred deed of the real property into Joel M Blust's name. The Trustee presumed to be Angela Dooley did not do this and is in breach of fiduciary duties. This disability

puts the plaintiff at a disadvantage throughout his day to day life, in his home, while in public, while incarcerated and involuntarily committed, and while engaging with networks of people. It is considered a "disability," one in which that can be improved, or corrected by court order. This is a conflict of interest, between the plaintiff and the defendants, James Greg Dooley Sr. And Angela Dooley, and now Joseph Bedel Jr. It's excessive value, being the reason for bias and prejudice, towards the plaintiff and the plaintiff's property. "If it can be removed," and "was supposed to be removed, and/or improved as part of an irrevocable mandatory distribution of real property, presumably, should have been through the Uniform Transfers to Minors Act," upon reaching the age of 18 years old, then how and why did it not get or be removed and/or improved? While some guardians may manage real property for someone with a severe mental impairment, disability and restrictions on disposal after reaching 18 years of age are designed to protect the individual from being taken advantage of, rather than to blatantly violate their rights by withholding the property. It would be fit, just and proper for the courts to sequester and/or seize the property if need be, to make sure the real property finds its way to the rightful beneficial owner. In this case the plaintiff believes it is being done out of spite, and done directly to violate the plaintiff's rights. It would be appropriate for the court, "as Superior guardian," to take control of this real property conflict of interest, to make sure the administration of justice is fair, and complete. You could say, "the only way for justice to be had, in this case, and for the plaintiff in general to be made whole, is to remove and/or relieve the plaintiff of disability, in full." The defendants, Angela Dooley and Joseph Bedel Jr, have been saying how they will never agree to relieve the plaintiff of disability, the plaintiff believes this is also to gain recognition through online, live and social media networks, as it gains attention and feedback and has fed

their confidence in the spite and wickedness it would take to withhold a property of this sort and value.

131) The real personal property was to be distributed, presumably, as part of a life insurance policy, upon the death of the plaintiff's biological father, and presumably, after he had died in a workplace accident. The life insurance policy is believed to have paid out one million dollars to the beneficiary of the policy, Joel M Blust. An irrevocable trust was created with only one beneficiary named to the estate. The fact the trust was funded by a wrongful death life insurance policy, is the reason for the trust having to be irrevocable, and also the reason for the sole beneficial owner being the plaintiff. The trust instrument mandates distribution of the real property left to the plaintiff, and the only terms are upon reaching age 18. The plaintiff is suggesting the removal of disability, as being, the improvement of real property of the plaintiff. The plaintiff is also suggesting that there are several improvements that can be made in the real and/or personal property of the plaintiff's and is suggesting that more than one improvement, or the entire person of the plaintiff can be improved, but specifically the scrotum and genitals of the plaintiff can be improved. The plaintiff is specifically describing the property to be improved, as "the scrotum and genitals of the person of the plaintiff, Joel M Blust," and/or the male anatomy. This specific performance in improvement is the result of the disposal of a device and/or instrument, that is restricting the movement of the person of, Joel M Blust, and is in need of being removed.

132) Once improved, the plaintiff, having to agree upon the terms and conditions of maintenance and repair, agrees upon equitable terms with the owners of the adjacent property. Assuming this is a person that may be in possession of the property, or the settlor, administrator of the property, perhaps a co-trustee or friend of the family. Within 40 days, according to law, the

plaintiff, "assuming guardianship is terminated," or "the restoration of the plaintiff's person has been done," is supposed to distinctly report the amount of money, and personal property expended on the improvement. The plaintiff is requesting the full 100% of the amount of money and/or personal property to be expended in the improvement. State law also implies physical evidence of the improvement, meaning it can be seen distinctly, possibly meaning a photograph as the distinct report. "In order to see it the plaintiff will have to be restored full rights of person," the report being due to the probate court within 40 days after the improvement. Statutory law also states, "the removal of the disability, again "implying that disability can, and has to be physically removed, and is also stating the property being removed is coming off the wards body, it is not real estate or other property that is not located on the person.

133) The plaintiff is going based on the Constitution of the Commonwealth of Kentucky, because it's the only legal documented evidence, that was specific enough, that the plaintiff could find on the topic. It says in Kentucky, the General Assembly, shall not grant any Local or Special acts concerning any of the following subjects, or for any of the following purposes. "Namely, to affect the Estate of Cestui Que trust, descendants, infants or other persons under disabilities, or authorize any such persons to sell, lease, encumber, or dispose of their property." The plaintiff is pointing out that Cestui Que Trust, is a real term used in law, and as being quoted in a document like a state constitution, is a big deal in legal terms, as it can't, now be dismissed as a conspiracy or fantasy of some kind, not in this action or any other. The plaintiff, is also pointing out the fact again, that the disposing of property is equivalent to the removal of disability. Furthermore, Cestui Que Trusts, have descendants, meaning they have beneficiaries, as this quotes, "infants, or other persons under disabilities," implying the person(s) under disability, are the beneficiaries, and infants, as in disability. Meaning the removal of

disability is what has the potential to determine whether or not, legally, a male is considered a man, or an infant, and specifically, that is what they are referring to by disability. Therefore if a male is not removed from disability he is missing an important part of being a man in life. There's only one potential specific area of the male anatomy that has the potential to determine whether a male is considered a man or a child. This is the real property in question, as the trust is obviously designed to protect property, not to be abused by a trustee power, or duty, or by any bias, of some kind. The fact that, "no such person(s), that are under disability," would need a special act, to dispose of their property, means they can't dispose of their property freely, meaning they can't touch it, or see it, to dispose of it. As they would be relying on someone else, to dispose of that property. Meaning they may not, and probably don't even know about the disability. The General Assembly, in Kentucky, is also, quoted, "not to make special acts that declare any person "Of Age" or to relieve an infant of disability, or to enable him to do acts, allowed only to adults, not under disability;" this also suggests an infant relieving disability, meaning they are old enough to be relieved, and still being suggested as being an infant, validating the point of a male being declared a man around the age 18-25. Potentially enabling the plaintiff to do acts allowed only to adults not under disability," suggesting the relieving of disability is sexual in reference, and supports the description of the male anatomy, as being disabled or restricted. This implies the real personal property, and relief from disability, is the movement of beneficiaries male sex organs, and body parts. The movement, as in making it bigger, and also relating to the fact, of making an infant into an adult man, also suggests the same, along with acts that allow him to have sex, and the improvement, or relief from the restriction of movement, by being enabled. Implying the value is better than before, and implies the plaintiff will have full freedom of choice, and control, only charged to adults without an

encumbrance. The plaintiff is declaring himself of age. This is implying the declaring "of age" is the age of majority, 18 – 25 in most states. Meaning this was something due to get done no less than 14 years ago. It says the General Assembly, cannot make special or local Acts, however, there is no policy against a person or infant, declaring himself "of age," which is the case right now, as the plaintiff is declaring himself of age. Since the plaintiff has reached the age of 18 – 25, the defendants James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr or the Hamilton County Probate Division, Court of Common Pleas can't restrict the plaintiff from declaring himself, "of age" as legally, they should have no power, or control, over the plaintiff's person beyond those years, as the plaintiff is perfectly capable of taking care of himself. The requesting of the improvement of this property, this one specific form of real property, that's on the plaintiff's person, that can be sold, leased, encumbered, and disposed of, and is sexual in reference, and determines whether a male is legally, an adult or a child, but he can neither see, nor touch at the point in time, and what's existence is confirmed and also it's purpose, and what's position is legally supported in one of the state Constitutions of the United States of America, is the property that is in question in this claim and is the property on the plaintiff Joel M Blust's person that is being requested to the disposal of property, and improvement of real property and to execute instruments to transfer the title and/or deed "of this specific real property, with device or instrument associated with the male anatomy," into the name and full ownership of the plaintiff Joel M Blust.

134) In Ohio, the proposed standards of guardianship of the Supreme Court of Ohio, standard 4.4 states "When it is necessary to dispose of the ward's personal property, of nominal value." And "the opportunity to obtain possession of small items, particularly those of sentimental value." Implying the removal of disability, and the fact that it's personal property of

nominal value, implies the Improvement of real property, with the disposal of personal property, of the plaintiff's person. As this does tell you that the nominal property is what comes off, or is disposed of, and the improvement is additional, as the property of nominal value is being kept, by the family, as sentimental. Meaning the ward had it when he was a child or infant. It also says items, plural, implying more than one item is being kept by the family. Meaning more than one item is being removed, and subsequently improved. This also implies property being in relation to the wards body. As in something that is of the plaintiff's person, as being the property improvement, not real estate. It's clear the real property is property on the ward's body, and it's being removed and improved.

135) The fact the defendants haven't relieved the plaintiff of disabilities, is unfair power and restraint, and defeats the purpose of the trust, while also being contrary to public policy, because it conflicts with legal and social principles on ethics, hindering the plaintiffs personal autonomy, and his community integration. The ages of 18 – 25 can't be replaced, ages 18 – 39 is a devastating loss to a man, as the plaintiff has no children that he is aware of. Any terms withholding the real property should be invalidated, with the real property of the plaintiff distributed to him and possibly the freezing of the assets of the trust—JEHOVAH, to compel the defendants, to distribute the property to the rightful beneficial owner. A constructive trust should be established on behalf of a specific performance, for the real property belonging to the beneficiary, to avoid the real property from being mismanaged and fraudulently sold, leased, or having a lien put on the property. The constructive trust will ensure the real property goes to the rightful beneficiary, and is used to ensure unjust enrichment is not had, when there is no other solution. This would ensure no loss is taken in this specific real property, and that the rightful beneficial owner recovers the property with a clear title, free of liens, sale or lease.

## To redress an injury, and/or enforce a duty, and/or right owed;

136) On December 18, 2025, the plaintiff, went downtown Cincinnati, to go in person to Federal Home Loan Bank of Cincinnati, in 600 Atrium, attempting the relief of disability, by taking a certificate of trust, "with all the necessary information listed," in an attempt at administration of trust, and the presumed mandatory distribution of real property, that was supposed to be done as part of the irrevocable trust—JEHOVAH, upon turning the age 18.

137) The plaintiff was in communication with the parties to defendants on remote monitoring, supportive/substitute decision making devices, and/or augmented reality communication, and/or AI and related devices and services, as he always is, against his will. He was talking to Elliott Spence, Cincinnati, Ohio, with other parties communicating as well. With the impression of a large group of viewers, and/or followers, as usual that morning before he walked into the building. This is when Elliott Spence implied, "the guy there, at FHLB of Cincinnati, would have something to give him," and he referred to it as, "them." He said, "I was going to get them." The plaintiff understood him to be saying, "the plaintiff was going to receive his 'responsibilities,' basically being declared "of age," and the rights to which the plaintiff is under disability for. The plaintiff also remembers communicating with Elliott Spence that it could be a key, that there would be a key with a box the plaintiff needed to open. That it was past time for it. Presumably the defendants have a key to a safety deposit box that the courts opened in the plaintiff's name. The plaintiff was under the impression, this would allow him afterwards, to dispose of property, and/or enable the improvement of real property, and/or to, "do the things entrusted only to adults without an encumbrance," as it states in Kentucky law.

138) However, when the plaintiff took the elevator up to the second floor, he only saw one man sitting behind the glass, and it didn't look like a bank. The plaintiff remembers

thinking, "oh, this place is only for the trust, and its possible administration, or for the maintenance of," remembering the estimated value of the trust." When the plaintiff went in, however, it was far from professional. The guy kept giving an unconfused, confused look, and asked a few questions, a few times, saying, "and what's your name," and "what are you looking for." The plaintiff gave him the certificate of trust, which he had printed out for him to look at. The plaintiff, responded, "My name is Jehovah, and I'm the title holder in due course, of Cestui Que Trust—JEHOVAH," saying that "the plaintiff, was there to administer the trust, that it could possibly be a key, or a box, that he needed to open." The plaintiff told the man, "I should have a safety deposit box," and told him my name, with the information, "the courts may or may not have issued it."

139) The guy at the desk said "no," to everything, and after a while the guy called his boss to come talk to me. This guy's name was Charlie, and he ended up being James Greg Dooley Sr.'s old boss, there at FHLB. When Charlie got there, he looked at the certificate, and got my name, and purpose, and kept telling me, "there was nothing he could do for me, "here," and kept emphasizing the place, "here." Possibly emphasizing the place as being not the place of administration. However, it would and should be the place for administration in the state of Ohio, as the property is or should be located in the state of Ohio. Charlie, gave me his cell phone number, and also called James Greg Dooley Sr. In front of the plaintiff on the phone. The plaintiff explained why he was there the best he could, as by then everyone via electronic communication device and the AI and related devices, knew the plaintiff wasn't going to get anything done without any cooperation from the guys at the bank. By that time, they were messing with the plaintiff's thought process, and speech, real hard, so he couldn't think, or talk clearly.

140) After the plaintiff left he texted Charlie a few times, and Charlie stuck around over the electronic communication devices while the plaintiff walked around downtown looking for a lawyer or attorney to talk to about the breach of trust and fiduciary duties. Charlie, "made a joke," "that he was the person in possession of the property and/or instruments," and the plaintiff remembers Charlie saying "he couldn't give anything like that, to someone who looked like me." The plaintiff remembers thinking, "that he didn't look much better off."

141) The defendants violated the plaintiff's rights, by depriving, Joel M Blust, of his right to the freedom of association, of being secure in his person and personal property, of non economic substantive and economic substantive due process, of unjustifiable restraints on life, liberty and property, and the right to the notice and nature and cause of actions, violating the "best interests standard," and are in breach of fiduciary duties.

142) The defendants James Greg Dooley Sr. And Angela Dooley, Joseph Bedel Jr. And FHLBank of Cincinnati, owes rights to the plaintiff. Since December 18, 2025 when the plaintiff was downtown Cincinnati, at FHLBank of Cincinnati, and ever since August 20, 2004, everywhere the plaintiff goes, and in everything the plaintiff does, he is under the disability to dispose of real property and the disability to execute instruments. The defendants have been in breach of fiduciary duties, by not following through with the distribution of real property owned by the beneficial owner to the trust–JEHOVAH. The plaintiff demands redress for his injuries, in the form of the disposal of property and/or the improvement of 100% of the real and/or personal property, to the person of Joel M Blust, from the estate of the irrevocable trust—JEHOVAH. As well as enabling the execution of instruments. The plaintiff is also requesting the defendants in total compensate him for compensatory damages and punitive damages, in the form of monetary payment, and be held jointly and severally liable, for the unjustified restraint on personal

liberties. In an amount to be determined later, and any profits the defendants made off the self-dealing of the real property, or any videos made while in possession of the real property, as well as any further damages and/or relief the court sees fit, just and proper in this matter.

## CLAIM 8 : MONELL TYPE PROOF , BEING UNDER THE COLOR OF LAW; AND THE INABILITY TO PARTICIPATE IN MY OWN DEFENSE;

143) The widespread practice of granting guardianship without strict adherence to statutory, "clear and convincing evidence" standards constitutes a violation of substantive due process. Guardianship involves taking away an individual's liberty and property interests, which is a major constitutional concern. In this case involving abuse, neglect, and exploitation, the systemic lack of due process in hearings, notice and cause, and the failure of the courts to provide meaningful oversight, resulted in a silent trust, and in essence a silent guardianship, acting as a vehicle providing for the driving behind constitutional violations, by facilitating the concealment of personal and financial exploitation, isolation and exclusion. The well-established ordinance of a silent trust, preventing the accountability of everyone involved, is a systemic lack of due process, giving the violations, the platform, and path, it needed, to become the moving force behind the constitutional violations, by acting as a hidden mechanism which in turn structured, and facilitated, the deprivation, of Joel M Blust's, rights, and the conspiracy against the rights of Joel M Blust, in the irrevocable trust–JEHOVAH, and was carried out, under the color of law, without due process while the Hamilton County Probate Division, Court of Common Pleas should have been well aware of what was happening.

144) The defendants, James Greg Dooley Sr. And Angela Dooley, and Joseph Bedel Jr, used the silent trust to hide assets, and failed to provide for the plaintiffs' needs. It constitutes a violation of due process by depriving the plaintiff of his property, and dignity without oversight. The "silence," of the trust, enabled the defendants to operate, without oversight, turning a tool "designed" for asset protection, into a mechanism for seizing control, of the plaintiffs life and property, by taking advantage of its terms. The abusive guardian, used the personal power granted from a silent trust, to control the plaintiffs life, choosing where, and how he lived, restricting social interaction, and forcing medication and treatment while involuntarily committed, as part of civil commitment. They are severely restricting the plaintiff's liberty interests. The trust acts like the secret fuel that pays for this abuse, exploitation and isolation, and prevents intervention, from anyone lucky enough, to cross paths with it.. The silent trust is used to shield assets from scrutiny, and allows the defendants to exploit and isolate the ward, without immediate supervision, as the plaintiff is unable to hold the defendants accountable, for anything done, and "hopefully, until now," without intervention from anyone to help. Not only from the Hamilton County Probate Court, but from all parties to the defendants, and the online network, state actors, and medical and legal professionals. By the state waiving the trustee's duty to inform the plaintiff, it allowed the defendants to misappropriate assets and restrict the ward's autonomy, leaving the ward with no knowledge of his own good fortune, or true identity, and never gave him the opportunity to challenge the mismanagement, or the breach in obligations. These failures violate the 14th Amendment's due process rights, 1st Amendment freedom of speech and association, and 4th Amendment protections against illegal searches and seizures of being secure in your persons, homes, papers and personal property, among other things. Guardianship, by design, if the ward is not disabled or lame in any way, is inherently an unconstitutional

ordinance, flawed by the design that removes an individual's freedom's, and rights. With the policy of a silent trust, amplifying these abuses in ways that violate constitutional protections, such as the right to: accountability. When the defendants used a silent trust to hide assets, it directly conflicted with the fiduciary duty to act in the "best interest," of the plaintiff. Constituting, a violation of the trust, placed in them, by the court. When preventing accountability, which is the core feature of a silent trust, it provides a waiver of the duty to inform beneficiaries, making it nearly impossible for the plaintiff to challenge the trustee's actions, or the defendants and parties to the defendants collusion. With the plaintiff not notified, of the trust's existence, or its assets, he could not monitor the defendant's actions or identify the abuse, neglect, exploitation or isolation, due to and resulting in, the loss of self-awareness, and lack of foresight, that kept the plaintiff in the dark about his own personal and financial resources, and opened the door for social and economic exclusion.. The defendants restricted the plaintiffs ability to challenge the guardianship, or advocate for less restrictive alternatives, leading to customs of procedural shortcuts the state used to silence the plaintiff's voice. Done through a practice of holding hearings without the plaintiff being present or notified, "in which they did not hear from the plaintiff, and presumably, allowed the waiver of the hearing process," and by not ensuring the alleged incapacitated person is present to confirm incompetence. Which infringes on fundamental liberties and equality of law, and by not being represented by counsel, or having received proper notice and reports, and constitutes a failure of procedural due process. Courts often allow guardianships to be established without the presence of the ward, or with minimal evidence of incapacity. The plaintiff may have lost his right to marry, execute instruments, dispose of property and make sexual decisions, choose where he lives, control his finances, or communicate with friends or loved ones, without even having the proper due

process, and with no opportunity to contest the guardianship whatsoever. The defendants used these disabilities and violations, to shield the mismanagement, since the defendants are both the guardian, and also the trustee, of the silent trust, and apparently the beneficiary too. They can misuse, embezzle, or commingle assets, while somehow keeping this information hidden from the court, and the plaintiff, the only 2 entities that needed to know are coincidentally the only 2 that didn't know, however the plaintiff doesn't buy that. This was systemic neglect, through feeding off the policies and customs of the state. As the defendants, isolated the plaintiff, withholding information, and targeted his well-being, with AI and related devices, while influencing the masses, and any state actors that were tasked with a duty or obligation as public servants to the plaintiff. With the ghosting and gas lighting of the plaintiff, the defendants created hoax after hoax ,and a massive online and live streaming network, to manipulate and extort not only the plaintiff but the state actors as well, and only every other person to which the plaintiff came across, in his day to day life. Preventing, even possibly concerned individuals from reporting or preventing the abuse, or filing complaints, acting with strength in numbers and in profile. Giving most people the idea of being "allowed," to participate, or in "getting away with." while feeling as cool as they can as well. As this influenced most, even without having the bribe of the estate looming over their shoulder. The defendants used the secrecy of the policy of the silent trust, to isolate the ward from family, friends, acquaintances, and known people, limiting social interaction, awareness and decision-making capacity, ostracizing the plaintiff from reality and real life, and leading to the deprivations, and violations in law, and in the Constitution. This policy or custom, granted, or led to, the defendants, total control, over the plaintiffs personal life, treating the plaintiff, as if the defendants owned him, similar to a slave or personal property. Hiding and justifying the abuse, behind the authority of the law. By controlling the flow of

money, without oversight. The defendants created a situation of total dependency, eliminating the plaintiffs ability to seek help, or legal counsel. Many court systems are under-resourced, with just a few judges overseeing thousands of cases, making thorough review of the need for guardianship and annual reporting more difficult. However if this was the case the court should have never allowed for the plenary guardianship to be appointed, without proof of an acceptable intellectual disability with this knowledge of the system. Not to mention that it's not like the plaintiff was unknown to the Hamilton County Common Pleas Court, as many of the police, corrections officers and state funded staff, know the plaintiff more personally and are well aware of the plaintiff not having an acceptable intellectual disability that would call for a plenary guardianship. If the Hamilton County Court of Common Pleas didn't know about the abuse, neglect and exploitation and wasn't acting with deliberate indifference then they are the most incompetent court and Hamilton County is the most incompetent Municipality in the Nation. This allowed the defendants to avoid accountability for years, even when they failed to file required reports, so they could continue to mistreat the plaintiff and misappropriate and/or self-deal funds and property. If a guardian, acting as a fiduciary, sets up and knowingly uses a silent trust, to avoid disclosing financial, physical, and/or emotional abuse, that's a deliberate and willful, act of neglect, and was targeted for the ability to mislead, not only the supposed loved one but also the state actors, as in this case it was used to evade taxes and used intentionally to hurt an individual who didn't know any better. The state actors acted with deliberate indifference, as if they too didn't know any better. This resulted in a systemic failure, when the very system intended to protect the vulnerabilities of the plaintiff, enabled the abuse, exploitation, and loss of autonomy against the plaintiff. This systemic failure arose from a combination of inadequate court oversight, deliberate indifference, and lack of standardized

training. Without being trained, on the legal standards of abuse, neglect, and exploitation, as in failing to train, on the duty to report, the signs of fraud and isolation and failing in the role of what makes a state actor a public servant, and in what's expected of them in that role. This failure coupled with the aforementioned mistakes and issues, makes the court's process the cause of the violations. The inability of under-resourced courts to properly monitor assets, hidden in these trusts, or to scrutinize the guardian's actions, allowed for continuous, unchecked exploitation, and is the key factor in the deprivation against the rights, under the color of law and in the conspiracy against the rights, of Joel M Blust, and in the irrevocable trust—JEHOVAH.

145) Defendants and all parties to the defendants, online and live streaming networks, via AI and related devices, are acting, under the color of law, due to the rules, and guidelines on guardianship, specifically, the courts, "Ohio's Rules of Superintendence," for guardianship, These rules are policies that govern all Ohio state courts. Therefore all guardianships, and guardians, for that matter, are acting parallel, with Ohio state courts, under the same guidance and guidelines, as a judge or a magistrate is being governed by, with equal expectations.

146) 145) Under federal statutes, 42:1983 and 18:242, acting under the color of law, means using power possessed, under the virtue of state law, to deprive someone of Constitutional rights. 146) Guardians are often described as agents of the court, acting in place of a court, to manage a ward's person or estate, as the court is also considered the superior guardian, and the defendants are court appointed guardians.

147) The guardians are then acting, on behalf of the state, and under the color of law, the guardian, is sworn under oath and affirmation, and bound as a public servant. The oath and affirmation is the possession of court appointed power. Meaning the structure of the policy, failed

to establish or maintain accountability and structure, or was had under false presences and/or on contrary terms.

148) The terms of the protective arrangement are made by the potential guardian. One person can act in both roles, even though, a trust is considered a less restrictive alternative to guardianship, a person who is establishing a trust, as a protective arrangement, may draft the terms to the trust, and the terms of the trust may include the having of a plenary guardianship, With language like, "supportive or substitute decision making," "remote monitoring," and disabilities like, "failure to dispose of property," or to "the use of property," and "disability" to execute instruments," being drafted directly into the terms. Making for a, not so least restrictive alternative to guardianship. With the need for a plenary guardianship, or something so restrictive, being drafted into the terms, not even needed, and unnecessary. The terms, by statutory law in Ohio, are supposed to not be contrary to public policy, and able to achieve, and adhere to. If the plaintiff did not undergo an evaluation and disability was never confirmed, and there is no disability, then the terms are contrary. If the hearing was allowed to be waived by the drafter on behalf of the plaintiff, making for due process violations, the terms are contrary. If the alternatives to guardianship, like supportive or substitute decision making, and remote monitoring, are supposedly meant to be a good thing, WHY ARE THEY REFERRED TO AS RESTRICTIVE ALTERNATIVES, AS IN, THE LEAST RESTRICTIVE ALTERNATIVES? WHY NOT, "THE MOST BENEFICIAL ALTERNATIVE," OR "THE LEAST BENEFICIAL ALTERNATIVE," TO GUARDIANSHIP? GUARDIANSHIP, IS MEANT TO HELP, AS BEST AS, THE "LEAST RESTRICTIVE ALTERNATIVE,," CAN HELP TO MAKE A DISABLED PERSON WELL, OR BETTER, ITS INTENT AND PURPOSE, IS NOT TO MAKE A WELL PERSON DISABLED OR LAME, IN ANY WAY. This implies the opposite as the state is

acknowledging that restrictions could be had, and are not taking the steps needed to make sure people are not needlessly taken advantage of, or made to have disability unnecessarily. Why would anything need to be restrictive? The State is acknowledging the restrictions of the devices and services. This indicates the state as acting with deliberate indifference. Therefore, it's the state who would be at fault, when the crimes of the restrictions of rights and freedoms are had, because, it's the state who allowed the opportunity for the restrictions to be had, with the foreseeability of there being potential for unnecessary restrictions and the certain need for oversight going accounted for.

149) The state is only supposed to issue guardianship upon the plaintiffs inability to meet essential requirements for physical health, safety, or self-care or if the plaintiff is unable to receive and evaluate information or make or communicate decisions, with appropriate supportive services, technological assistance, or supported decision making or if the plaintiffs identified needs cannot be met by a protective arrangement instead of guardianship or other less restrictive alternative. Meaning the plaintiff doesn't meet the standard for guardianship and the least restrictive alternative hasn't even been considered. The most beneficial alternative to guardianship is the restoration of person without oversight needed and there is no situation or circumstances in which the Hamilton County Probate Division can legally withhold the plaintiff's person from him under any form of guardianship.

150) Ohio Revised Code, on guardianships, has laws on disabilities, having to be evaluated, and confirmed, by medical professionals, before guardianship is supposed to be appointed, giving obvious notice and disclosure to the potential ward. However, with protective arrangements, like trusts that may not even be the case, as it may also be a loop hole, in the well established practice of guardianship and other protective arrangements. Allowing guardians, to

draft the terms of plenary guardianship, and supportive or substitute decision making and remote monitoring into the terms of a trust, or with the same "least restrictive alternative," as a person having a disability may have, without the disability being confirmed, or evaluated, in any way. To a person, without any disability, the least restrictive alternative to guardianship, that may help with that one person's disability, is extremely disabling to the person without limitations. The fact the plaintiff can go through the court, jail and prison process as many times as he has without ever hearing or knowing, "the inability to fully participate in my own defense," is a real term, and it actually refers to the plaintiff's circumstances, not because he's dumb, retarded or inherently disabled, in any way, but it's s due to the electronic device, "assists" and substitute decision making abilities of the defendants, and parties to the defendants, as part of a guardianship and other protective arrangement, that the plaintiff is forced to be under, is mind blowing. As it implies the knowledge of the circumstances on the part of the state, and the Hamilton County Probate Division, Court of Common Pleas. The plaintiff doesn't understand how the courts can come to that conclusion any other way, and the phrase actually implies, the knowledge of the circumstances, on behalf of the courts. Leading the plaintiff to believe, the policy in place is not meant to protect people, who inherently have intellectual disabilities and mental illnesses. "The inability to fully participate in my own defense," suggests that the AI and related devices, remote monitoring, augmented reality and/or supportive/substitute decision making, and its capabilities, or the implications of its capabilities itself renders someone incompetent. It implies that, because the person isn't alone in his decision making, due to the disability rendered on behalf of the courts, they're incapable of full participation. If the court is acknowledging the technology renders the ward being subject to its capabilities incompetent due to a lack of the ability to cognitively function, or the lack of having his liberty, due to personal

autonomy shared with the guardian, and their ability to manipulate the wards abilities, then the court would literally be acknowledging the fact the guardian is not using the technologies, and its capabilities for the good purposes its use is intended, or acknowledging the potential for that to happen. Making that policy, or practice, potentially wanton and malicious in its intent, and possibly implies that rights being violated, have been assumed, or are known about, on behalf of the courts. It's another implication of deliberate indifference, on behalf of the Hamilton County Probate Division, Court of Common Pleas. Had, due to the Probate courts' foreseeable knowledge and understanding, of the situation, and its potential to be destructive, and/or its hidden agenda or lack of an agenda, in regards to the oversight of guardianship and other protective arrangement. The Hamilton County Probate Court, should be held joint and severally liable, in its individual and official capacity, for allowing the situation to exceed an acceptable level of dysfunction. If the shoe was on the other foot, it would be, being held liable for your actions, or much worse.

# "PRAYER FOR INSIGHT" AND "REQUEST FOR RELIEF"

Wherefore, the plaintiff is respectfully requesting the judgment rendered, from the United States District Court, Southern District of Ohio, Western Division At Cincinnati, against the defendants in total, unless otherwise stated, to be held joint and severally liable, unless otherwise stated, in the matter of this civil justice action, for the deprivation of Joel M Blust's rights, under the color of law, and the conspiracy against the rights of Joel M Blust, and in the estate of the irrevocable trust—JEHOVAH. Praying for the following relief, as it would be needed to make the plaintiff's person whole, and is necessary and justified, on account of the extreme loss and disadvantage, the plaintiff has had to endure, is currently facing, and will be faced with ongoing and in the future. The irreparable harm, and the insurmountable circumstances the plaintiff is faced with, on a daily basis, and by the minute, being under plenary guardianship is the absolute, worst case scenario and would be for anyone faced with these daunting circumstances. Especially so, for anyone who isn't built to be able to manage tough circumstances. I can't imagine someone else having to face the same circumstances I'm in. My heart goes out to them. If the defendants could physically make the plaintiff's person any worse, they would be doing so. However, they can't physically make for anymore restraints or restrictions, as those powers have been maxed out. The plaintiff is as bad

off, as the excessive user permissions of the hacked software, will allow. However, the defendants explore new options daily, in search of more destructive commands, and in trying to make the plaintiffs' life more desolate and miserable. It is imperative for the judge to recognize these facts. The plaintiff in this case, is in a dire situation, and has been faced with this outlook, under the color of law. Unfavorable as that is, it also means, the recourse and the remedy is within the courts power and jurisdiction. This is an unequivocal matter, and as of now, it is a federal matter. Please consider all requests, with this insight, and the mentality of reformation and change. As no one can afford to see or stand-by, or continue to allow, this flagrant and egregious usurpation of power, to continue to defy human and civil rights, and freedoms in liberty and justice for all. Wherefore, the plaintiff prays for judicial recourse and relief, that is in his favor, in the judgment and/or order:

I. For the services of this petition, as required by law, by the United States Marshal's, and/or by the clerk of courts, for the United States District Court, Southern District of Ohio, Western division, At Cincinnati, to the defendants, James Greg Dooley Sr., Angela Dooley, Hamilton County Probate Division, Court of Common Pleas, the irrevocable trust—JEHOVAH, FHLBank of Cincinnati, Joseph E Bedel Jr., Elliott Spence, Meredith Simpkins and Dr. Vanessa Doyle, MD, respectively, expeditiously and without fees charged to the plaintiff, and any further relief as the court sees fit, just and proper;

II. For the United States District Court, Southern District of Ohio, Western Division, to take Supplemental and/or Original jurisdiction, of all legal matters relating to this civil justice action, regarding the individual entity, Joel M. Blust, and the artificial entity, JOEL M. BLUST, and/or JEHOVAH BLUST, and/or Jehovah Blust, Sua Sponte; Acknowledging the state procedure of all recourse and relief to be had, is exhausted, inadequate or unavailable to the plaintiff, with the United States District Court, Southern District of Ohio, Western Division, having Supplemental jurisdiction and/or Original jurisdiction of all civil legal matters from the Hamilton County, Probate Division, Court of Common Pleas, and/or the Hamilton County Juvenile Division, Court of Common Pleas, giving jurisdiction of the Guardianship and other Protective Arrangement of JOEL M. BLUST, and in the irrevocable trust–JEHOVAH, in the same "case or controversy standard," and/or "common nucleus standard" with this federal civil justice action for the deprivation of rights, and for the conspiracy against the rights, of Joel M Blust, and any further relief as the court sees fit , just and proper;

III. For the order of a Specific performance, and/or Declaratory Judgment, in the Reservation of Rights, without prejudice and under protest, all lawful reservations, to the plaintiff, Joel M. Blust, under (U.C.C. 1-308), Sua Sponte; Noticing, the plaintiff, does not waive any rights, and is reserving all applicable rights, in the Bill of Rights, and Article III Judicial Powers, under common law and performing and declaring, the specific rights to enforcing the unlimited right to contracting, and the plaintiffs right to compromise an unconscionable contract, rights to estoppel, res judicata, issue preclusion, all terms Constitutional dealing with contracts and terms Judicially, habeas corpus, in personam, probable cause, upholding the separation of powers, non-assumpsit, penumbra doctrine, criminal intent and confession and avoidance, in effect setting aside the plaintiffs defacto national status under the 14th Amendment, and the

United States, and any unconscionable contract that was agreed to on the plaintiff's behalf without his knowledge and consent, and in turn putting the plaintiffs person under the laws, freedoms and rights of the Bill of Rights, and the Constitution, to the United States of America, giving a private individual legal status to Joel M Blust, as an American citizen and non resident alien, to the United States, and in the recognition of non resident alien to the United States, effectively creating a path for restoring the plaintiff's rights and having a private citizen status, without prejudice and under protest, as it relates to all matters in the United States District Court, Southern District of Ohio, Western Division, At Cincinnati, and in all courts, within the territories and jurisdiction, of the United States of America, and any further relief as the court sees fit, just and proper;

IV. For the court to appoint to the plaintiff, honest and informed legal counsel to represent him in this matter, due to financial inability to retain private counsel, to ensure a fair and just proceeding." And any further relief the court may see fit, just and proper;

V. For the court to order the terms of a silent trust, and the waiving of beneficiary notification, that is placing the notification onto a surrogate beneficiary, and the certain terms of the Grantor, James Greg Dooley Sr and the beneficiary notification upon his death, and the Trustee, Angela Dooley and beneficiary notification upon her death, as void and invalidated terms, to the irrevocable trust—JEHOVAH, and any fraudulent terms that have been amended upon being in breach of contract, Trust and/or Fiduciary duties. Effectively ordering the accountability of the Grantor and/or Trustee, making them obligated to the notification of trust and trust instrument, to the beneficial owner, Joel M Blust; and any further relief, in the irrevocable trust–JEHOVAH, the court deems fit, just and proper;

VI. For the court to order and/or to take Judicial Notice, of the adjudicative facts, of all the facts listed, that are both known to the judge and/or jurisdiction, of the United State District Court, Southern District of Ohio, Western Division, At Cincinnati, and/or to the Hamilton County Probate Division, Court of Common Pleas, and/or Hamilton County Juvenile Division, Court of Common Pleas, and the facts which are listed and/or named in the Judicial Notice petition accompanied with this complaint and civil justice action in the Certificate of Trust regarding the irrevocable trust—JEHOVAH, and/or any other documents accompanied with this complaint and civil justice action, as known facts, and/or are as they are described to be. The taking of Judicial Notice of the facts is being requested with the necessary information provided, and is mandatory according to Rule 201 in this case, and is respectfully requested for the court to Judicially Notice all facts. For the relief of a Declaratory Judgement of the rights of the plaintiff, Joel M Blust, in the irrevocable trust—JEHOVAH; AND to notice of the trust—JEHOVAH, sua sponte,; and any further relief as the court sees fit, just and proper;

VII. Requesting the court order and demand, the defendants, James Greg Dooley Sr., Angela Dooley, Hamilton County, Probate Division, Court of Common Pleas; FHLBank of Cincinnati, Joseph E Bedel Jr, Elliott Spence, Meredith Simpkins and Dr. Vanessa Doyle, MD, file an answer to this complain, to the deprivation of rights and conspiracy against the rights of Joel M Blust, within 30 days of the filing of this complaint, due to the extreme pressing circumstances the plaintiff is in; and any further relief as the court sees fit, just and proper;

VIII. For an Injunction order in the case, with the court notifying and making a complaint into this Civil Rights and Constitutional Rights matter, to the United States Attorney's Office, and/or the Special Litigation Section, and/or Civil Rights Division of the Department of Justice, with all the facts in the matter, as listed in this complaint, and notifying, the Assistant

Attorney General, for the Civil Rights Division. Notifying those agencies of a potential pattern, or practice of discrimination, and systemic failure, and of 1st and 14th Amendment violations under the color of law, and the need for an independent investigation into the facts, with a need to establish justice in the matter; and any further relief as the court sees fit, just and proper;

IX. For the court to issue a temporary Injunction, Emergency Protection Order, in the form of Civil Stalking Protection Order and/or Temporary Injunction, directed towards the defendants in total, "which can also be done orally," (if necessary) protecting the plaintiff, Joel M. Blust, from the defendants in total, and specifically James Greg Dooley Sr. And Angela Dooley, of 706 Lakewood Dr. Taylor Mill, Kentucky 41015, and Joseph E. Bedel Jr. 554 Pedretti Ave. Cincinnati, Ohio 45238, and Elliott Spence, Cincinnati, Ohio, at this time the plaintiff would have to request the court do not appoint an emergency or interim guardian ad litem,, for 30 days max or for any days max, as the defendants will still have access to the methods and services they use to abuse, harass, torture and torment the plaintiff on a daily basis, and this guardianship is not being used for any good reasons in the best interests of the plaintiff, therefore in accordance with Tribal Emergency Orders, (25 CFR § 11.1204), and (R.C. Chapter 2111), and/or by holding an Ex Parte hearing; The defendants, shall cease and desist, all forms of contact with, not harass, stalk, or harm, not interfere with the residence, not be within 500 feet, cell phone, digital phone, social media, electronic communication, or by devise or communication of any kind, shall cease the use of all assistive technology devices or services, all substitute/supportive decision making devices and services, shall not use any form of electronic surveillance, remote monitoring, or post the petitioner live, or otherwise on any social media platforms, or other platforms, and the defendants. Shall not encourage any other person to do any acts prohibited by this order, the guardianship and other protective arrangement duties, of James

Greg Dooley Sr. And Angela Dooley, and Joseph E Bedel Jr. As custodians, and care taker over the person of JOEL M . BLUST, shall cease, and the court will respectfully modify to the least restrictive alternative, and/or terminate guardianship and other protective arrangement, in the irrevocable trust—JEHOVAH, and restore the rights of Joel M. Blust, in regards to the least restrictive form; sua sponte, and/or and any further relief as the court sees fit, just and proper;

X. For the Judge accept this written request to order a Preliminary Injunction and Permanent Injunction order for the unsealing and formal disclosure of the case record, regarding the Guardianship and other Protective Arrangement of Joel M. Blust, and the irrevocable trust–JEHOVAH, in the Hamilton County Probate Division, Court of Common Pleas, and/or in the Hamilton County Juvenile Division, Court of Common Pleas, pursuant to Ohio Public Records Act, (R.C. 149.43) Guardian's Docket, (R.C. 2101.12) and (Superintendence Rule 55.2) that the Access to confidential Probate records and proceedings be made and disclosed to Joel M. Blust, for the unsealing and or disclosure of the case records of JOEL M. BLUST, AND/OR for an order of the notification and disclosure of any information and unsealing of any case records and files in Guardianship and other Protective Arrangement, of JOEL M BLUST, and the irrevocable trust—JEHOVAH, be made to Joel M Blust, sua sponte; and for Declaratory Judgement for the rights of Joel M Blust to the unsealing, and/or disclosure of all case records and files, in the Hamilton County, Court of Common Pleas, of case records and files of JOEL M. BLUST, in Guardianship and Other Protective Arrangement, and in the irrevocable trust—JEHOVAH, and any further relief as the court sees fit, just and proper;

XI. For a temporary and/or permanent injunction order for an independent and/or court appointed expert evaluation of the plaintiffs mental condition and competency status, (if necessary) for termination of guardianship and other protective arrangement, and in the

irrevocable trust—JEHOVAH, sua sponte, and the restoration of person to full legal capacity, sua sponte or by temporary Injunction order, and for Declaratory Judgement in the matter of the finding of Joel M Blust and his right to another appointed expert evaluation, at the public's expense (if necessary) for the termination, or modification of guardianship and other protective arrangement; and any further relief as the court sees fit, just and proper;

XII. For a temporary Injunction order and permanent Injunction order of the restoration of person, and the gaining of personal autonomy, of Joel M. Blust, and/or to the least restrictive alternative means possible, in regards to, Guardianship and other protective arrangement, and in the terms, of the irrevocable trust—JEHOVAH, in Hamilton County Probate Division, Court of Common Pleas and/or Hamilton County Juvenile Division, Court of Common Pleas, sua sponte and/or upon Temporary and Permanent Injunction order; A Temporary order is necessary for fundamental fairness, and the equality of law in this case, as the administration of justice, can not be had, due to the extreme circumstances and situations involved with the predicaments of the guardianship of person, and the guardian/trustee/next-of-kin, being defendants in the matter, as it is already, a heavy bias and burden; an emergency guardian and/or guardian ad litem, may not be sufficient enough, to stop the violations in rights, as Joseph Bedel Jr. And Elliott Spence, have already made it clear that, a guardian ad litem will not stop them from being able to get done, exactly what they're getting done now. The only solution is to restore the rights of person, to Joel M Blust, sua sponte, and/or any further relief as the court sees fit, just and proper;

XIII. For the court to order a temporary injunction, in a hearing to Modify/Terminate Guardianship and other Protective Arrangement, of JOEL M. BLUST, pursuant to (R.C. 2111.49) "a hearing shall be held in accordance with section 2111.02 of the Revised Code to

evaluate the continued necessity of the guardianship;" (If necessary) and/or to terminate the guardianship of person and other protective arrangement, in the irrevocable trust—JEHOVAH, AND for a Declaratory Judgement as relief, in the plaintiffs rights of having the terms of the guardianship modified into non-silent terms, with the plaintiff's rights to the least restrictive alternative clarified, or no restrictive alternative to guardianship, and the right to have the necessity for guardianship reviewed and for the termination of guardianship to be considered by the Hamilton County Probate Division, Court Common Pleas; Equitable relief for an temporary and permanent injunction order, of the compelling of a full guardian's plan, accounting and inventory of trust, and full and any amended trust instrument of the irrevocable trust—JEHOVAH, done by the Grantor/Settlor, and/or Trustees, provided to the plaintiff, Joel M Blust, sua sponte or within the first 45 days of the proceedings as this would be a part of the plaintiffs discovery process and would be requested and for Declaratory Judgement for the right on behalf of the plaintiff, to the full and any amended trust instruments, guardian's plan, full account and full inventory of the irrevocable trust—JEHOVAH, and any further relief as the court sees fit , just and proper;

XIV. For an order of all the annual reports, and documented complaints, and improvements, of or to Joel M Blust, and in the irrevocable trust—JEHOVAH, with-in the past 5 years made by the Grantor/Trustee/Settlor and/or reported to the Hamilton County, Probate Division, Court of Common Pleas, issued to Joel M Blust, sua sponte and/or within 45 days after filing this complaint and/or as part of a temporary injunction order with-in the proceedings of this case, as this would be part of any discovery in this case and would help the plaintiffs case tremendously, and for Declaratory Judgement in relief in the plaintiff's rights to being informed of all annual reports and documented complaints and improvements of Joel M Blust in

Guardianship and other Protective Arrangement, in the irrevocable trust—JEHOVAH, and any further relief the court sees fit, just and proper;

XV. For a temporary and/or permanent Injunction order suspending and/or removing Appointment of fiduciary duties, of the Grantor/trustee/next of kin, of James Greg Dooley Sr. And Angela Dooley and Joseph E Bedel Jr and FHLBank of Cincinnati as Settlor/Administrator/co-trustee for breach of fiduciary duties, and the Constitutional violations in this matter, appointing interim successor actors to fulfill any fiduciary roles to the beneficial owner Joel M Blust, that may be needed, in the irrevocable trust–JEHOVAH, to prevent any further irreparable harm, misappropriation, Commingling, self-dealing or any other fraudulent transactions from taking place, and any further relief as the court sees fit, just and proper;

XVI. For a temporary injunction order for freezing of the assets to the Grantor, Trustee, Next-of-kin and Settlor, Administrator, Beneficiary Surrogate, of the irrevocable trust—JEHOVAH, James Greg Dooley Sr, Angela Dooley, Joseph Bedel Jr, and FHLBank of Cincinnati, and Karen Blust and any other parties who may jeopardize the integrity of the trust—JEHOVAH, pending proceedings as equitable relief, to prevent irreparable harm, and assist in the compelling of the defendants in total to comply with any orders and/or judgments and any further relief, as the court sees fit, just and proper;

XVII. For the court to order a temporary and permanent Injunction order and/or Specific performance order for the cease and desist relief order, to the natural state of person, sua sponte; for the discontinued use of intangible devices on, around or attached to the plaintiffs person, all AI and related devices and services, supportive/substitute decision making devices and services, remote monitoring, augmented reality devices, deep brain stimulation, EEG cloning or heterodyning, 3D wave imaging, holograms, hololens and related devices, haptic devices and

all related electronic devices and services being used in conjunction with guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, and the removal of all devices making the person of Joel M Blust unnatural, giving the restoration of rights, sua sponte or upon injunction order, restored personal autonomy, and cognitive abilities, restoring the legal and civil rights of Joel M Blust, and/or through the termination or modification of guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, in Hamilton County Probate Division, Court of Common Pleas, in regards to Joel M Blust's person and personal property, to prevent further harm and prevent irreparable damage, and to promote equality and fundamental fairness in this case and the proceedings, as that can not possibly be had with any of the devices in use or not removed from the plaintiffs person or the plaintiffs personal property, for the integrity and as an obligation of the court in the promotion of justice, as the devices are not needed in functioning or in assisting with functioning of person and are also of no good use in this case as they will only be used to steal defense strategies and torment and torture the plaintiff to the point of creating an unfair advantage towards the defendants, AND for the removal of all intangible devices related with the disposal of any property, specifically but not limited to any device restricting of movement, specifically of the knees, any device associated with the butt or rear end of the plaintiffs person, any and all devices related to the restrictions of the genitals and scrotum, any devices related to the feet in pain and restrictions of movement, any devices related to the mid-section and the body fat of the plaintiff's person, any devices related to the restrictions of the plaintiffs height, or the restrictions of the hands, to be removed from the plaintiffs person and/or improved upon the plaintiffs person, any and all devices used in restricting and/or altering the moods, speech, thoughts, actions, memory emotions, brain stimulation, cloning, and optical altering or restricting, etc. Be removed from the plaintiffs person, any device or instrument used

to restrict or alter the heart and/or blood flow be removed, sua sponte and/or as part of a temporary and permanent Injunction order as part of equitable relief that money will not satisfy, and as these devices or instruments serve no good purpose and will be used as unfair advantage in court and during proceedings, as the plaintiff can not go through another day of these unjustifiable restraints on personal life, liberty and personal property and for the Declaratory Judgment in relief describing the rights violated by the defendants in total stating exactly what is or was being used and how they were using the devices and services against the person of the plaintiff, and any further relief as the court sees fit, just and proper.

XVIII. For the court order an injunction, in case, no. 2025001178, in the Hamilton County, Probate Division, Court of Common Pleas, For the cease and desist temporary and permanent injunction order of all unnecessary psychotropic medications, Depakote/Depakene and Risperdal Consta injection, Diagnostic testing, and other treatment, pursuant to (R.C. 2945.401)(J)(1) and for an order and/or for Declaratory Judgement for the rights to Joel M Blust regarding the misdiagnosis of bipolar disorder and/or the misdiagnosis of forced medications and treatment and for the final termination of a continuing commitment, in the involuntary commitment, subject to court order of JOEL M. BLUST pursuant to R.C. 5122.15, rendering the release procedure, of 5122.15(H) exhausted, inadequate or unavailable, and any further relief as the court sees fit, just and proper;

XIX. For the court to order a lis pendens notice of a pending lawsuit or a restraining order to prevent the sale of the real property in question before a final forfeiture or transfer. The real property in question is the property associated with the disposal of real property and/or the execution of instruments and/or the improvement of real property upon the person of the beneficiary Joel M Blust associated with the restrictions of movement of body parts of the person

specifically but not limited to the male anatomy and/or a device or instrument that improves the male anatomy and/or disposal of device or instrument associated with the restrictions of the optical integrity of the male anatomy and/or of the person of the beneficiary Joel M Blust. Warning potential buyers or lenders that the property is subject to legal action. Protecting the plaintiff's claim by ensuring any subsequent owners are bound by the court's final judgment, effectively making the real property with all appurtenances regarded as part of the whole property transferred as well with a clean title, and free of burden, liens, lease, and unable to sell or mortgage, And any further relief the court sees fit, just and proper.

XX. For the court to order an equitable remedy of a constructive trust order, and specific performance imposed to correct or prevent the unjust enrichment and/or any fraudulent actions, preventing anyone who wrongfully acquired the real property from keeping the real property, that may have taken place with the real property of Joel M Blust, specifically, the property implicated in the improved use of the male anatomy, and/or used to improve the use of male anatomy of the person, of the beneficiary, and/or the property associated with the disposal of the property and/or instrument in the restraint of the movement of the male anatomy on the person of Joel M Blust, and/or any real property that can be disposed of and/or improved that may or may not be restricting the movement of person of Joel M Blust and/or restricting or limiting the optical integrity of the person of Joel M Blust, and also an order forcing the transfer of the deed(s) of the real property to be transferred with all appurtenances regarded as part of the whole property transferred as well to the rightful beneficial owner of the real property, with a clear title, free from burden, liens, lease or sale, regardless of the holder of the property at the time of judgement or order, and for an order for the GSA, Marshall's, DOJ, FBI or DHS to sequester and/or seize the real property on behalf of the courts constructive trust, from the

fraudulent holder of the property if a conflict of interest exists, to be transferred to the rightful beneficial owner of the real property Joel M Blust, to prevent unjustifiable enrichment or any further unjustifiable enrichment in the case of the real property in question, as there may not be any other viable remedy in the recovery of the plaintiff's real property in question, and this constructive trust should be mandated if it is the last and only viable adequate remedy in the case of the real property of Joel M Blust and in the irrevocable trust—JEHOVAH, and any further relief regarding this specific real property and/or constructive trust, that the court sees fit, just and proper;

XXI. For the equitable relief, and requesting specific performance and/or an injunction order, on behalf of the beneficiary's rights, to the irrevocable trust—JEHOVAH, to redress an injury sustained by, or to enforce a duty owed by the trust, as provided in the governing trust instrument, redressing a futile request of the plaintiff's, directed at the trustee and/or co-trustee and/or administrator of the irrevocable trust—JEHOVAH, on December 18, 2025, a request, and attempt was made by plaintiff, Joel M. Blust, to redress an injury or enforce a duty owed, while at FHLBank of Cincinnati, a (federal entity), (and Settlor) the plaintiff attempted at distribution of real property belonging to the beneficial owner of the irrevocable trust—JEHOVAH, Joel M Blust, in a safety deposit box, that was futile effort at administration and/or distribution of real property, real property that is currently in breach, while still being currently under disability to the plaintiff, Joel M. Blust, in an effort at improving the real property of Joel M Blust's person. The irrevocable trust—Jehovah, owes an irrevocable, fiduciary duty to the plaintiff, being the beneficial owner of the real property, as redress of this injury, is demanded. The real property associated with the disposal of a device or an instrument associated with improvement and/or improved functions of the male anatomy on the person of Joel M Blust, and/or the ability to

dispose of property of the male anatomy and/or restricts the movement of the male anatomy on the person of Joel M Blust, possibly disposal of a device or instrument that affects the integrity of optics and/or augments the reality of the plaintiff's person and the integrity of the male anatomy, is the real property(s) in question; For a temporary and permanent injunction order and/or Specific performance order and/or Declaratory Judgement relief order for the failure to transfer real property upon turning the age 18 of the plaintiff at the bequest of the acknowledged fathers Will by his demise in the form of the relief of the disability and/or to dispose of property, and to improve the real property, of the person of Joel M Blust, and to execute instruments, and to transfer title and/or deed of real property with all appurtenances and regarded as the whole property transferred as well, with a clean title, free of burden, liens, lease and sale of this real property to the distributee Joel M Blust, in the Hamilton County, Probate Division, Court of Common Pleas, in the irrevocable trust—JEHOVAH; and any further relief the court sees fit, just and proper;

XXII. For the court to order a specific performance and/or a temporary and permanent injunction order and/or Declaratory Judgement for the equitable relief of disability, the disposing of property and/or for the right to execute instruments and for the Improvement of real property of the person of JOEL M BLUST and/or Joel M Blust, pursuant to (R.C. 2111.33), which states, "If the property is so situated that, to the best interests of the ward's estate, it can be advantageously improved in connection with the improvement of property adjacent to it, the petition shall show this and have a prayer to so improve the property." And (R.C. Chapter 2111.35), which states, "if the prayer of the petition is granted, the probate court shall fix the amount of money and personal property that may be used in making the improvement." The plaintiff is requesting the full amount of money and personal property available to be improved.

The court is being requested to authorize, to the uniting with the owners of adjacent property, upon equitable terms and conditions, that the court approves, for the improvement of the premises, of the person of Joel M Blust, and for the proper management and repair, of the property when so improved. May the United States District Court Southern District of Ohio, Western division At Cincinnati, give specific performance and/or Declaratory judgment to the use and fix of 100% of the real property to Joel M Blust, specifically any and all improvements that can be made to the male anatomy and/or devices and/or instruments used in the improvement of the male anatomy, and or dispose of any instrument that is restrictive to the movement of the male anatomy, the improvement should and needs to be made, let the court upon equitable terms and conditions, approve for the improvement of the male premises of the person, and the advantageous improvement of the property, in connection with the property adjacent to the property, to be improved, and let the court see, and grant, this as a prayer to so improve these properties, of the person of Joel M Blust; and any further relief as the court sees fit, just and proper;

XXIII. For monetary damages in or for a permanent Injunction order for the rights to and distributions of (50%) Fifty percent of the total gross value of the estate to the irrevocable trust—JEHOVAH, as a right to the beneficial owner compelling and imposing an order on the Grantor/Trustee/Administrator/Settlor to distribute assets of the irrevocable trust—JEHOVAH, to be distributed and paid to Joel M Blust, and compelling a full accounting and full Inventory of trust from the Grantor/Trustee James Greg Dooley Sr and Angela Dooley to the beneficiary Joel M Blust in the irrevocable trust—JEHOVAH, and any further relief the court sees fit, just and proper in the distributions of the estate to the irrevocable trust—JEHOVAH.

XXIV. For monetary damages in or for a permanent Injunction order for the rights to and distributions of (75%) Seventy Five percent of the total gross value of the estate to the irrevocable trust—JEHOVAH, as a right to the beneficial owner compelling and imposing an order on the Grantor/Trustee/Administrator/Settlor to distribute assets of the irrevocable trust—JEHOVAH, to be distributed and paid to Joel M Blust, and compelling a full accounting and full inventory of trust from the Grantor/Trustee James Greg Dooley Sr and Angela Dooley to the beneficiary Joel M Blust in the irrevocable trust—JEHOVAH, and any further relief the court sees fit, just and proper in the distributions of the estate to the irrevocable trust—JEHOVAH.

XXV. For monetary damages in or for a permanent injunction order for the rights to, and the distribution of, (100%) One Hundred percent, of the total gross value, of the estate, of the Irrevocable trust—JEHOVAH, as beneficial owner; and Instructing the Grantor/trustee/Settlor/Administrator to distribute assets. Of the irrevocable trust–JEHOVAH, to Joel M Blust, to be distributed and paid to Joel M Blust, and compelling a full accounting and full inventory of trust, From Grantor/trustee James Greg Dooley Sr. And Angela Dooley, to Joel M Blust in the irrevocable trust—JEHOVAH; and any further relief as the court sees fit, just and proper, in the administration of the estate to the irrevocable trust—JEHOVAH;

XXVI. For an order of actual, economic, consequential and/or compensatory damages in monetary form, ordering the defendants in total to pay $150,000. One hundred fifty thousand, plus costs, paid in United States federal reserve notes; for the damages in the lost wages, of Joel M Blust, from July, 2022, – March, 2026,, and for the lost, and back pay, of Supplemental Security Income, from November 1, 2024 – December 31, 2025; and for the 2007 Chevrolet vehicle impounded by the Warren County Sheriff's Department, and for Collaboration with the Kenton County Sheriff's Department in entrapment pain and suffering and unjust delay, paid in

monetary value, in federal reserve notes, and/or any further relief as the court sees fit, just and proper;

XXVII. For the court to order the payment of economic, non-economic and consequential and Punitive damages, from the defendants in total, made to the plaintiff Joel M Blust, for the maximum amount allowable by law, a sum to be determined at a later day, paid in monetary form, federal reserve notes, for the pain and suffering, abuse, and neglect, negligence, medical and legal malpractice, malfeasance, misfeasance, nonfeasance, and/or any further relief and as the court sees fit, just and proper;

XXVIII. For the court to order relief of the monetary payment for damages in economic, non-economic, punitive and consequential damages for the unjustified restraint on liberty of Joel M Blust, while the defendants James Greg Dooley Sr and Angela Dooley were in breach of fiduciary duties, trust and/or contract from August 20, 2004 and no later than August 20, 2011 in the maximum amount allowable by law per year for the cost of life every year in breach, and the unjustifiable restraint on liberty paid by the defendants in total to Joel M Blust, paid in federal reserve notes and any further relief as the court sees fit, just and proper;

XXIX. For an order in monetary damages in economic, non-economic and punitive relief for the wanton and malicious violations of the Americans with Disabilities Act (ADA) paid by the defendants in total in the maximum amount allowable by law and an amount to be determined at a later date paid to Joel M Blust, and any further relief as the court sees fit, just and proper;

XXX. For the court to order monetary relief in economic, non-economic, and punitive damages (x3) in the case, and mandatory restitution, for the proper and just punishment for the intentional, wanton and malicious acts committed by the defendants in total, for the deprivation

of Joel M Blust rights, and deprivation of rights under the color of law, and for the conspiracy against the rights, of Joel M Blust; paid by the defendants in total ordering the defendants in total to pay the maximum amount allowable by law, a sum to be determined on a later date, paid in United States federal reserve notes, paid to Joel M Blust, ( x 3 ) the value in punitive damages, and what the court finds fit, just, proper, in monetary value,

XXXI. For the court to order monetary damages by per-diem and/or multiplier method for calculating damages, in economic damages and non-economic damages, and in consequential and punitive damages in relief from emotional, p.t.s.d, embarrassment, humiliation, defamation, libel, slander, false light, actions and inactions, loss of enjoyment of life, omissions and for economic and social exclusion, damages to be paid to the plaintiff Joel M Blust, for the maximum amount allowable by law and/or per diem method of and a total to be determined at a later date as provided by state and federal law and any further relief regarding the damages caused by the defendants in total as the court may see fit, just and proper

XXXII. For the judgment or order of monetary payment, of mandatory restitution, statutory, economic, non-economic and punitive damages, and any and all profits made, by the defendants in total, from the online, social media and live streaming networks and any audio/video/visual content, of any and all involuntary servitude and/or forced labor, on the plaintiff Joel M Blust's behalf, while exploiting guardianship and other protective arrangement, and the irrevocable trust—JEHOVAH, mandatory restitution and all profits made by the defendants in total pursuant to 18:1593, paid from the defendants in total, to be paid to the plaintiff, Joel M Blust, in full, or as required by federal and state law, in federal reserve notes; for an amount to be determined at a later date, and any further relief regarding the content produced

by the defendants in total and the profits made on the plaintiffs behalf, and as the court sees fit, just and proper;

XXXIII. For the court, to order a Preliminary and Permanent injunction order for the cease and Desist of any and all activity in violation of these chapters of the United States Code and for damages ordered in monetary payment, for the damages from the violations committed, in chapters 119 and 121, of title 18, of the United States Code, and 47:605, of the United States Code, for the knowing and intentional state of mind, willful and malicious violations, and violations under the color of law, by the defendants in total, against the plaintiff, in mandatory restitution, statutory damages, actual damages and punitive damages, and pursuant to 18:2520; and 2707; all profits made as the result of these violations and in the maximum amount allowable per violation, an amount to be determined at a later date, in accordance with all federal law, and for any further relief regarding this issue and as the court deems fit, just, and proper;

XXXIV. For an order for the defendants in total to pay court fees and reasonable attorneys fees and costs, and any further relief the court deems fit, just and proper;

XXXV. For an order, of equitable relief, in pre-judgement and post-judgement interest, in all damages rendered in relief, as a way to prevent or punish unnecessary delay, and any further relief regarding this issue and any further relief as the court sees fit, just and proper;

XXXVI. For an alternative writ of Mandamus, for the neglect of a duty, (Mandatory) or to correct a mistake, (Prohibit) of the Hamilton County, Probate Division, Court of Common Pleas; and/or Hamilton County Juvenile Division, Court of Common Pleas, and/or in the issuance of any alternative writ, the United States District Court Southern District of Ohio, Western Division, At Cincinnati, decides to issue or order regarding the unconstitutionality of the guardianship and other protective arrangement and the irrevocable trust—JEHOVAH, to enforce

compliance, issue emergency relief and prevent irreparable harm due to flagrant conditions; and any further relief as the court may see fit, just and proper, and in accordance with all federal laws;

XXXVII. All requested relief granted, in whole or in part, and at this time, the plaintiff humbly asks the court, for the issuance of any relief the court may see fit, just and proper.

*"I verify, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. So help me God. Executed on this 31st day, of March, 2026, In Hamilton County, Ohio;*

/s/ *Joel M Blust*

Joel M Blust
(513) 551-7964.
1116 Gilsey Ave.
Cincinnati, Ohio 45205
joelblust7777@gmail.com

Exhibit A

## PROBATE COURT OF HAMILTON COUNTY, OHIO
## RALPH WINKLER, JUDGE

**IN THE MATTER OF:** JOEL BLUST (INC STD TRI),

**Alleged to be Mentally Ill**

**CASE NO. MI** 2025001178

# NOTICE OF HEARING
## (FORCED MEDICATION OR OTHER FORCED TREATMENT)

To: ,DISABILITY RIGHTS OHIO,200 CIVIC CENTER DRIVE,SUITE 300,COLUMBUS,OH,43215-4234
JOEL BLUST,C/O SUMMIT BEHAVIORAL HEALTHCARE,1101 SUMMIT ROAD,CINCINNATI,OH,45237
DAN SPRAUL,ATTORNEY,CINCINNATI,OH,45202
ERIC EDWARDS, MD,SUMMIT BEHAVIORAL HEALTHCARE,1101 SUMMIT ROAD,CINCINNATI,OH,45237

---

A Motion has been filed with this Court requesting Court Ordered medication or other forced treatment under ~~Ohio Revised Code Section 5122.271~~. The hearing on said motion set forth in the attached motion is set for hearing before said court at the: **Summit Behavioral Health Care, Main Administration Building, Building #10, 1101 Summit Rd., Cincinnati, Ohio 45237**

on the 24th day of September, 2025 at 9:00 AM.

Witness my signature and the seal of said Court, this 22nd day of September, 2025.

(SEAL)

RALH WINKLER, JUDGE

By: [signature]
Deputy Clerk

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the attached notice, post paid, directed to all persons listed above including Ohio Legal Rights Service, Eight East Long Street, Fifth Floor, Columbus, Ohio 43266.

In testimony Whereof, I have hereunto set my hand and affixed the seal of said Court at Cincinnati, Ohio, this 22nd day of September, 2025.

RALH WINKLER, JUDGE

By: [signature]
Deputy Clerk



1

PROBATE COURT OF HAMILTON COUNTY, OHIO

IN THE MATTER OF JOEL BLUST

Alleged to be Mentally Ill

CASE NO. MI 2025001178

MOTION AND MEMORANDUM FOR COURT-ORDERED MEDICATION OR OTHER FORCED TREATMENT

Now comes Summit Behavioral Healthcare, designated as the treatment facility for the above-named Respondent who has been found or alleged to be a mentally ill person subject to hospitalization by court order. The movant hereby requests a court order permitting it to administer the following treatment without the Respondent's informed consent:

X Psychotropic medication (type and dose):

See attached

X Diagnostic testing:

See attached

Treatment for physical illness or injury:

nature of illness/injury

medication needed

other treatment needed

physician/facility to provide treatment

FILED
RALPH WINKLER, JUDGE & EX-OFFICIO CLERK
09/22/2025
HAMILTON COUNTY PROBATE COURT

 2

## MEMORANDUM

In support of this motion, the moving party states that the foregoing treatment is in the Respondent's medical interest, and that the Respondent has refused such treatment. The moving party has fulfilled the requirements of the Policy on Informed Consent of the Ohio Department of Mental Health and has concluded that the Respondent:

X (1) lacks the capacity to give informed consent for the above-required treatment and/or

X (2) is dangerous to self or others in the hospital environment in the absence of treatment.

The testimony of Eric Edwards, MD will be offered at the hearing in support of this motion. The physician is available on the following days of the week at 9 AM.

Tues. __X__ Wed. __X__ Thurs. __X__ Fri. __X__

I hereby verify that I have reviewed the foregoing medications and have found them appropriate in this case.

9/19/25 @ 1330

Eric Edwards, MD
Staff Psychiatrist

____ (Check if applicable): The Respondent is currently under an order of commitment previously issued by this Court. The moving party hereby requests that the next full hearing date be advanced and that this motion be set for hearing on the same date.

A. Norman Aubin Attorney for Applicant
Hamilton County Community Mental Health and Recovery Services Board

**DIRECTIONS TO COURT AND CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion has been given the Respondent's attorney by fax delivery this 22 day of Sept

FILED
RALPH WINKLER, JUDGE & EX-OFFICIO CLERK
09/22/2025
HAMILTON COUNTY PROBATE COURT

**ENTERED**
SEP 22 2025
**IMAGE NO.** 26

**PROBATE COURT OF HAMILTON COUNTY, OHIO**
**RALPH WINKLER, JUDGE**

IN THE MATTER OF: JOEL BLUST (INC STD TRI)

Alleged to be Mentally Ill

CASE NO. MI 2025001178

# ENTRY SETTING HEARING ON MOTION FOR FORCED MEDICATION

A Motion for Court-Ordered medication or other forced medical treatment having been filed in this Court, the hearing on said motion shall be set for the 24th day of September, 2025, at 9:00 AM, before TIMOTHY J DEARDORFF at Summit Behavioral Health Care, Building #10, Main Administration Building.

September 22, 2025
Date

Timothy J Deardorff
Visiting Judge/Magistrate

**ENTERED**
Civil Rule 53
Ralph Winkler

FILED
COURT OF COMMON PLEAS PROBATE DIV
RALPH WINKLER, JUDGE
2025 SEP 22 09:56 AM

# PETITION FOR MEDICATIONS BY COURT ORDER

**Medication list for Joel Blust**

Mood-stabilizing medication. The following medications are requested:

1. Depakote/Depakene 250 mg to 4000 mg by mouth daily
2. Lithium 150 mg to 2400 mg by mouth daily

Medication for agitation. The following medications are requested:

1. Ativan 0.5 mg to 10 mg by mouth or injection daily
2. Klonopin 0.5 mg to 10 mg by mouth daily
3. Benadryl 25 mg to 400 mg by mouth or injection daily
4. Vistaril 25 mg to 400mg by mouth daily

Antipsychotic medications. The following medications are requested:

1. Risperdal 0.5 mg to 16 mg by mouth daily
2. Risperdal Consta 12.5 mg to 75 mg by injection every two weeks
3. Abilify 1mg to 30mg by mouth daily
4. Abilify Maintena 300mg- 400mg by injection every three or four weeks
5. Haldol 5 mg to 200 mg by mouth or injection daily
6. Haldol D 50 mg to 400 mg by injection every three or four weeks
7. Invega 3 mg to 12 mg by mouth daily
8. Invega Sustenna 39 mg to 234 mg by injection every three or four weeks (and the initial loading dosage of 234 mg that would be given a week before the second injection)
9. Seroquel 25 to 1000mg by mouth daily
10. Zyprexa 2.5 mg to 30 mg by mouth or injection daily
11. Zyprexa Relprevv 150 mg to 405 mg by injection every two to four weeks
12. Thorazine 25 mg to 800 mg mg by mouth or injection daily
13. Geodon 20 mg to 240 mg by mouth daily or 10 mg to 40 mg by injection daily
14. Prolixin 1mg to 40mg by mouth or injection daily
15. Prolixin Decanoate 12.5 mg – 100mg by injection every two to four weeks
16. Cogentin 0.5 mg to 8 mg by mouth or injection daily (for side effects of antipsychotics)
17. Benadryl 25mg to 300mg by mouth or injection daily (for side effects of antipsychotics)

Medications for sleep. The following medication is requested:
1. Trazodone 25 mg to 300 mg by mouth nightly
2. Ambien 5 mg to 10 mg by mouth nightly

| | |
|---|---|
| Blust, Joel | 790384 |
| DOB: 08/20/1986 | DOA: 08/29/2025 |

Summit Behavioral Healthcare

FILED
RALPH WINKLER, JUDGE & EX-OFFICIO CLERK
09/22/2025
HAMILTON COUNTY PROBATE COURT



 5

# PETITION FOR MEDICATIONS BY COURT ORDER

3. Restoril 7.5 mg to 45 mg by mouth nightly
4. Doxepin 25mg to 300mg by mouth nightly

Antidepressant Medication: The following medications are requested:
1. Celexa 20mg to 60mg by mouth daily
2. Fluoxetine 20mg to 80mg by mouth daily
3. Bupropion 100mg to 450mg by mouth daily
4. Sertraline 25mg to 200mg by mouth daily
5. Remeron 15mg to 45mg by mouth nightly

I would also request lab work, EKG and vital signs necessary to monitor the patient's health.

MD 9/9/25 0930

FILED
RALPH WINKLER, JUDGE & EX-OFFICIO CLERK
09/22/2025
HAMILTON COUNTY PROBATE COURT

| | |
|---|---|
| Blust, Joel | 790384 |
| DOB: 08/20/1986 | DOA: 08/29/2025 |

Summit Behavioral Healthcare

# Blust, Joel M

MRN: 790384

**Admission**
8/29/2025 - 12/12/2025 (105 days)
Status: Discharged
Summit Behavioral Healthcare

Last attending: Vanessa Doyle, MD • with Treatment team
Principal problem: Bipolar affective disorder, current episode manic with psychotic symptoms (CMS/HCC) (HCC)

## Discharge Summary

Vanessa Doyle, MD (Physician) • Psychiatry

### Discharge Narrative Summary

| Date of Admission: 8/29/2025 | Date of Discharge: 12/12/2025 | Legal Status on Admission: 2945.38B - RESTORE TO COMPETENCY | Legal Status on Discharge: 5122.15 - 90 DAYS TO TWO YEARS |
|---|---|---|---|

**Chief complaint**
"I'm at Summit... I'm here on a court order for a competency evaluation".

**Reason for Admission**
RTC

**History of Present Illness**

Mr. Blust is a 38yoM who is being admitted for RTC from Hamilton County Municipal Court on a charge of Domestic Violence (M1). Pt has a past diagnosis of Schizophrenia and has had 1 prior admission to SBH for RTC in 2024. During his past SBH hospitalization, pt was delusional that he had an "implant" in his head. He was very irritable and hypervigilant, with very poor insight into his symptoms of mental illness. He remained IST at the end of his restoration period. During that hospitalization, pt was treated with Suboxone, Seroquel and Topiramate.

More recently in the HCJC, pt was evaluated for competency for his current criminal charge of misdemeanor DV. During this evaluation he was found to be paranoid, delusional, to frequently ruminate and respond to hallucinations. He thought process was often illogical and he appeared impulsive with poor judgment and insight. Because of these observations/symptoms, pt was found IST and it was recommended that he be sent to SBH for a period of restoration.

When meeting with pt today, he said that he had been in the HCJC for the last 6 weeks. He said that his incarceration had been painful and "mental torture". He said that his family had taken control over him (calling it "guardianship") and said that they were using their power illegally for the last 14 years- even when he was unaware of it. He said that his last hospitalization at SBH in 2024 had been the result of this illegal power that his family had over him and their fight to make him incompetent. He said that he was now going through the same process again. He said that he was not mentally ill and that he was never diagnosed with a mental illness- even during his last hospitalization at SBH last year. He said that his family had been the ones who had put the foreign body implants in his head and that he had imaging of the implants. He said that they had trampled on his rights of a person and as an American citizen and that he believed that they had also put other unwanted devices in other parts of his body. He said that they must have put these devices in him many years ago or these were implanted in him when he was unconscious during a past surgery. He said that he has disowned family because of this and that they have

tried to make him seem as though he is "disabled" with a "fake disability" (a mental illness). Pt admitted to some recent insomnia and recent irritability and mood lability. He acknowledged that he had been on Seroquel and Suboxone during his last admission (forgetting about Topiramate). He said that in the HCJC he had been taking Suboxone and Gabapentin and would like to continue both of these with the addition of Seroquel. He also asked about possibly adding some N-acetylcysteine as he has found this helpful for his dependency issues in the past.

**Psychiatric History**

Pt denied having any past psychiatric history or any past psychiatric treatment. Records indicate however that pt has a past diagnosis of Schizophrenia (from his hospitalization at SBH in July 2024). It is unclear whether pt has had other psychiatric hospitalizations however there are many records of ED visits for psychiatric concerns. In March 2024, pt went to St. Elizabeth Edgewood Hospital where he was seen in the ED for the "foreign body" in his ear. He said that he believed that he had headphones stuck in both of his ears and when he was being questioned by staff he became increasingly agitated and aggressive. A physical exam showed no foreign body and he was suspected of abusing substances (causing his psychosis). A few weeks later, he was again seen in an ED in KY for his 5th visit for ear pain, claiming that he had a foreign body in his ear. Of course, imaging showed that no foreign material was present and when the pt was told this he again became aggressive. His behavior however was felt not to warrant a psychiatric hold and was again blamed on drug use.

A little while later in July 2024, pt was admitted to SBH for his RTC hospitalization, where he continued to be delusional that he had an "implant" in his head. He believed that he was being subjected to cyber-torture by devices implanted in his head and said that he was being tortured by them. He said that this torture was being broadcast for people to observe the situation. He was very irritable and hypervigilant, with very poor insight into his symptoms of mental illness. He remained IST at the end of his restoration period. During that hospitalization, pt was treated with Suboxone, Seroquel and Topiramate. During this hospitalization, although substance -induced psychosis was considered by his providers, his symptoms did not resolve despite have no access to illicit drugs for 12 days, indicating that he had a pervasive mental d/o, not entirely caused by substance use, in their eyes.

Pt denied any h/o SI or of suicide attempts/self-injurious behavior. Currently in the HCJC, pt is being prescribed Gabapentin 600mg TID and Suboxone 20-5mg.

Medical History

**Past Psychiatric History**

Diagnosis Date

- Alcohol abuse
- Psychiatric illness
- Psychosis (HCC)

Behavioral Health Treatment History:

| TREATMENT TYPE | TREATMENT DETAILS | TREATMENT DATE | TREATMENT REASON | TREATMENT TIMEFRAME | TREATMENT TYPE - TREATMENT HISTORY SOURCE | TREATMENT HISTORY REVIEWER |
|---|---|---|---|---|---|---|
| inpatient | SBH | 2024 | Competency | | | |

| TREATMENT TYPE | TREATMENT DETAILS | TREATMENT DATE | TREATMENT REASON | TREATMENT TIMEFRAME | TREATMENT TYPE - TREATMENT HISTORY SOURCE | TREATMENT HISTORY REVIEWER |
|---|---|---|---|---|---|---|
| treatment | St. Elizabeth Cincinnati Childrens | | | | | |

Access to guns: denied

**Past Medical/Surgical History**

Medical History

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Alcohol abuse | |
| • Hallucination | |
| • Psychiatric illness | |
| • Psychosis (HCC) | |

Surgical History

No past surgical history on file.

☑ Patient OARRS report reviewed: ☐ No controlled substances ☑ Findings: Rx for Buprenorphine Gabapentin

**Allergies**

Nizoral [ketoconazole]

**Admission Medications**

Prescriptions Prior to Admission

**Medications Prior to Admission**

| Medication | Sig | Dispense | Refill | Last Dose/Taking |
|---|---|---|---|---|
| • buprenorphine-naloxone (Suboxone) 2-0.5 MG SL tablet | Place 2 tablets under the tongue every morning. Given at 0900 daily at previous facility. | | | Unknown |
| • buprenorphine-naloxone (Suboxone) 8-2 MG SL tablet | Place 2 tablets under the tongue every morning. Was given at 0900 daily at previous facility. | | | Unknown |
| • gabapentin (Neurontin) 600 | Take 600 mg by | | | Unknown |

3

| | |
|---|---|
| MG tablet | mouth 3 times a day. |

**Social History**

Pt was born in Cincinnati, Ohio and was raised by his mother. He denied any history of DV or abuse growing up. Pt's mother reports that from a young age that pt displayed a lot of aggression towards her. She reports that he would frequently attack her and that he was treated at CCHMC and placed on "lots of meds". Pt was expelled from Elder High School in the 9th grade. He then went to Taft HS, only to be expelled from Taft HS in the grade 10th grade. He did eventually obtain his GED. With respect to past employment, pt first worked at Taco Bell when he was 15 years old. He later worked in roofing (for the last 5 years) and more recently on barges. He reports having been fired from "lots of jobs". Pt denied having any children and said that he was single.

Substance and Sexual Activity

| | |
|---|---|
| Alcohol Use | Yes |
| • Alcohol/week: | 1.0 - 2.0 standard drink of alcohol |
| • Types: | 1 - 2 Standard drinks or equivalent per week |

**Tobacco History**

| | | |
|---|---|---|
| • Tobacco Use in the Last 30 Days? | No | No on 8/29/2025 |

**E-cigarette/Vaping**

| | |
|---|---|
| • E-cigarette/Vaping Use | Current Every Day User |
| • Start Date | 1/1/24 |
| • Passive Exposure | Yes |
| • Counseling Given | Yes |

**E-cigarette/Vaping Devices**

| | |
|---|---|
| • Disposable | Yes |
| • Pre-filled or Refillable Cartridge | Yes |
| • Refillable Tank | No |
| • Pre-filled Pod | No |

**E-cigarette/Vaping Substances**

| | |
|---|---|
| • Nicotine | Yes |
| • THC | No |
| • CBD | No |
| • Flavoring | No |

Pt reports that he began drinking alcohol at 18 yrs old and that he drinks a couple beers a few times a week. Pt also endorsed abusing heroin from the age of 22 years old until 2016 when he began treatment with Suboxone. In 2016 however he began to use methamphetamines and said that he abuse meth as a way to "deal with the torture". Pt admitted to past substance abuse treatment at Ethan Crossing and Talbert House. Pt is currently involved in treatment at Decoach Recovery Services, where he is prescribed buprenorphine by the agency for MAT. When he was admitted to the HCJC however, his UDS was positive for buprenorphine, amphetamines and methamphetamines.

4

**Legal History**

Pt has no h/o legal charges as a juvenile. As an adult, he has had a "lot of felonies" and said that his longest prison term has been 2 years. When he was arrested, pt had been on probation from another charge. Past convictions include Possessing Drug Abuse Instruments, Theft, Unauthorized Use of Property, OOB, DC, B&E (reduced to Attempt). Some past charges of Assault, Theft, Possessing Drug Abuse Instruments, DC, Possessing Criminal Tools, Receiving Stolen Property were dismissed.

**Abuse/Neglect History**

He denied any history of DV or abuse growing up.

**Family History**

Family History

No family history on file.

**Hospital Course**

Pt was admitted to Unit C as a GP1/AWOL1. On admission, he was very disorganized, hypomanic, irritable, paranoid and delusional. He refused to take medications and declined to participate in treatment. His restoration period was short because of how long he had waited to get a bed at SBH and he was quickly found IST and probated to the hospital for more treatment. At Probate Court he was granted forced medications. He did have a few verbal altercations but was never in any physical altercations. With time and medications, pt's mood symptoms stabilized and he became pleasant and non-labile. He began to attend groups and became a GP2. He became a good role model to other patients and participated in his treatment. Despite medications, his delusions remained but softened slightly. His insight improved slightly and though he questioned whether the medication was helpful for him, he did agree to continue it in the community and continue his treatment once he was released in the community. Pt was connected with GCB and Decoach and was had case management through the Homeless Act team.

**Seclusion and Restraint Events**

Restraint Count: 1

**Orders**

| Start | | Stop |
|---|---|---|
| 09/24/25 1115 | **Restraints adult initial (IP RESTRAINTS INITIAL & 1:1 SITTER)** Continuous x 1 hour, Status: Canceled<br>Comments: 1114 manual hold for 1 minute; restraint chair 1115<br>Question / Answer / Comment:<br>Restraint type: Restraint chair<br>Restraint reason: Enforcement of court ordered medication/lab draw | 09/24/25 1214 |
| 09/24/25 1114 | **Restraints adult initial (IP RESTRAINTS INITIAL & 1:1 SITTER)** Continuous x 1 hour, Status: Canceled<br>Comments: 1114 manual hold for 1 minute; restraint chair 1115 | 09/24/25 1213 |

5

| Question | Answer | Comment |
|---|---|---|
| Restraint type: | Manual Hold | |
| Restraint reason: | Enforcement of court ordered medication/lab draw | |

**Time of Discharge Mental Status Examination**

**Attitude to Interviewer:** cooperative

**Appearance and Behavior:** attentive, cooperative, and good eye contact

**Habitus:** wnl

**Motor:** normal and gait and station stable

**Speech:** normal rate/rhythm/volume/tone

**Mood:** "good"

**Affect:** euthymic and non-labile

**Thought Process:** coherent, linear, and logical

**Thought Content:** Active Suicidal Ideation and/or Plan? Denies
Active Homicidal Ideation and/or Plan? Denies
Delusions? yes
Describe: paranoid, thought broadcasting

**Perception** Hallucinations: auditory

**Orientation:** Oriented To:
Person (evidenced by ability to state his/her own name) yes
Place (evidenced by correctly identifying they are at current location) yes
Time (evidenced by correctly identifies the date) yes
Situation (evidenced by understands the reason for hospitalization) yes

**Memory:** Record patient responses
* Immediate Recall recalls 3 objects immediately
* Short-Term Memory recalls 3 objects at 5 minutes
* Long-Term Memory Is intact based on ability to recall significant life events
Describe:
☐ Check if patient was unable to coöperate with structured memory testing because of thought and behavior
Additional Observations:

**Attention and Concentration:** Spell World Forward and Backwards: easily
Serial 7's: easily

**Language:** Name Objects/Phrases: yes

**Abstract Reasoning:** Do not Cry over Spilled Milk: yes

6

Apples and Oranges Similarities: yes

**Intelligence:** Approximately average
Based on estimation of the patient's: verbal skills and general fund of knowledge
Additional Observations:

**Impulse Control:** During Evaluation: good
By Recent History: good

**Insight** Exhibits: fair
Based on estimation of the patient's: understanding of illness, understanding of illness impact on current situation, and understanding of symptoms as component of illness
Additional Observations:

**Judgement** Exhibits fair
Based on estimation of the patient's: appropriateness of interactions, appropriateness of choices, and willingness to work with treatment team
Additional Observations:

**Condition at Discharge**
Patient is Good and ready to be psychiatrically discharge. Patient denies medication side effects. Collateral information was obtained from his mother.

**Physical Functioning at Discharge**
Patient has improved. alert, cooperative, and in no acute distress
Dietary Recommendations: regular diet
Physical Activity: activity as tolerated

**Psychiatric Functioning at Discharge**
Patient has improved. Patient is no longer displaying symptoms of mood instability and mania. Pt continued to have some symptoms of psychosis including paranoia and delusions though they had improved somewhat.

**Psychosocial Functioning at Discharge**
Patient has improved. Patient has been interacting well with others and Patient has been compliant with unit expectations .

**Test Results Pending At Discharge**
none

**Diagnostic Studies and Procedures**
No results found for this or any previous visit (from the past 4464 hours).

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 4.3 | 09/17/2025 |
| HGB | 12.2 (L) | 09/17/2025 |
| HCT | 39.0 | 09/17/2025 |
| MCV | 89 | 09/17/2025 |

No results found for: "CHOL"

**Lab Results**

| Component | Value | Date |
|---|---|---|
| HDL | 55 | 09/17/2025 |

No results found for: "LDLCALC"

**Lab Results**

| Component | Value | Date |
|---|---|---|
| TRIG | 65 | 09/17/2025 |

No results found for: "CHOLHDL"

**Discharge Diagnosis**

**Assessment & Plan**

**Polysubstance abuse**

No associated orders from this encounter found during lookback period of 2160 hours.

**Opiate dependence (HCC)**

No associated orders from this encounter found during lookback period of 2160 hours.

**Error, refractive, myopia, bilateral**

No associated orders from this encounter found during lookback period of 2160 hours.

**Dental abscess**

No associated orders from this encounter found during lookback period of 2160 hours.

**Chronic pain syndrome**

No associated orders from this encounter found during lookback period of 2160 hours.

**Obesity (BMI 30.0-34.9)**

No associated orders from this encounter found during lookback period of 2160 hours.

**Bipolar affective disorder, current episode manic with psychotic symptoms (CMS/HCC) (HCC)**

Orders from past 2160 hours:

- risperiDONE microspheres (RisperDAL Consta) 37.5 MG injection; Inject 2 mL into a muscle as directed

every 14 days at breakfast.

**Schizophrenia, undifferentiated (CMS/HCC) (HCC)**

No associated orders from this encounter found during lookback period of 2160 hours.

**Discharge Medications**
Home Medications After Discharge

Scheduled
- buprenorphine-naloxone (Suboxone) 8-2 MG SL tablet, Place 2 tablets under the tongue 1 time each day after breakfast.
- divalproex (Depakote) 250 MG EC tablet, Take 3 tablets by mouth every 12 hours. Do not crush, chew, or split.
- divalproex (Depakote) 250 MG EC tablet, Take 3 tablets by mouth every 12 hours. Do not crush, chew, or split.
- gabapentin (Neurontin) 300 MG capsule, Take 1 capsule by mouth 3 times a day.
- risperiDONE microspheres (RisperDAL Consta) 37.5 MG injection, Inject 2 mL into a muscle as directed every 14 days at breakfast.

PRN
- Naloxone HCl (DAWN) Kit, Inhale 1 each 1 time if needed for opioid reversal (opioid overdose and respiratory suppression) for up to 1 dose.

Risks and benefits of medications discussed with the patient. Patient advised to call 911 or present to the emergency department if patient experiences an emergency such as suicidal, homicidal, or violent ideations or plans. Patient advised to remain compliant with medications and their discharge plan. Patient advised to avoid all drugs, alcohol, and tobacco products. Patient indicated understanding.

**Future Treatment Recommendations:**
**Please continue taking medication as prescribed. Next Risperdal Consta 37.5mg IM q2wk dose is due on 12/18/25. Please continue to take your oral Depakote 750mg BID, Gabapentin 300mg TID and Suboxone 16-4mg qam.** Follow-up with outpatient psychiatrist (at GCB) for routine visits and any concerns about mental health symptoms or medication side effects and Decoach for Suboxone treatment. Do not stop medication abruptly without consulting with your doctor. Avoid drugs or alcohol. Seek emergency help if you have thoughts of harming yourself or others.

**Issues Requiring Follow-Up**
Problem List
**Patient Active Problem List**
Diagnosis
- Polysubstance abuse
- Opiate dependence (HCC)
- Error, refractive, myopia, bilateral
- Dental abscess
- Chronic pain syndrome
- Obesity (BMI 30.0-34.9)

- Bipolar affective disorder, current episode manic with psychotic symptoms (CMS/HCC) (HCC)
- Schizophrenia, undifferentiated (CMS/HCC) (HCC)

**Aftercare Providers & Appointments**
Outpatient Agency: GCB/Decoach
Case Manager: Jun Fularz 513-981-9103
Next Appointment: 12/12/25 at 1030 GCB clinic and 12/12/25 at 12:30 at Decoach
Medications: He will be provided with 3-day supply of physical medications, 7-day script of buprenorphine and 30-day script of remaining medications.

**Disposition & Living Arrangements**
Patient is homeless. Patient staying at Montgomery Place.

Vanessa Doyle, MD
12/12/25

## Other Notes

All notes

H&P from Carol J Hubbard, MD (Medical Services)

## Additional Orders and Documentation

SmartForms: OMHAS LEGAL STATUS • OMHAS LEGAL CHARGE/COURT INFORMATION • OMHAS FORCED MEDICATION • OMHAS SEX OFFENDER STATUS • OMHAS REPORT TYPES / EVALUATION DETAIL • OMHAS - BUREAU OF CRMINAL INVESTIGATION (BCI) • OMHAS - BH TREATMENT HISTORY • OMHAS PROBATE COURT • OMHAS IP TREATMENT PLAN TYPE • SUBSTANCE USE TREATMENT HISTORY • MILITARY HISTORY

## Communications

## Media

From this encounter

Probate Court Continued Commitment - Scan on 12/18/2025 8:59 AM



Clothing Records - Scan on 12/17/2025 2:43 PM

